UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

```
AYLUS NETWORKS, INC.,          )
                               )
        Plaintiff,             )
                               )
vs.                            )   No. C 13-04700-EMC
                               )
APPLE, INC.,                   )
                               )
        Defendant.             )
_____)
```

San Francisco, California
Wednesday, August 27, 2014

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING 1:14 - 1:30 = 16 MINUTES

APPEARANCES:

For Plaintiff:
                        Quinn Emanuel Urquhart &
                          Sullivan, LLP
                        3842 Sacramento Street
                        San Francisco, California
                          94118
                   BY:  WILLIAM OWEN COOPER, ESQ.

                        Quinn Emanuel Urquhart &
                          Sullivan, LLP
                        865 South Figueroa Street
                        10th Floor
                        Los Angeles, California  90017
                   BY:  AMARDEEP LAL THAKUR, ESQ.

For Defendant:
                        DLA Piper US, LLP
                        2000 University Avenue
                        East Palo Alto, California
                          94303
                   BY:  CHRISTINE KERBA CORBETT, ESQ.
                        ERIK R. FUEHRER, ESQ.

*Echo Reporting, Inc.*

2

Transcribed by:                    Echo Reporting, Inc.
                                   Contracted Court Reporter/
                                   Transcriber
                                   echoreporting@yahoo.com

3

<u>Wednesday, August 27, 2014</u>                              <u>1:14 p.m.</u>

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Calling Case Number 13-CV-4700, Aylus Networks, Inc. versus Apple, Inc.  Counsel, please step forward and state your appearances.

MS. CORBETT:  Your Honor, Christine Corbett and Erik Fuehrer on behalf of the Defendant, Apple.

THE COURT:  All right.  Thank you, Ms. Corbett.

MR. THAKUR:  Amar Thakur and Will Cooper on behalf of Aylus Networks.

THE COURT:  All right.  Thank you, Mr. Thakur.

Maybe you can give me a one-minute tutorial about the patent at issue here.  I see the description, the general description.  Maybe you can tell me a little more about it.

MR. THAKUR:  Certainly.  So this patent is about taking a control point on the local area network, as in the prior art home network to a wide area network which enables essentially the ability to have this technology available on a commercial scale from basically a cloud computing environment.

So what you do is you -- at a high level, this patent is about a new architecture that takes the technology from providing entertainment at the local area network with homes to a wide area network on a commercial basis.

4

THE COURT:  So what's the practical application? What's an example of that?

MR. THAKUR:  A practical application of that is that a person can use a handset of your cell phone where you can access the i-Tune Apple store anywhere in the world, wherever you happen to have coverage, select content that is available.  So you are no longer now limited to content that you would have stored at your house because you'll have access to the entire availability library of content, and select from that content what movie you want to play.  And you can do so essentially on any internet connected television anywhere in the world.

So what it is doing is empowering the individual to have access to a cloud environment where that control point is present to select whatever content has been made available, display it on any television anywhere in the world that is internet connected.

THE COURT:  So without this device, what is possible or what is not possible?

MR. THAKUR:  Prior art was -- in that time frame was you had network attached storage devices at your house where you would bring movies in and you would -- you could rent movies and either store them by DVD, as you might recall, bose type system, and you would be limited to that content.

5

And then that content was wired into your house, and so you could basically -- you could use, you know, some of these media devices to pick movies that was limited to what you had available and put it in different televisions in the house.  But your control point was still there.  The architecture is limited in the prior art to in-house networks.  It was not a cloud computing environment.

And the phone that you're talking about in 2004, your Honor, the number one cell phone is Nokia.  And it had this tiny little screen.  And I may -- I don't want to speak with authority, but I'm pretty sure that in 2004, you could not even have an internet browser on your phone.  So the idea that you could access content into the cloud was not something that was even thought about at that point, as far as I'm aware.

THE COURT:  And this particular patent, the '432, was filed in 2006?

MR. THAKUR:  Your Honor, the parent was filed in 2005.  The invention -- we have actually documented invention inception documents in 2004.

THE COURT:  Right.  I see.  All right.  Thank you.  Let me ask, then -- the first thing I noticed was an indication that Apple intends to bring a motion to stay pending the IPR petitions.

MS. CORBETT:  Correct, your Honor.

6

THE COURT:  Where is Apple at right now with respect to those petitions?

MS. CORBETT:  So the petitions were to be filing two petitions.  They're both essentially drafted.  We're doing the review phase right now, but we expect that we should be able to get the IPRs on file -- our expectation is somewhere within the next two weeks.  And then we'd be filing a motion to stay shortly thereafter, either same day or next day.

THE COURT:  And why should I stay this action just because of the filing of the petition without any review granted?

