QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Harold A. Barza (Bar No. 80888)
  halbarza@quinnemanuel.com
  Amar L. Thakur (Bar No. 194025)
  amarthakur@quinnemanuel.com
  Vincent Pollmeier (Bar No. 210684)
  vincentpollmeier@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  William O. Cooper (Bar No. 279385)
  willcooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Plaintiff,
Aylus Networks, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYLUS NETWORKS, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>APPLE, INC., a California corporation<br><br>　　　　　Defendant. | CASE NO.   3:13-cv-04700-EMC<br><br>**AYLUS' REPLY CLAIM CONSTRUCTION BRIEF** |

# TABLE OF CONTENTS

| | Page |
|---|---:|
| I. INTRODUCTION | 1 |
| II. CLAIM CONSTRUCTION LAW | 1 |
| III. CLAIM CONSTRUCTION | 2 |
|     A. "Negotiate Media Content Delivery Between the MS and the MR" | 2 |
|         1. The Patent Is Not Limited To UPnP | 2 |
|         2. UPnP Does Not Require Apple's Proposed Construction For Negotiation | 5 |
|         3. UPnP Specifications Are Extrinsic Evidence | 6 |
|         4. The Plain and Ordinary Meaning Should Govern | 6 |
|     B. "Resides In the Signaling Domain" | 7 |
|         1. The Court Should Adopt the Actual Language From the File History | 7 |
|     C. "Cooperate With (CP) Logic To Negotiate Media Content Delivery Between the MS and the MR" / "Cooperate With the [Network/Serving Node] CP Logic" | 8 |
|         1. Apple's Proposed Construction Reads Key Language Out Of the Claims | 8 |
|         2. The Specification Contradicts Apple's Proposed Construction | 9 |
|         3. The Plain and Ordinary Meaning Should Govern | 10 |
|     D. "The CP Logic . . . Serves As a [First/Second] Proxy" | 10 |
|         1. Apple's Construction Impermissibly Imports a Limitation from the File History | 10 |
|         2. The Plain and Ordinary Meaning Should Govern | 11 |
|     E. "Serving Node" | 11 |
|         1. Apple's Construction Reads Back Into the Claims a Limitation Unambiguously Withdrawn During Prosecution | 12 |
|         3. Serving Node Should Be Given Its Plain and Ordinary Meaning | 15 |
| IV. CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barnes & Noble, Inc. v. LSI Corp.*,
    C-11-2709 EMC, 2014 WL 1365422 (N.D. Cal. Apr. 7, 2014) ..................................................1

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001) ........................................................................................6, 15

*Decisioning.com, Inc. v. Federated Dept. Stores, Inc.*,
    527 F.3d 1300 (Fed. Cir. 2008) ......................................................................................13, 14

*General Atomics Diazyme Laboratories Div. v. Axis-Shield ASA*,
    277 Fed. Appx. 1001 (Fed. Cir. 2008) ....................................................................................8

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997) ...............................................................................................13

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
    690 F.3d 1318 (Fed. Cir. 2012) ..........................................................................................1, 3

*Kistler Instrumente AG. v. United States*,
    628 F.2d 1303 (Ct. Cl. 1980) .................................................................................................13

*Laryngeal Mask Co. v. Ambu*,
    618 F.3d 1367 (Fed. Cir. 2010) .............................................................................................13

*Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*,
    541 F. App'x 964, 971 (Fed. Cir. 2013), reh'g denied (Oct. 17, 2013) ...................................15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ...........................................................................................1, 2

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002) ...............................................................................................5

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ...........................................................................................1, 4

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ...............................................................................................1

*Transonic Sys., Inc. v. Non-Invasive Med. Technologies Corp.*,
    143 F. App'x 320 (Fed. Cir. 2005) ..................................................................................12, 13

*United States v. Telectronics, Inc.*,
    857 F.2d 778 (Fed.Cir. 1988) ................................................................................................12

## I. INTRODUCTION

In its Responsive Claim Construction Brief, Apple has flooded this case with extrinsic evidence—including an expert-witness declaration, a fact-witness declaration, numerous full technical specifications, all the documents allegedly contained in a 2002 website, and hundreds of pages of exhibits—in a transparent attempt at recasting the invention of the '412 patent to suit Apple's litigation positions. But the '412 patent's claims are easily understood by a skilled artisan based on the intrinsic evidence alone.

