# EXHIBIT 2

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/370,793 | NAQVI ET AL. |
| | Examiner | Art Unit |
| | ANSELM SEQUEIRA | 2419 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>08 March 2006</u>.
2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-19</u> is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-19</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☒ The drawing(s) filed on <u>08 March 2006</u> is/are: a) ☐ accepted or b) ☒ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>7/10/2006, 12/9/2008</u>.
4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

Application/Control Number: 11/370,793 Page 2
Art Unit: 2419

## DETAILED ACTION

1. Claims 1-19 are pending.

### *Drawings*

2. The drawings are objected to because figure 12 incorrectly labels the Control Point Proxy (CPP) (ref 1202) as a Control Point (CP). Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering of the remaining figures. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

Application/Control Number: 11/370,793  Page 3
Art Unit: 2419

### Claim Objections

3. Claim 1 is objected to because of the following informalities:

The acronyms IMS and VCR are not spelled out the first time they are used.

Appropriate correction is required.

### Claim Rejections - 35 USC § 112

4. The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

5. Claims 1-19 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

    a. Where applicant acts as his or her own lexicographer to specifically define a term of a claim contrary to its ordinary meaning, the written description must clearly redefine the claim term and set forth the uncommon definition so as to put one reasonably skilled in the art on notice that the applicant intended to so redefine that claim term. *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357, 52 USPQ2d 1029, 1033 (Fed. Cir. 1999). The term "control point proxy (CPP)" in claim 1 is used by the claim to mean "logic to negotiate with a MS or MR, logic to cooperate with (Control Point) CP logic and VCR controls to control a presentation" (lines 7-10), while the accepted meaning of a "proxy" is "A process that accepts requests for some service and passes them on to the real

server." The term is indefinite because the specification does not clearly redefine the term. For the purpose of this examination, the CPP is assumed to be logic which resides in the user endpoint (UE).

### *Claim Rejections - 35 USC § 103*

6. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

7. The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

   1. Determining the scope and contents of the prior art.
   2. Ascertaining the differences between the prior art and the claims at issue.
   3. Resolving the level of ordinary skill in the pertinent art.
   4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

8. Claims 1-14 and 16-17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Niemi (US PgPub. No. 2004/0107143) in view of Kronz (US Patent No. 6,675,196) and further in view of Vidal (US PgPub. No. 2003/0193426).

9. As to claim 1, Niemi discloses a method of controlling and delivering media content from a media server (MS) to a media renderer (MR) utilizing a wide area IMS network for control, comprising the acts of:

provisioning a serving node in the IMS network with control point (CP) logic that includes logic to negotiate media content delivery with at least one of an MS and an MR (fig 1, ref 100, paragraph [0011], lines 3-5);

provisioning a user endpoint (UE) device of the IMS network with control point proxy (CPP) logic (paragraph [0008], where the User Agent functions as a CPP) that includes (i) logic to negotiate media content delivery with at least one of an MS and an MR (paragraph [0011], lines 5-8), (ii) logic to cooperate with CP logic to negotiate media content delivery between an MS and an MR (paragraph [0008], lines 8-11).

Niemi does not disclose VCR controls to control a presentation of content provided by the MS and rendered by the MR;

in response to a media content delivery request, determining a network context of the UE and a network connectivity of the MS and MR;

invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between an MS and an MR if one of the MS and MR are not in communication with the UE via a local wireless network; and

once media content delivery is negotiated, controlling a presentation of delivery via the VCR controls on the UE.

Application/Control Number: 11/370,793 Page 6
Art Unit: 2419

However, Kronz discloses determining a network context (column 6, lines 5-13) of the UE and a network connectivity of the MS and MR (column 1, lines 60-65; column 2, lines 4-11);

invoking the CPP logic (column 4, lines 27-32) and the CP logic to cooperatively negotiate (column 6, lines 48-53) media content delivery between an MS and an MR (column 2, lines 4-11) if one of the MS and MR are not in communication with the UE via a local wireless network (column 6, lines 5-13). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi with that of Kronz in order to make use of the higher bandwidth and better signal quality that is available from a local area network.

Niemi and Kronz do not disclose VCR controls to control a presentation of content provided by the MS and rendered by the MR and controlling a presentation of delivery via the VCR controls on the UE.

