QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Harold A. Barza (Bar No. 80888)
   halbarza@quinnemanuel.com
   Amar L. Thakur (Bar No. 194025)
   amarthakur@quinnemanuel.com
   Vincent Pollmeier (Bar No. 210684)
   vincentpollmeier@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
   William O. Cooper (Bar No. 279385)
   willcooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Attorneys for Plaintiff,
Aylus Networks, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aylus Networks, Inc., a Delaware corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>Apple Inc., a California corporation<br><br>            Defendant. | CASE NO. 3:13-cv-4700-EMC<br><br>**DECLARATION OF DR. DANIEL J. WIGDOR, PH.D IN SUPPORT OF AYLUS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF** |

# DECLARATION OF DANIEL J. WIGDOR

I, Daniel J. Wigdor, declare as follows:

## I. Introduction

1. I have been asked by Aylus Networks, Inc. ("Aylus") to provide my opinions concerning the meaning of certain claims of U.S. Patent No. RE44,412 (the "'412 patent"). Aylus has also asked me to evaluate the factual basis for Apple, Inc.'s ("Apple's") proposed claim construction for "serving node." I have also been asked to evaluate any relationship between the '412 patent, IP Multimedia Subsystem (IMS) networks, and non-IMS networks.

2. I am being paid my customary rate of $450 per hour for the time I spend on this matter. My compensation is not based on the opinions I reach or the outcome of the litigation.

## II. Qualifications

3. I have offered a previous declaration in this case which contains a detailed list of my credentials and qualifications as an expert. *See* Dkt. No. 62, Declaration of Daniel J. Wigdor in Support of Aylus' Reply Claim Construction Brief.

## III. Materials Reviewed

4. To prepare for this declaration, I reviewed, among other materials, the '412 patent as well as the prosecution histories for the '412 patent and U.S. Patent No. 7,724,753 (the "'753 patent") from which the '412 patent was reissued. I also reviewed literature surrounding IMS sessions and networks, non-IMS sessions and networks, and the state of wireless networks during the mid-2000s, with specific attention to the years 2004, 2005, and 2006.

## IV. IMS Networks, "Hybrid" Networks, and Non-IMS Networks

5. IMS is a network architecture that is used to stream media content over a wide area network. The '412 patent itself describes components of an IMS network architecture for use in some, but not all, embodiments. *See, e.g.*, Ex. 1 ('412 patent) at 2:46-4:16. A network can be classified as an IMS network based on whether or not it uses the IMS network architecture. A network that does not use the IMS network architecture is a non-IMS network.

6. In the context of media content delivery over a network there are, broadly speaking, three possible scenarios for the transfer of media content. All three scenarios require the creation of a "session" between the user endpoint and the serving node.

7. A session is a communication between two devices which is dependent on the kind of network the session is occurring in.

8. The first possible scenario for facilitating media content delivery over a network involves the use of an IMS network. An IMS network is a network that facilitates the delivery of media content by establishing a session between the user endpoint and the serving node using an IMS architecture. IMS typically establishes a session using the Session Initiation Protocol (SIP).

9. The second possible scenario for facilitating media content delivery over a network involves the use of a "hybrid" architecture where both an IMS network and a non-IMS network are present. In this hybrid architecture the IMS network and the non-IMS network are able to communicate through the use of a gateway. A hybrid network is capable of creating either an IMS session or a non-IMS session depending on whether IMS network architecture components are used to facilitate the delivery of media content.

10. The third scenario for facilitating media content delivery over a network involves the use of a non-IMS network. When a non-IMS network is used it is impossible to establish an IMS session because the IMS architecture, by definition, can never be used. Non-IMS networks may also use SIP to create sessions because SIP is not IMS exclusive.

V. **Claim Construction Law**

11. I understand that the words of a claim are generally given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art to which the patent pertains at the time of the invention. I understand that a person of ordinary skill in the relevant art is not an expert in the technical field at issue, but has normal skills and knowledge in that technical field.

12. I also understand that claim construction begins with the language of the asserted claims. I understand that the claims must be interpreted in light of the patent specification but that limitations must not be imported into the claims from the specification. I also understand that the specification's preferred embodiment cannot limit the scope of the claims.

13. I understand that a patent's specification and prosecution history are referred to as "intrinsic evidence." I also understand that only evidence considered by the patent examiner may be considered intrinsic evidence. I understand that only if, after reviewing the intrinsic evidence, the meaning is unclear, may extrinsic evidence inform the construction of the claim terms.

## VI. Claim Constructions

### A. "Serving node," as Used in the '412 patent, does not Require the Use of an IMS Session

14. Claims 1, 15, 20, 27, and 32 recite in part the term "serving node." In my opinion, "serving node," as used in the context of the '412 patent, means "a node configured to establish communication with the UE."

15. As stated above, a session is a communication between two devices and the type of session that depends on the type of network used to facilitate the transfer of media content.

16. In my review of the '412 patent, it is my understanding that the '412 patent conceives of three possible environments to practice the invention in. First, the invention can operate entirely within an IMS architecture. *See* Ex. 1 ('412 patent) at 7:16-20. By using an IMS network architecture the session that is established between a user endpoint and the serving node in question is an IMS session. Second, the invention described in the '412 patent may also

05010.00001/6324307.2                                              -4-                    Case No. :13-cv-4700-EMC
                                                                         DECLARATION OF DANIEL J. WIGDOR IN SUPPORT OF
                                                                         AYLUS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

1  operate in a hybrid environment where both IMS and non-IMS networks are present.  *See* Ex. 1
2  ('412 patent) at 13:13-21.   The invention is able to do so by using gateways through which the
3  non-IMS network and the IMS network can interact.   In this hybrid environment, the session
4  established between the user endpoint and the serving node may be an IMS session or it may not
5  be an IMS session depending on whether IMS network architecture components are used to
6  deliver media content.   If IMS network components are not used to deliver the media content then
7  no IMS session has been established.   Finally, the invention described in the '412 patent may
8  operate entirely in a non-IMS network architecture.   *See* Ex. 1 ('412 patent) at 14:51-15:3.   A
9  non-IMS network never uses an IMS network architecture to deliver media content which,
10 therefore, makes it impossible to establish an IMS session.   This is so because the type of session
11 is determined by the type of network architecture used.   Without an IMS network architecture
12 there can be no IMS session.

13     17.   The '412 specification contains embodiments that expressly contemplate non-IMS
14 networks and, therefore, non-IMS sessions.   Specifically the specification describes networks
15 such as 2.5G and 1xRTT EVDO that pre-date IMS and therefore must be non-IMS networks.
16 *See, e.g.* Ex. 1 ('412 patent) at 1:60-2:15; 2:25-30; 5:4-14.

17     18.   It is therefore my opinion that the term "serving node," in the context of the '412
18 patent means "a node configured to establish communication with the UE" and does not mandate
19 the use of an IMS network or an IMS session.

20

21     I declare under penalty of perjury under the laws of the State of California that the
22 foregoing declaration is true and accurate. This declaration was executed in Toronto, Canada on
23 November 10, 2014.

24

25

26                                         Daniel J. Wigdor, Ph.D.

27

28