MS. CORBETT:  There are a number of cases, and even some courts even within this district that have granted stays pre-IPR institution.  And the reason for that is, those cases have held that there is just a slight delay between the time of filing the IPR and the decision to institute.

THE COURT:  What is that, about four months?

MS. CORBETT:  It's six months, but typically -- the Patent Board has been typically rendering the decisions earlier than that, but the max period is six months.  And so those cases have held that this brief delay is not enough to warrant a continuation of the case, that even if the Board were to deny the IPR, the motion to stay would be granted,

7

obviously without prejudice.  And so at that point, the stay would be lifted, and the case would continue.

And the case here, you know, there hasn't been a preliminary injunction that's been filed.  There's no reason why monetary compensation isn't sufficient.  And so for all those reasons that those cases have held, that a pre-IPR institution would be acceptable, those would also apply here as well.

THE COURT:  We're at a point now where claim construction discovery is just about completed, correct?  The next step that would happen, absent the stay, would be the filing of the claim construction briefs leading to the hearing that's currently scheduled for October.

MS. CORBETT:  That's correct, your Honor.  And also, a significant amount of fact discovery needs to be completed.  To date, there hasn't been any depositions yet.  We haven't yet entered the phase of expert discovery, summary judgment motions.  So a lot of the case is still left to be litigated.

THE COURT:  But over the next -- at least the next three, four months, we're going to be consumed primarily with claim construction?

MS. CORBETT:  That's correct.

THE COURT:  Intensive discovery or expert discovery, this sort of thing.

8

MS. CORBETT:  I don't expect any intensive fact discovery or expert discovery anytime in the next three to four months.

THE COURT:  Bring your motion.  I did want a preview of that, but I -- I'm reluctant to stay just on a filing of an IPR petition because that means that -- you know, you do this -- I'm not sure that's the proper procedure to do in every single case.

If there's an occasion that there may be something forthcoming that may have a material affect on this case if the IPR is granted, you know, I think it deserves a closer look.  But until then, it's just a petition.  I mean, I'd love nothing better than to defer claim construction, reasons of judicial economy, but I think -- I'm hesitant to delay the case.

Because let's say it doesn't -- for whatever reason, doesn't go forward or -- and then we're now six months later, and we haven't even begun the process of claim construction, and then we put everything back.

So I mean, I'll give you a preview of where I start, and you can weigh whether you want to go there or not.  But, you know, right now we're looking at a pretty short time fuse for starting the claim construction process.

MS. CORBETT:  Sure.  And I appreciate your Honor's thoughts on this.  Of course, you know, statistics are

9

always influx, and they're constantly changing.  But, you know, the IPRs are granted with a somewhat high -- high rate.

THE COURT:  No, no.  It's changing the landscape a lot, isn't it?

MS. CORBETT:  Yeah.

THE COURT:  As you know, I think the vast majority of judges now, once IPR is granted, it's -- a lot of folks are saying -- especially given what's happened in a number of cases.

So -- well, all right.  So let's cross that bridge.  I take it you have no other comments to make on that?

MR. THAKUR:  On your comments, I have nothing to add.

THE COURT:  Okay.  And in terms of ADR, I guess it doesn't sound like there's much interest in mediation prior to Markman, that you want to see the Markman ruling before.

MR. THAKUR:  Your Honor, we did -- the parties did meet informally, and we concluded that claim construction would be necessary before the parties could close the gap.

MS. CORBETT:  That's correct, your Honor.

THE COURT:  All right.  So barring a stay, I guess we're on schedule.  It's almost right around the corner in terms of the briefing, and you've agreed on the claim terms. Right?  So I'm pleased that we don't have to spend a lot of

10

time on that.

And then you've stipulated -- to the extent we do go forward with discovery, I'm pleased to see that you have agreed on a number of aspects of discovery.  And of course I will concur in what you've agreed to, so that's not an issue.

So other than that, right now, until I see a motion -- if I see a motion to stay, it sounds like the next time we'll see you is at the claim construction hearing, the Markman hearing.

MS. CORBETT:  Your Honor --

MR. THAKUR:  The tutorial, your Honor.

THE COURT:  Oh, tutorial first on the 14th.  Yes.

MS. CORBETT:  Your Honor, if I may raise something on the claim construction terms.

THE COURT:  Yes.

MS. CORBETT:  So while the parties have agreed on the list of the top 10 terms, Apple has put in a proposal that if the Court allows, Apple would like to construe two additional terms that we believe would both be case dispositive if it were to be construed.  And those two additional terms are control point CP logic and media renderer.  And that's on page 11 of the CMC statement.