The '412 patent covers a transformative architecture for delivering media content over wide area networks. While the architecture is new, the terms used in the claims are straightforward and clear. And this clarity is reflected in Aylus' proposed constructions, which, in stark contrast to Apple's, stay true to the language and purpose of the claims. Aylus respectfully requests that the Court reject Apple's proposed constructions and adopt the claim terms' plain and ordinary meanings, or in the alternative, Aylus' proposed alternative constructions.[1]

## II. CLAIM CONSTRUCTION LAW

The Court is not required to construe claims when the claim meaning is readily apparent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). Limitations from the specification and file history must not be read into the claims. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012). There are only two exceptions to this rule: "[W]hen a patentee sets out a definition and acts as his own lexicographer, or when the patentee disavows the full scope of

---

[1] In Apple's Responsive Claim Construction Brief, Apple argues that it has been treated unfairly because Aylus' Opening Claim Construction Brief did not address the five of the ten disputed terms for which Aylus is seeking a construction of plain and ordinary meaning. But each side has made affirmative arguments regarding its proposed constructions and responded to the other side's affirmative arguments regarding the other side's proposed constructions. That is, (1) in Aylus' Opening Brief, Aylus made its affirmative arguments for the Aylus-proposed terms; (2) in its Response Brief, Apple responded to Aylus' affirmative arguments regarding the Aylus-proposed terms and also made affirmative arguments regarding the Apple-proposed terms; and (3) in Aylus' Reply Brief, Aylus only responds to Apple's affirmative arguments regarding Apple-proposed terms. Accordingly, each side has had a full and fair—and equal—opportunity to brief the disputed claim terms.

the claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "Even if every single embodiment uses [a proposed limitation], *Phillips* squarely rejects limiting the claim on that basis, unless the specification makes clear that the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive*."* *Barnes & Noble, Inc. v. LSI Corp.,* C-11-2709 EMC, 2014 WL 1365422, at *20 (N.D. Cal. Apr. 7, 2014). The doctrine of claim differentiation, moreover, "disfavors reading a limitation from a dependent claim into an independent claim. *See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012)." Finally, "[a]lthough courts are permitted to consider extrinsic evidence like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record." *Phillips*, 415 F.3d at 1317.

## III. CLAIM CONSTRUCTION

### A. "Negotiate Media Content Delivery Between the MS and the MR"

| Aylus' Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br>Alternative construction:<br><br>Coordinate transport of audiovisual content from the MS to the MR | Compare transfer protocols and content formats supported by each of the MS and MR to select a transfer protocol and content format supported by both, and instruct the MS and MR to transfer media content between them using the selected transfer protocol and data format. |

"negotiate media content delivery between the MS and the MR" appears in claims 1, 2, 4, 20, 21, 23, and 27:

1. " . . . (ii) logic to cooperate with CP logic to **negotiate media content delivery between the MS and the MR**, and . . ."

#### 1. The Patent is Not Limited to UPnP

The '412 patent covers an overarching architecture for delivering media content over wide area networks. One aspect of this architecture is communication between the user endpoint and the media renderer. As the patent expressly provides, this particular communication can be achieved using any number of protocols, only one of which is UPnP.

In casting UPnP as essentially coterminous with the invention, Apple has relied heavily on UPnP literature—extrinsic evidence—and has taken the position that the straightforward claim term "negotiate" essentially means the following forty-six words: "Compare transfer protocols and content formats supported by each of the MS and MR to select a transfer protocol and content format supported by both, and instruct the MS and MR to transfer media content between them using the selected transfer protocol and data format." Yet "transfer protocols" and "content formats" are nowhere to be found in the intrinsic evidence.

Apple's construction rests on two incorrect premises: (i) that the patent is limited to UPnP and (ii) that UPnP necessarily always includes this specific functionality. Apple Resp. Br. at 2-8. That is, Apple asserts that because the patent is limited exclusively to UPnP and because UPnP always necessarily includes this functionality, the claim term "negotiate" means what Apple says it means.[2] *Id.* Both of these premises are wrong.