However, Vidal discloses VCR controls to control a presentation of content provided by the MS and rendered by the MR (figure 3) and controlling a presentation of delivery via the VCR controls on the UE (paragraph [0019]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi and Kronz with that of Vidal in order to control the presentation of music and other multimedia content.

10. As to claim 2, Niemi and Vidal do not disclose wherein the CPP logic is invoked to negotiate media content delivery between an MS and an MR if the MS and MR are

Application/Control Number: 11/370,793 Page 7
Art Unit: 2419

both in communication with the UE via a local wireless network. However, Kronz discloses wherein the CPP logic (column 4, lines 27-32) is invoked to negotiate media content delivery (column 6, lines 48-53) between an MS and an MR (column 2, lines 4-11) if the MS and MR are both in communication with the UE via a local wireless network (column 6, lines 5-13). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi with that of Kronz in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

11. As to claim 3, Niemi does not disclose wherein the local wireless network includes at least one a Wi-Fi network, a WiMax network, and a Bluetooth network. However, Vidal discloses wherein the local wireless network includes at least one a Wi-Fi network, a WiMax network, and a Bluetooth network (paragraph [0013]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi with that of Vidal in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

12. As to claim 4, Niemi discloses wherein the CP logic is invoked to negotiate media content delivery between an MS and an MR if neither the MS nor the MR are in communication the UE via the local wireless network (paragraph [0005]; since SIP and

IP Multimedia Subsystem are wide area protocols, it is clear that Niemi's disclosure is not restricted to local wireless networks).

13. As to claim 5, Niemi discloses the method of claim 1, wherein the UE is implemented on a handset (paragraph [0002], lines 1-3).

14. As to claim 6, Niemi discloses the method of claim 5, wherein the handset comprises a display and the MR uses the display (paragraph [0004], lines 1-5; posting pictures and sending IM would require a display).

15. As to claim 7, Niemi discloses the method of claim 1, wherein at least one of the MS and the MR is on a 3G network and in communication with the serving node (paragraph [0002], lines 3-9; paragraph [0004], lines 10-12).

16. As to claim 8, Niemi does not disclose wherein the UE is in communication with the MR via a local wireless network. However, Vidal discloses wherein the UE is in communication with the MR via a local wireless network (figure 1, paragraph [0033]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi with that of Vidal in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

Application/Control Number: 11/370,793                                                                Page 9
Art Unit: 2419

17.    As to claim 9, Niemi does not disclose wherein the UE is in communication with both the MS and the MR via a local wireless network. However, Vidal discloses wherein the UE is in communication with both the MS and the MR via a local wireless network (figure 1, paragraph [0033]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi with that of Vidal in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

18.    As to claim 10, Niemi discloses the method of claim 1, wherein the CP logic negotiates service delivery from the MS (figure 2, paragraph [0016], lines 2-5), the MS being on a 3G network (paragraph [0005]), the CPP logic in the UE negotiates delivery on the MR (figure 2, paragraph [0016], lines 5-8), and the CP logic and CPP logic execute synchronization logic to complete the negotiation of delivery from the MS to the MR (figure 2, paragraph [0016], lines 9-11).

19.    As to claim 11, Niemi and Vidal do not disclose wherein the UE communicates its network context to the serving node and the serving node informs the UE of the serving node's capabilities for negotiation with devices local to the UE. However, Kronz discloses wherein the UE communicates its network context (column 5, line 66 – column 6, line 4) to the serving node and the serving node informs the UE of the serving node's capabilities (column 1, lines 57-65) for negotiation with devices local to the UE (column 6, lines 1-13; since the serving node could be a router (line 2), it is clear that it

Application/Control Number: 11/370,793 Page 10
Art Unit: 2419

would provide information on devices connected to itself). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi and Vidal with that of Kronz in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

20. As to claim 12, Niemi discloses the method of claim 1, wherein the CP logic is configured to serve multiple unrelated devices running CPP logic (paragraph [0004], lines 1-5).