THE COURT:  All right.  Not having seen any of that, what's your view about how helpful that will be to --

MR. THAKUR:  The Local Rules suggest 10 claim terms per case, but in reality, claim terms for cases that involve multiple patents seems a little more appropriate to have 10 terms for a single patent is already excessive.  To do more, your Honor, unfairly prejudices.  And just to add to the point, the control point and media renderer are truly, you know, terms that were well in the prior art.  Should have little dispute and don't deserve additional construction in any case.

MS. CORBETT:  Your Honor, if I may.

THE COURT:  Yeah.

MS. CORBETT:  You know, one thing that I think would be helpful is -- you know, we've identified reasons why our claim terms, which are Claims 6 through 10 on page 11, would be significant to the case.  And so I'd be curious -- I haven't quite yet heard why the Plaintiff's selection of its top five terms would be either claim or case dispositive.

Because I think what we need to kind of hone in on here is what claim terms, if this Court were to construe, would, in fact, be hopefully case dispositive or in the least claim dispositive.  And we've identified our terms and indicated whether it would be case or claim dispositive.  And we haven't yet quite heard from the Plaintiffs as to their top five terms.

12

THE COURT:  That information was not exchanged as part of the process?

MS. CORBETT:  They've never quite articulated to us why those terms -- other than just indicating that they be most significant, why they would be most significant.

MR. THAKUR:  As a Plaintiff, it's hard to say a case would be -- a claims term would be case dispositive. Our point is, our -- those five terms will essentially form the basis of a summary judgment for infringement.

THE COURT:  Have you filed anything with the court indicating the potential significance of these terms?  I haven't received anything, have I?

MS. CORBETT:  Our -- in the joint claim construction and prehearing statements, Apple identified which of its terms.

THE COURT:  Oh, okay.

MS. CORBETT:  Either case dispositive or claim dispositive.

THE COURT:  Right.

MS. CORBETT:  Because it did -- for some of the terms, it didn't make a difference.

MR. THAKUR:  The concept of claim or case dispositive is a defensive concept which doesn't seem applicable to the Plaintiff.

THE COURT:  Well, let's do this.  I mean, at this

13

point, we -- you know, I think it's a fair way to allocate the 10 terms subject to construction.  I think the question is whether it makes sense to go beyond that.  And frankly, I have not looked at that question more carefully.

I think what I'd like to do is to proceed with these 10.  And sometimes that helps illuminate whether any additional terms are helpful in terms of expediting either a settlement or summary judgment motions.  You know, so I'm going to just concentrate on these 10 for now without prejudice to revisiting whether, you know, some additional construction may be necessary, useful.

I will say that, you know, the further you get beyond the 10, the higher the burden -- or the bar is.  But I've done it before, and I'll do it again if necessary.  So let's go forward with these 10.  At the very least, that should put you in a position to have hopefully a meaningful mediation, a post-Markman mediation.

So again, absent the stay, we'll just proceed.  And we'll see you at the tutorial.

MR. THAKUR:  Thank you.

THE COURT:  Yes.

MS. CORBETT:  One more.

THE COURT:  Yes.

MS. CORBETT:  Just so we can plan accordingly, for the claim construction hearing, there's -- I'll call it a

14

silly dispute between the parties as to how long the claim construction hearing is going to be, just so we can plan accordingly.  We'd like to know from your Honor if you have a time limit on that.

THE COURT:  Well, I mean, part of it depends on the complexity of this and how well the tutorial goes and how well I understand things.

Typically, for 10 terms, I go three, four, sometimes five hours.  There's not going to be any live testimony, right?

MR. THAKUR:  We've asked for two, they've asked for two and a half.  So frankly, I was going to offer to stipulate to two and a half.  That way we're in agreement.

THE COURT:  For the whole thing or for each?

MR. THAKUR:  For the whole thing.  They've asked for two and a half for the whole thing.

MS. CORBETT:  Well, we asked for two and a half because of the time it was set at.  We assumed that the Court wanted to get out by 5:00.  But if that's allowed --

THE COURT:  I'd stay later if necessary.  Again, it really depends on how much we get into it and how many questions I have.  I do want to give it a full hearing within limits.

So two and a half is definitely doable.  I've done these in two and a half as well, but I've had some that it

15

got more and more complicated as we got into it, especially with technology that I had some difficulty comprehending, and we had to really get into it.

Hopefully, that's not the case here.  And with the tutorial, you know, we should be able to do this in that time frame.  So two and a half, three hours.

MS. CORBETT:  Right.  Great.  We can work with that.  Thank you.

THE COURT:  All right.

MS. CORBETT:  Thank you.

THE COURT:  Good.  Great.  Thank you.

MS. CORBETT:  All right.  Thank you, your Honor.

(Proceedings adjourned at 1:30 p.m.)

16

CERTIFICATE OF TRANSCRIBER


I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Thursday, September 11, 2014

*Echo Reporting, Inc.*