First, the patent is not limited to UPnP. Nothing in the ***claim language*** limits the invention—which sets forth an overarching architecture for media content delivery—to these particularized UPnP protocols. While certain terms such as "media server" and "media renderer" are in both the patent and UPnP, these terms can also be found in other, non-UPnP contexts. *See* Wigdor Decl. at ¶¶ 28-30; Ex. 9 (MP3 Streaming over Bluetooth to multiple users) at 3; Ex. 10 (The Influence of Segmentation Mismatch on Quality of Audio-Video Transmission by Bluetooth) at 1, 2, 4; Ex. 11 (Autonomous Management of Clustered Server Systems using JINI) at 7; Ex. 12 (IP-DLC Link Service Concepts and Terminology); Ex. 13 (Ambulant: A Fast Multi-Platform Open Source SMIL Player) at 3. Likewise, other terms in the '412 patent are not UPnP terms of art—including the very word at issue here, "negotiate." *See, e.g.,* Apple Resp. Br. at 2-8 (neither quoting nor citing any UPNP reference to the word "negotiate"); *see also*, Polish Decl. at 7 (Apple's expert noting that the fundamental claim term "serving node"—which is part of the title of the invention—is a "not a term of art" in the UPnP literature.).

---

[2] To save space, Aylus will not repeat Apple's voluminous construction throughout this section, and respectfully refers the Court to the construction on page 2, above.

To the contrary, the claims themselves establish that the patent is *not* limited to UPnP. First, while none of the independent claims mention UPnP, multiple *dependent* claims specify using UPnP. For example, dependent claim 17 claims instances where "the UE determines that it is local to at least one of the MS and the MR by using Universal Plug and Play (UPnP) protocols." Ex. 1 ('412 patent) at 25:46-48. Under the doctrine of claim differentiation, this means that in claim 1—the independent parent claim to claim 17—the UE determines that it is local to at least one of the MS and the MR by using methods other than UPnP. *See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012). Any other conclusion would render claim 17 entirely superfluous. *See id.*

Even more damaging to Apple's proposed construction, dependent claim 18 not only includes reference to UPnP, it *specifically lists alternatives to UPnP* that the MS or the MR may use to announce their presence to the UE: "18. The method of claim 1, wherein at least one of the MS and MR announce their presence to the UE using at least one of UPnP protocols, Jini technology, RFID, and Bluetooth." Ex. 1 ('412 patent) at 25:48-51.

The specification likewise makes reference to specific alternatives to UPnP. Ex.1 ('412 patent) at 6:38-40 ("The MS and/or MR may announce their presence to the UE using at least one of UPnP protocols, Jini technology, RFID, and Bluetooth."); *id.* at 10:3-6 ("Associated devices may announce their presence by a *variety of means such as but not limited to* Universal Plug and Play Devices (UPnP), Jini discoverable devices, RFID devices, and Bluetooth enabled devices.") (emphasis added). There is no lexicography in the specification limiting the patentee to UPnP. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). And, finally, there is no disavowal—let alone a clear and unmistakable disavowal—relating to UPnP. *Id.* Finally, the very terms Apple says require the patent to be limited to UPnP—e.g., "media renderer" and "media server"—are very well known outside of UPnP. *See* Wigdor Decl. at ¶¶ 30-35; Ex. 10 (The Influence of Segmentation Mismatch on Quality of Audio-Video Transmission by Bluetooh) at 1, 2, 4; Ex. 11 (Autonomous Management of Clustered Server Systems Using JINI) at 7; Ex. 13 (Ambulant: A Fast Multi-Platform Open Source SMIL Player) at 3.

In sum, Apple argues that the entire patent should be limited to UPnP—and therefore particular UPnP protocols should be shoehorned into the word "negotiate"—even though (i) UPnP is nowhere to be found in the independent claims, (ii) UPnP is contained in multiple dependent claims, (iii) alternatives to UPnP are also listed in dependent claims, (iv) the patentee did not limit the patent to UPnP in the specification, (v) the specification expressly provides for alternatives to UPnP, and (vi) these terms are used outside of UPnP.