21. As to claim 13, Niemi discloses the method of claim 12, wherein CPP logic is implemented in a UE resident in a handset (paragraph [0003], lines 10-12). Niemi does not disclose wherein CPP logic is implemented in a remote control device. However, Vidal discloses wherein CPP logic is implemented in a remote control device (figure 1, paragraph [0033]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi with that of Vidal in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

22. As to claim 14, Niemi discloses wherein a user uses the CPP logic in the handset when the user is remote from the MR (paragraph [0003], lines 10-12).

Application/Control Number: 11/370,793 Page 11
Art Unit: 2419

Niemi does not disclose wherein a user uses the CPP logic in the remote control device when the user is local to the MR. However, Vidal discloses wherein a user uses the CPP logic in the remote control device when the user is local to the MR (figure 1, paragraph [0033]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi with that of Vidal in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

23. As to claim 16, Niemi and Kronz do not disclose wherein the MS and the MR are in a digital home network. However, Vidal discloses wherein the MS and the MR are in a digital home network (paragraph [0033]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi and Kronz with that of Vidal in order to make use of an available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

24. As to claim 18, Niemi and Kronz do not disclose wherein at least one of the MS and MR announce their presence to the UE using at least one of UPnP protocols, Jini technology, RFID, and Bluetooth. However, Vidal discloses wherein at least one of the MS and MR announce their presence to the UE using at least one of UPnP protocols, Jini technology, RFID, and Bluetooth (paragraph [0013]). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi and Kronz with that of Vidal in order to make use of an available local network

Application/Control Number: 11/370,793   Page 12
Art Unit: 2419

because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

25. Claim 15 is rejected under 35 U.S.C. 103(a) as being unpatentable over Niemi, in view of Kronz and further in view of Vidal and further in view of Cannon et al (US Patent No. 6,014,706) hereinafter Cannon.

26. As to claim 15, Niemi, Kronz and Vidal do not disclose wherein, if one of the MS and MR are remote from the UE, the CPP logic provides information about invoked VCR controls to the CP logic on the serving node to allow the CP logic to control the remote MS or MR. However, Cannon discloses wherein, if one of the MS and MR are remote from the UE, the CPP logic provides information about invoked VCR controls to the CP logic on the serving node to allow the CP logic to control the remote MS or MR (figure 1A, column 6, lines 52-60). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi, Kronz and Vidal with that of Cannon in order to minimize the buffer capacity required in the handheld unit for viewing streaming multimedia (column 6, lines 41-48).

Application/Control Number: 11/370,793 Page 13
Art Unit: 2419

27. Claims 17 and 19 are rejected under 35 U.S.C. 103(a) as being unpatentable over Niemi, in view of Kronz and further in view of Vidal and further in view of the OSGi Service Platform Release 3, hereinafter OSGi.

28. As to claim 17, Niemi, Kronz and Vidal do not disclose wherein the UE determines that it is local to at least one of an MS and an MR by using Universal Plug and Play (UPnP) protocols. However, OSGi discloses wherein the UE determines that it is local to at least one of an MS and an MR by using Universal Plug and Play (UPnP) protocols (page 505, paragraph 25.2, lines 1-7). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi, Kronz and Vidal with that of OSGi in order to make use of a standard with well defined interfaces (see paragraphs 25.14.2 – 25.14.7) which would have the benefit of interoperability between different manufacturers and faster software development.

29. As to claim 19, Niemi, Kronz and Vidal do not disclose wherein the negotiation of media content delivery includes the negotiation of out-of-band media transfer between the MS and the MR. However, OSGi discloses wherein the negotiation of media content delivery includes the negotiation of out-of-band media transfer between the MS and the MR (page 345, paragraph 16.12, lines 2-9). It would have been obvious to one of ordinary skill in the art at the time of the invention to combine the teaching of Niemi, Kronz and Vidal with that of OSGi in order benefit from the greater efficiency of an

Application/Control Number: 11/370,793                                                                                          Page 14
Art Unit: 2419

available local network because of its higher bandwidth and to avoid the air-time costs of using a wide area network.

## *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to ANSELM SEQUEIRA whose telephone number is (571)270-7181. The examiner can normally be reached on Monday-Friday 8am to 5pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Daniel Ryman can be reached on 571-272-3152. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/ais/
3/13/09

Application/Control Number: 11/370,793 Page 15
Art Unit: 2419

/Daniel J. Ryman/
Supervisory Patent Examiner, Art Unit 2419