### 2. UPnP Does Not Require Apple's Proposed Construction For Negotiation

Apple's argument not only rests on this first premise—that the patent is limited to UPnP—but also a second: that UPnP, itself, necessarily requires "negotiate" to mean what Apple says it means. Apple's brief and its voluminous extrinsic evidence supporting its construction refute this proposition. First, nowhere in Apple's brief does it quote or cite anything suggesting the word in question—"negotiate"—is a UPnP term of art. The fact that the CP engages in certain activities in certain instances, does not mean those activities constitute "negotiation." Second, the UPnP literature Apple attached to its brief expressly provides for multiple scenarios in which the CP does not engage in the activities Apple says it must. For example, Apple's UPNP literature explains that scenarios exist in which UPnP components "may interact with each other using either the standard UPnP control protocols (e.g. SOAP over HTTP) *or using some private communication mechanism.*" *See* Wigdor Decl. at ¶¶ 15; Ex. 7 (UPnP Architecture) at 6 (emphasis added). Likewise, Apple's UPnP literature explains that UPnP components interact with non-UPnP components, and, in such instances, fundamental UPnP functionality is not utilized. *See* Wigdor Decl. at ¶¶ 14; Ex. 8 (UPnP ConnectionManager) at 15 ("[T]he whole PeerConnectionManager is left blank."). These examples show that Apple seeks to imposes a categorical requirement into the claims that does not even exist in the evidence Apple uses to support its argument. Thus, even accepting Apple's incorrect argument that the patent is necessarily limited to UPnP, UPnP itself does not *require* that the claim terms be limited as Apple argues.

### 3. UPnP Specifications Are Extrinsic Evidence.

Apple's overreaching in claim construction is exemplified in its argument that a large body of UPnP literature never cited nor considered by the examiner is intrinsic evidence instead of extrinsic evidence. Apple Resp. Br. at 4. This is so, according to Apple, because one of the 100-plus references listed by the examiner on page 2 of the '412 patent attempts to incorporate by reference an entire 2002 website containing UPnP literature. As to be expected, the examiner did not so much as mention this reference—or cite the UPnP literature at issue—during prosecution. It is, of course, well understood that "prior art the examiner failed to consider is extrinsic evidence." *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1372 n.4 (Fed. Cir. 2002). According to Apple, the examiner "considered" all of this UPnP literature despite the fact that it was purportedly incorporated by reference, in its entirety, in a single sentence within one of over 100 references listed by the examiner on page 2 of the patent. Ex. 1 ('412 patent) at 2.[3]

### 4. The Plain and Ordinary Meaning Should Govern

Apple's proposed construction is wrong. The intrinsic evidence—including the claim language itself—establishes that the plain and ordinary meaning should govern. The Federal Circuit requires a "heavy presumption" in favor of a claim term's plain and ordinary meaning. *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.,* 262 F.3d 1258, 1268 (Fed. Cir. 2001). Should the Court here elect to construe the claim term rather than use the term's plain and ordinary meaning, Aylus respectfully requests that the Court adopt its alternative construction because it is supported by the specification. On the very first page of the patent, the patentee placed Figure 12 which shows the word "negotiate" and the word "transport" side-by-side when discussing the streaming of media content from the MS to the MR. *See* Ex. 1 ('412 patent) at 1. Likewise, the specification uses "negotiate" in general terms relating to media content delivery.

---

[3] It is, moreover, entirely unclear what was contained on this website at the time of the relevant statement or at the time the examiner allegedly "considered" it. Apple supplies a printout from archive.org suggesting the literature was contained on the website but provides no evidence supporting its authenticity or reliability. Apple's argument should be rejected.

Ex. 1 ('412 patent) at 17:52-53 ("the CPP in the UE negotiates the association between the MS and MR"); *id.* at 13:64-67 ("the CP negotiates multimedia content delivery with the MS and instructs the MS to deliver content to an address corresponding to the MR on the UE").

**B.     "Resides In the Signaling Domain"**

| Aylus' Proposed Construction | Apple's Proposed Construction |
|---|---|
| Is involved only in commands and instructions and is not in the media path[4] | Is involved only in commands and instructions and never receives any media content |

"resides in the signaling domain" appears in claims 1, 20, and 27:

1. " . . .  and the CP logic **resides in the signaling domain** and . . ."

### 1.     The Court Should Adopt the Actual Language From the File History

During the prosecution of the '412 patent, the applicant made the following statement regarding the control point (CP):   "The claimed CP is involved only in commands and instructions and is not in the media path, i.e., it is only in the 'signaling' domain and not the 'bearer' domain."   Ex. 3 ('753 Prosecution History, Amendment and Remarks, Aug. 19, 2009) at 7-8.   Aylus agrees that the CP logic is involved only in commands and instructions, and that the CP logic resides in the "signaling" domain and not the "bearer" domain.   The prosecution history unambiguously sets forth this point, and consequently, it should not be in dispute.

The only disagreement is whether the Court should adopt a construction that adopts the *actual words* of the file history.   Aylus' proposed construction does so:   "[the CP logic] is involved only in commands and instructions and is not in the media path."   Ex. 3 ('753 Prosecution History, Amendment and Remarks, Mar. 25, 2009) at 7-8.   Apple's does not.   Instead, Apple unnecessarily edits the language in the file history, replacing "is not in the media path" with "never receives any media content."   Apple's proposed editorial change is not faithful

---

[4]     In light of Apple's Claim Construction Brief, Aylus has revised its proposed construction from the Joint Claim Construction Statement. Dkt. No. 47 at 25-27.

to the prosecution history, uses awkward wording when dealing with where the CP logic resides, and should be rejected.

### C. "Cooperate With (CP) Logic To Negotiate Media Content Delivery Between the MS and the MR" / "Cooperate With the [Network/Serving Node] CP Logic"

| Aylus' Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br>Alternative construction:<br><br>Work with CP logic to coordinate transport of audiovisual content from the MS to the MR. | The CPP logic communicates with one of the MS and MR, and the CP logic communicates with the other of the MS and MR. |

"cooperate with (CP) logic to negotiate media content delivery between the MS and the MR" / "cooperate with the [network/serving node] CP logic" appears in claims 1, 20, and 27:

1. "...logic to **cooperate with CP logic to negotiate media content delivery between the MS and the MR**, and ..."

#### 1. Apple's Proposed Construction Reads Key Language Out Of the Claims

The Court's final construction should give "full meaning to every word of the entire claim term." *General Atomics Diazyme Laboratories Div. v. Axis-Shield ASA*, 277 Fed. Appx. 1001, 1006 (Fed. Cir. 2008). Apple's proposed construction would delete—in its entirety—the words "at least" from the claim language. That is, by requiring that the CPP logic can communicate with only one of the MS and MR, and the CP logic can communicate with only the other of the MS and MR, Apple renders superfluous the words "at least" from the claim language at issue: "… a user endpoint (UE) is provisioned with control point proxy (CPP) logic that includes (i) logic to negotiate media content delivery with ***at least*** one of the MS and the MR, (ii) logic to cooperate with network control point (CP) logic to negotiate media content delivery between the MS and the MR…." Ex. 1 ('412 patent) at 25:55-65.

The claim language expressly provides for the CPP logic to negotiate media delivery with "*at least* one of the MS and the MR." *Id.* (emphasis added). Negotiating media delivery with an entity must, of course, include communicating with that entity. The claim language thus means that the CP logic is communicating with either the MS or the MR, or with both. If the CPP logic communicated with only one of the MS or the MR, the words "at least" would be meaningless. In that scenario, the claim language would simply read "control point proxy (CPP) logic that includes (i) logic to negotiate media content delivery with at least one of the MS and the MR." Apple's proposed construction is also unambiguously refuted by numerous dependent claims. For instance, claim 2 establishes that the CPP communicates with both the MS and the MR: "the CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS and MR are both in communication with the UE." Ex. 1 ('412 patent) at 24:64-67. And claim 4 establishes that the CP communicates with both the MS and the MR: "wherein the CP logic is invoked to negotiate media content between the MS and the MR if neither the MS nor the MR are in communication with the UE via local wireless network." *Id.* at 25:4-7.

### 2. The Specification Contradicts Apple's Proposed Construction

Apple's construction conflicts with numerous embodiments in the specification. For example, in one embodiment, the CPP logic is "invoked to negotiate media content delivery between an MS and an MR if both the MS and the MR are in communication with the UE via a local wireless network." Ex. 1 ('412 patent) at 6:5-8 (emphasis added). The specification also explains that the CP instructs both the MS and the MR to operate together: "[The CP] instructs the MS to deliver content to an address corresponding to the MR on the UE. . . .the CP effectively instructs the MR to start expecting content from the MS, and to present such." *Id.* at 13:64-14:5. Indeed, the specification is replete with examples where both the MR and the MS are in communication with the CP or the CPP simultaneously. *Id.* at 16:54-55 ("Communications between the CP and an MR and MS use the SOAP/HTTP protocols.") (emphasis added); id. at 16:63-64 ("The commands between the CP and MS, and between the CP and MR use SOAP/HTTP."); *id.* at 17:57-59 ("[T]he CP handles the negotiation and association of both the MR and MS, using fixed communication links instead of wireless links.") (emphasis added).

### 3. The Plain and Ordinary Meaning Should Govern

The terms "cooperate" and "negotiate" in the context of the claims is clear—and the claim terms should thus be afforded their plain and ordinary meaning. Should the court decide to construe the disputed claim terms, Aylus' proposed construction is supported by the patent specification, which establishes that these terms are used in a straightforward manner and indicate that the CPP and the CP work together to transport the media content residing in the media server to the media renderer. *See, e.g.,* Ex. 1 ('412 patent) at 6:19-22 ("the CPP logic in the UE negotiates delivery on the MR, and the CP logic and CPP logic execute synchronization logic to complete the negotiation of delivery from the MS to the MR."); *id.* at 18:11-13 ("Moreover, the CPP policies and logic can be updated periodically from the network-resident CP at opportune times.").

### D. "The CP Logic . . . Serves As a [First/Second] Proxy"

| Aylus' Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning. Alternative construction: The control point logic acts as an authorized actor. | The CP logic accepts control messages from the CPP and passes them on to the MS or MR |

"the CP logic . . . serves as a [first/second] proxy" appears in claims 1, 20, and 27:

1. "…**the CP logic** resides in the signaling domain and **serves as a first proxy** . . ."

#### 1. Apple's Construction Impermissibly Imports a Limitation from the File History

During prosecution, the examiner offered one definition of a proxy as "[a] process that accepts requests for some service and passes them on to the real server." Ex. 2 ('753 Prosecution History, Office Action, Mar. 25, 2009) at 3-4. The patentee never explicitly or impliedly adopted this proposed definition of proxy. Unbothered by the fact that this definition was put forth by the examiner and never adopted by the patentee, Apple makes numerous fundamental changes to suit its purposes. For example: (i) Apple changes "requests for some service" to "control messages";

(ii) Apple inserts wholesale "from the CPP"; (ii) Apple changes "real server" to "MS or MR." Contrary to the assertions in Apple's brief, there is no evidentiary basis to support these self-serving insertions into the definition of proxy. Apple Resp. Br. at 11-14. For instance, nothing in the patent or file history requires the CP to accept "control messages" directly from the CPP. Likewise, nothing in the patent is consistent with referring to the "media renderer" as a "real server."

### 2. The Plain and Ordinary Meaning Should Govern

Because the meaning of the term "proxy" is straightforward and easily understood by a skilled artisan, it need only be given its plain and ordinary meaning. If, however, the Court is inclined to construe it, Aylus' proposed construction should apply: "the control point logic acts as an authorized actor." While Apple accuses Aylus of getting its proposed construction from sources not listed in Aylus' Patent Local Rule disclosures (*see* Apple Resp. Br. at 13), Aylus' proposed construction is derived from the exact same place as Apple's—the dictionary.com reference cited by the examiner, which contains numerous definitions for "proxy." Ex. 5 ('753 Prosecution History, Definitions for Proxy cited by Examiner from Dictionary.com). The very first definition provided for proxy is "the agency, function, or power of a person ***authorized to act*** as the deputy or substitute of another." *Id.* at 1. Aylus' proposed construction is a faithful application of this definition in the context of the '412 patent.

### E. "Serving Node"

| Aylus' Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br>Alternative construction:<br>A serving element in the wide area network. | A node configured to establish an IMS session with the UE. |

"Serving node" appears in claims 1, 7, 11, 15, 20, 27, 32:

1." . . . provisioning a **serving node** in a wide area network . . ."

### 1. Apple's Construction Reads Back Into the Claims a Limitation Unambiguously Withdrawn During Prosecution

A claim limitation that is expressly withdrawn from a claim during patent prosecution may not be read back into the claim: "Courts are not permitted to read back into the claims limitations which were originally there and were removed during prosecution of the application through the Patent Office." *United States v. Telectronics, Inc.*, 857 F.2d 778, 783 (Fed.Cir. 1988) (citations omitted). Yet that is exactly what Apple is asking this court to do. The application for the 753 patent— later reissued as the patent-in-suit— included the limitation of "IMS network" in the claims itself:

> I. A method of controlling and delivering media content from a media server (MS) to a media renderer (MR) utilizing a wide area **IMS network** for control, comprising the acts of:
>
> provisioning a serving node in the **IMS network** with control point (CP) logic that includes logic to negotiate media content delivery with at least one of an MS and an MR, wherein the CP logic, MS, and MR resides outside of a user endpoint (UE) and the CP resides in the signaling domain and serves as a first proxy; provisioning a user endpoint device of the **IMS network** with control point proxy (CPP) logic that."

Ex. 4 ('753 Prosecution History, Original Claims) at 1. The examiner objected that the acronym IMS was not written out. Ex. 2 ('753 Prosecution History, Office Action, Mar. 25, 2009) at 3. Instead of simply writing out "IP multimedia subsystem," however, the applicant submitted amended claims that ***expressly removed IMS from the claim entirely***:

> I. A method of controlling and delivering media content from a media server (MS) to a media renderer (MR) utilizing a wide area ~~**IMS**~~ network for control, comprising the acts of:
>
> provisioning a serving node in the ~~**IMS**~~ network with control point (CP) logic that includes logic to negotiate media content delivery with at least one of an MS and an MR, wherein the CP logic, MS, and MR resides outside of a user endpoint (UE) and the CP resides in the signaling domain and serves as a first proxy; provisioning the user endpoint device of the ~~**IMS**~~ network with control point proxy (CPP) logic that."

Ex. 3 ('753 Prosecution History, Amendments and Remarks, Aug. 19, 2009) at 2.

The examiner thereafter allowed the patent to issue without the IMS limitation. By asking the Court to reinsert IMS into the claim, Apple is asking the Court to narrow the claimed invention in a manner that contradicts the patent examiner's conclusion that IMS was not a necessary

1 limitation.  The law explicitly rejects this tactic:  "It is significant that none of the claims in the
2 patent which ultimately issued contain the narrow limitation of the original claim . . .. It must be
3 concluded that the Patent Office did not feel that this was a critical limitation. Thus, ***defendant's***
4 ***insistence upon this court's reading back into the claims limitations which were originally there***
5 ***and were removed during prosecution of the application through the Patent Office cannot be***
6 ***permitted***."  *Kistler Instrumente AG. v. United States*,   628 F.2d 1303, 1308 (Ct. Cl. 1980)
7 (emphasis added); *see also Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372-73 (Fed. Cir. 2010)
8 (noting that the "applicant deleted [a joint tube limitation] from the claims," that "the Examiner
9 allowed the claims without any objection to or rejection of the deleted airway tube or tube joint
10 language" and that "it would be improper to read a tube joint limitation back into the backplate.");
11 *Transonic Sys., Inc. v. Non-Invasive Med. Technologies Corp.,* 143 F. App'x 320, 326 (Fed. Cir.
12 2005) ( "[T]his court's case law precludes a reading that restricts 'calculating' to the limitations
13 removed by broadening amendment.").

14 In support of its request to violate black letter law, Apple cites to *Decisioning.com, Inc. v.*
15 *Federated Dept. Stores, Inc.*, 527 F.3d 1300 (Fed. Cir. 2008), which actually supports Aylus'
16 position and reinforces the black letter law Aylus cites.   Apple Resp. Br. at 17. *Decisioning.com*
17 dealt with a patentee that, in the specification of a continuation application, limited his invention
18 from a human or computer process kiosk to solely a computer process kiosk.   *Id.* at 1307.   In
19 light of this, the court properly concluded that it should read the claims in light of the new
20 specification.  *See Decisioning.com, Inc.,* 527 F.3d at 1307.   This logic—that a patentee's actions
21 
22 during prosecution should be given effect—supports Aylus' position because the patentee
23 broadened its claims during prosecution by deleting "IMS" from the claim.

24

25 **2.      The Specification Rejects Apple's Proposed Construction**

26 Even if Apple was not reinserting a term removed during prosecution into the claims, its
27 proposed construction would still be improper.   The specification establishes that IMS is ***not*** the
28 only embodiment of the invention.   One such example of non-IMS networks discussed in the

1  specification is the Public Switched Telephone Network (PSTN). *See, e.g.,* Wigdor Decl. at ¶¶ 41;
2  *see also* Ex. 1 ('412 patent) at 1:49 ; *id.* at 3:40 ("Forward the SIP request or response to a BGCF
3  for call routing to the PSTN or CS Domain").   Indeed, Apple's own proposed construction for
4  the claim term "handset" builds in the requirement that the invention be capable of working on the
5  PSTN: "a mobile phone capable of making and receiving calls over the Public Switched
6  Telephone Network."   Apple Resp. Br. at 23.   And Aylus, moreover, does not dispute that a
7  handset may operate on the PSTN (the dispute is whether the broad term handset must always
8  have such capability).   Thus, in construing one term, handset, Apple aggressively argues that the
9  claimed invention requires the capability to operate on non-IMS networks.   In construing the
10 separate term, serving node, Apple reverses course and aggressively argues that the claimed
11 invention requires the capability to establish an IMS sessions.   The Court should reject Apple's
12 incongruent effort to rewrite various claims in the '412 patent.

13      The specification also reveals that non-IMS protocols are used to transport media content.
14 For example, the specification makes clear that "out-of-band" media transport is not IMS:   "This
15 media transfer from the MS to the MR may use an ***out-of-band (non IMS)*** transport such as
16 RTP/UDP/IP."   Ex. 1 ('412 patent) at 16:17-19.   (Emphasis added.)   Worse, Claims 19 and
17 26 of the patent-in-suit specifically claim **non-IMS, out-of-band** media transfer:

18      "19. The method of claim 1, wherein the negotiation of media content delivery
19          includes the negotiation of ***out-of-band*** media transfer between the MS and the
20          MR."
21      "26. The method of claim 20, wherein the negotiation of media content delivery
22          includes the negotiation of ***out-of-band*** media transfer between the MS and the
23          MR."

24      Finally, the specification explicitly states that building in a limitation relating to IMS, as
25 Apple has done, is improper:   "It will be further appreciated that the scope of the invention is not
26 limited to the above-described embodiments but rather is defined by the appended ***claims***, and that
27 the claims will encompass modifications and improvements to what has been described."   Ex. 1
28 ('412 patent) at 24:30-34 (emphasis added).   "The specification states that the 'descriptions [of

the illustrated embodiments] are made only by way of example and are not intended to limit the scope of the invention.'" *Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.,* 541 F. App'x 964, 971 (Fed. Cir. 2013), reh'g denied (Oct. 17, 2013) (refusing to limit the claim language based on the embodiment in the specification).

### 3. Serving Node Should Be Given Its Plain and Ordinary Meaning

To overcome the presumption of plain and ordinary meaning, a patentee must "clearly set forth" and "clearly redefine" a claim term. *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.,* 262 F.3d 1258, 1268 (Fed. Cir. 2001). The patentee never did so with serving node and it should be given its plain and ordinary meaning. If the Court nonetheless decides to construe the claim term "serving node," Aylus respectfully requests that the Court adopt Aylus' proposed construction that a serving node is "a serving element in the wide area network." The claims establish that the serving node is in a wide area network. *See, e.g.,* Ex. 1 ('412 patent) at 24:40 ("provisioning a serving node in the wide area network"). And the patent establishes that the "serving node" is an "element" by using "serving node" and "element" interchangeably. For example, claim 1 establishes that the CP resides in the serving node: "provisioning a serving node in the wide area network with control point (CP) logic." *See* Ex. 1 ('412 patent) at 24:40-41. And the specification establishes the CP resides in a network element: ". . .moving CP 1016 into a network element …" Ex. 1 ('412 patent) at 17:10.

## IV. CONCLUSION

For the foregoing reasons, Aylus respectfully requests that the Court adopt its proposed constructions.

DATED: October 2, 2014        QUINN EMANUEL URQUHART &
                              SULLIVAN, LLP


                              By   */s/ Amar Thakur*
                                   Amar Thakur
                                   Attorney for AYLUS NETWORKS, INC.