QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Harold A. Barza (Bar No. 80888)
  halbarza@quinnemanuel.com
  Amar L. Thakur (Bar No. 194025)
  amarthakur@quinnemanuel.com
  Vincent Pollmeier (Bar No. 210684)
  vincentpollmeier@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California   90017-2543
Telephone:     (213) 4433000
Facsimile:     (213) 4433100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  William O. Cooper (Bar No. 279385)
  willcooper@quinnemanuel.com
  Joseph B. Martin (Bar No. 284156)
  jobymartin@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Plaintiff,
Aylus Networks, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aylus Networks, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Apple, Inc., a California corporation<br><br>Defendant. | CASE NO. 3:13-cv-4700<br><br>**AYLUS NETWORKS, INC.'S OPPOSITION TO   APPLE'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS**<br><br>DATE: May 14, 2015<br>TIME: 1:30 p.m.<br>PLACE: Courtroom 5, 17th Floor<br>JUDGE: Honorable Edward M. Chen |

## I. INTRODUCTION

Apple served Invalidity Contentions approximately eleven months ago in May 2014; claim construction has been fully briefed, argued and ruled on; and fewer than seven weeks of fact discovery remain. Apple now seeks to (1) amend its charts concerning previously disclosed prior art references; and (2) add three new prior art references to the case. In the interest of judicial efficiency and in an effort to compromise, Aylus is willing to stipulate to Apple's first request, regarding amending its charts concerning previously disclosed prior art references. But Aylus opposes Apple's second request because Apple has not shown good cause for its proposed eleventh-hour addition of three new prior art references. A showing of good cause would require diligence in obtaining/identifying as relevant the new information and a prompt motion to supplement. Here, Apple has demonstrated neither. Each of Apple's three new alleged prior art references could have and should have been identified months ago.

Apple's motion is a transparent attempt to hedge its bet on the pending *Inter Partes* Review ("IPR"), in which it no doubt submitted what it believed to be its best prior art based on the broadest reasonable construction of the claims. Now, with the looming prospect that the Patent Trial and Appeal Board ("PTAB") will reject some or all of Apple's grounds for review, it is trying to shore up its invalidity case with new prior art on the pretense that the Court's claim construction has suddenly made this prior art relevant. Not only does Apple's claim construction excuse ring hollow, but the fact that Apple would limit its invalidity contentions to its own narrow self-serving constructions instead of anticipating a broader reasonable constructions as the default, demonstrates its own lack of diligence. Further, Apple admits that it has long since known of the three "new" references; but for its own strategic reasons, elected not to identify them as relevant to its invalidity contentions until now.

Even if Apple can establish that the additional references it seeks to add only became relevant after the Court adopted Aylus' claim construction, Apple should have anticipated those

constructions. Aylus' initial proposal for the constructions on which Apple relies was to simply use the plain and ordinary meaning, which would not have incorporated the limits proposed by Apple and which was disclosed to Apple on July 17, 2014. Declaration of Joby Martin in Support of Aylus's Opposition to Apple's Motion for Leave to Amend Its Invalidity Contentions. ("Martin Decl.") ¶ 5, Ex. A. Apple has not explained why it could not have updated its contentions shortly thereafter or, more importantly, why it was reasonable for it to limit its invalidity contentions to its own narrow constructions limiting the claims to Universal Plug and Play ("UPnP") technology, when, as the Court found, "Apple's construction is improper because it interprets the claim language in a manner that excludes an embodiment expressly contained in the specification." (Dkt. No. 102 at 12).

Contrary to Apple's assertions, the end of fact discovery is right around the corner. In the scope of this case, the approximately seven weeks remaining for fact discovery, which closes on June 4, 2015, is very short. Not only is that insufficient time to complete the fact discovery necessary to fully respond to Apple's newly proposed allegations, but it will require Aylus to divert critical resources from its effort to complete its fact discovery on all other issue in the case. Absent sufficient discovery on Apple's belatedly identified references, Aylus will be deprived of a meaningful opportunity to defend the validity of its patent.

## II. PROCEDURAL HISTORY

On October 9, 2013, Aylus filed its complaint in this action. Dtk. No. 1. On April 3, 2014, Aylus served its Infringement Contentions. Martin Decl. ¶ 2. Pursuant to the Court's scheduling orders, on May 12, 2014, Aylus served its First Amended Infringement Contentions. Martin Decl. ¶ 3. On May 22, 2014, Apple served its initial Invalidity Contentions. Martin Decl. ¶ 4. On July 24, 2014, the parties exchanged proposed claim constructions. Martin Decl. ¶6. On July 28, 2014, the parties submitted their joint claim construction. Dkt. No. 47. On September 29, 2014, Apple filed to two petitions with the PTAB seeking *Inrer Partes* Review of the patent-in-suit. Martin Decl. ¶8. On October 20, 2014, the parties presented a technology tutorial to the Court in which Aylus identified the Microsoft Xbox as the technology over which

the patent-in-suit was a substantial improvement. Martin Decl. ¶9. On November 4, 2014, the Court held the *Markma*n hearing in this action and its written claim construction ruling followed on January 27, 2015. Dkt. No. 102. Apple sent its invalidity contentions with new prior art reference to Aylus on March 6, 2015 – approximately ten months after its initial Invalidity Contentions, approximately eight months after it became aware of Aylus's claim constructions, approximately four months after the Markman hearing, and thirty-eight days after the written claim construction order. Martin Decl. ¶ 12. Fact discovery is set to close on June 4, 2015. Dkt. No. 108.

## III.   LEGAL STANDARD

Amendments to invalidity contentions require a timely showing of good cause. (Patent L.R. 3-6.) This requires proof of diligence, *i.e*. that the party promptly sought amendment after discovering the new information. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006). A delay of even a few months may demonstrate a lack of diligence. See, *id*. (delay of three months not diligent). These rules were "designed to require parties to crystallize" invalidity theories "early in the litigation and to adhere to those theories once they have been disclosed." *Id.* at 1366 n. 12.

This Court is "decidedly conservative" towards amendment of invalidity contentions. *Kilopass Tech., Inc. v. Sidense Corp.*, No. C-10-02066 SI, 2011 WL 5212259, at *1-2 (N.D. Cal. Nov. 2, 2011) (denying motion for leave to amend invalidity contentions) (internal citation omitted). Such conservatism is "designed to prevent the 'shifting sands' approach to claim construction." *Id.*

The "good cause" inquiry first considers whether the moving party was diligent in amending its contentions and then considers prejudice to the non-moving party should the motion to amend be granted. *Id.* 1366-68. "The diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking

amendment once the basis for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc. et al.*, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013); *see also West v. Jewelry Innovations, Inc.*, No. C 07-1812 JF (HRL), 2008 WL 4532558 at *2 (N.D. Cal. Oct. 8, 2008) ("Thus, a party's diligence in amending its preliminary invalidity contentions upon finding new prior art is only one factor to consider; the Court also must address whether the party was diligent in discovering the basis for the proposed amendment."). Moreover, "[o]nly if the moving party is able to show diligence may the court consider the prejudice to the non-moving party." *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10CV0541-GPC-WVG, 2013 WL 5674834, *7 (S.D. Cal. Oct. 16, 2013).

Apple bears the burden of establishing diligence. *O2 Micro*, 467 F.3d at 1366. Absent diligence, the "good cause" inquiry ends—and the Court need not consider any alleged prejudice arising from the belated amendment. *Id*. at 1367-68 (affirming denial of motion to amend and holding there was "no need to consider the question of prejudice" where movant did not act diligently).

### IV.     ARGUMENT

#### A.     Apple Has Not Shown Good Cause To Amend Under Patent Local Rule 3-6

##### 1.     The Court's Claim Construction Does Not Excuse Apple's Lack of Diligence in Identifying the Additional Prior Art

On September 29, 2014, Apple collected what it no doubt considered its strongest prior art into two petitions, which it submitted to the PTAB, requesting that the PTAB initiate an IPR as to all claims of the patent-in-suit. Apple was aware that "[a] claim subject to *inter partes* review receives the 'broadest reasonable interpretation' ('BRI') in light of the specification. 37 C.F.R. § 42.100(b)," (Dkt. No. 61-3 at 8), but still limited its prior art to references directed to UPnP technology. Now, having seen Aylus' responses to its IPR petitions, Apple is rethinking its decision to put all its eggs in the UPnP basket. Even though the Court's claim construction is no broader than that which the PTAB would apply, Apple contends that the Court has "significantly

enlarged the pool of useful prior art." Mot. at 6.[1]  But the "pool of useful prior art" has not changed and Apple has not explained why it limited its application of prior art to its own narrow claim construction.

Because Apple was preparing for its IPR and because it was aware at an early stage that Aylus was seeking a broader claim construction, Apple had every incentive to include in its original contentions any prior art that it thought might be relevant to its invalidity contentions. Martin Decl. Ex. A.  By failing to do so, it must be "held accountable" for "not prepar[ing] for the fact that the court may adopt" a broader construction.  *Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 2527773 at *4 (S.D.N.Y 2006) (applying rules modeled after the Northern District of California Local Patent Rules).  Moreover, by sitting back and waiting for the Court to construe the claims, Apple failed to exercise the required "diligence in discovering the basis for[its proposed] amendment . . . ."  *Positive Techs.*, 2013 WL 322556, at *2.

The issue here is not when Apple became aware of its three new references, but only when Apple decided it was in its interest to identify them as prior art and include them in its invalidity contentions.  Apple appears to acknowledge that it was aware of at least two of the new references, Apple Interactive TV and Cisco Explorer 8000, from presumably before it served its initial contentions, but that only after the Court's claim construction did it become "aware of these products' relevance . . ."  Apple further claims that it became aware of the Microsoft Xbox only at the technology tutorial.  Mot. at 7; Buergi Decl., ¶¶ 2-3.[2]  The issue, therefore, is whether Apple was diligent in identifying these references as prior art and including them in its invalidity contentions.  As discussed below, it was not.

Apple's only excuse for not identifying at least two of these references as prior art in its initial invalidity contentions is that "[t]he Court's broad constructions of these terms . . .

---

[1] Apple's proposed additional prior art was suitable for an IPR because it consists of printed publications.  35 U.S.C. §311.  The features of the products Apple has cited as prior art were all disclosed in documents that, according to Apple, were publically available. *See* Buergi Decl., Exhibit B at 2, 56 and 86; *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) ("public accessibility has been called the touchstone in determining whether a reference constitutes a 'printed publication'")(internal quotes omitted).

[2] Interestingly, Mr. Buergi states that Apple became aware of the relevance of the Apple Interactive TV and the Cisco 8000 only on March 2 and March 4, respectively, just days before it submitted nearly a hundred pages of claim charts on these two references. Buergi Decl. ¶ 2.  Ms. Corbett claimed in an email that Apple was ready to produce presumably these same charts days before, on February 27, 2015. Corbett Decl., Ex. B at 2.

significantly enlarged the pool of useful prior art" making these references suddenly relevant to invalidity.  Apple admits that its "previously charted prior art was based on Universal Plug and Play ('UPnP')," because that fit with Apple's proposed claim construction.  Mot. at 6.  Apple has not, however, explained why it was reasonable for Apple to conclude that only UPnP prior art was relevant when the patent specification clearly distinguishes the invention from UPnP.  For example, when construing one of the claim terms at issue here, the Court found that "the term 'negotiate media content' should be construed to encompass a preselection method (*which differs from the UPnP method*), because the preselection method is disclosed in the specification. . . . Were the '412 patent limited to the UPnP method described by Apple, the embodiment in Figure 15 would not be possible." (Dkt. No. 102 at 12.) (emphasis added).  Apple's reliance on its own narrow construction was, therefore, unwarranted and unreasonable.  The same is true for the "cooperate . . ." limitation also relied on by Apple.  For that term the Court found that "Apple's construction expressly disallows [the claim 4] scenario, because it requires the CPPs involvement."  *Id*. at 15.  Apple should have, therefore, anticipated that its narrow constructions would be rejected.

Apple's reliance on *Positive Tech*. as supporting its amendments here is misplaced.  In that case, the defendant did not already know of the new references, but only discovered them "in response to new or changed circumstances in the case." *Id*. at *2.  Here, by contrast, Apple already knew of at least two of the references and reasonably should have known of the third.  Also, in *Positive Tech.*, the Court's construction of the claim term "matrix display" opened up a whole new area of prior art, by including polarity-dependent devices within the scope of the claims making "it reasonable for defendants to dig even deeper [into the prior art] than they had previously with respect to polarity-dependent devices." *Id.* at *3.  Here, Apple has not shown how the newly identified prior art is implicated by the Court's claim construction.

Specifically, Apple argues that the Court's construction of the "negotiate . . ." limitation, does not require invalidating prior art "to compare transfer protocols and content formats . . ." but does not explain how that difference implicates the new prior art other than to suggest that it made non UPnP prior art relevant.  As the Court observed, the key feature implicated by this claim

construction is whether the claim covers a device "in which the 'data formats' and 'transfer protocols' of the MS and MR are *preselected.*" (Dkt. No. 102 at 11) (emphasis original). Tellingly, in none of Apple's proposed invalidity charts for the new references does Apple discuss the references ability to use preselected data formats or transfer protocols.   In fact, the terms "data format" or "transfer protocol" do not appear in any of these charts, nor does the word "preselected."[3]

Similarly for the "cooperate . . ." limitation.   Although Apple's claim construction required "[t]he CPP logic communicates with at least one of the MS and MR, and the CP logic communicates with at least the other of the MS and MR," (Dkt. No. 102 at 14), Apple did not identify this as a feature of *any* of its originally cited prior art.   In fact, in only three of its 19 original charts does the word "communicate" or "communicates" appear in Apple's discussion of the claim limitation that includes the "cooperate . . ." language and in none of those instances is it used to describe the limitation proposed by Apple.[4]

Apple, therefore, has not and cannot show that the Court's adoption of Aylus' broader specific claim constructions actually caused Apple to reconsider the specifics of its prior art selection.   The most Apple can say is that by rejecting virtually all of Apple's proposed constructions the Court decisively rejected Apple's effort to limit the Aylus claims to UPnP, a rejection Apple should have reasonably expected.

The facts here are similar to those in *Silver State Intellectual Technologies, Inc. v. Garmin International, Inc.*, 32 F.Supp.3d 1155 (D.Nev. 2014), where the court applied local patent rules very similar to those at issue here to reject defendant's effort to add new prior art references after the court rejected defendant's proposed claim construction.[5]   That court recognized that, as here,

---

[3] In Apple's original invalidity charts, only three of the 19 charts highlight the UPnP feature of determining the data format and transfer protocol to use for transfers between the MS and MR. Martin Decl. ¶ 14, Ex. B – D [See E.g. Froidecoeur (Ex. G) at 6; Vardi (Ex. Q) at 7; and UPnP Design (Ex. P) at 17].

[4] This feature is also not discussed in any of Apple's charts for the proposed new references, but that is expected given that the Court has confirmed that this requirement is not part of the claim.

[5] The court in *Silver State* recognized the similarly between the Local Patent Rules of the District of Nevada and those of the Northern District of California.   *Silver State*, 32 F.Supp.3d at 1161-62.   In fact, the test for showing good cause is word-for-word identical. Compare N.D.Cal LPR 3-6 with D.Nev. 16.1-12, both of which state that "Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause, include: (a) a claim construction by the Court different from that proposed by the party seeking

"[t]his is not a case where the Court's claim construction Order adopted an unexpected construction that would prompt the parties to evaluate anew any applicable prior art." *Id*. at 1163. The court found that the defendant had long been aware of the plaintiff's proposed construction, which was to use the plain and ordinary meaning, and was not diligent in waiting to disclose its new prior art:

> Garmin has not explained why it did not investigate the newly identified prior art upon receiving Silver State's claim construction brief instead of waiting to see how the Court would construe the user preferences claim limitations. Garmin was aware of the risk, and should have prepared for the possibility, that the Court would adopt Silver State's proposed construction. **The Local Patent Rules do not contemplate allowing a party to postpone disclosures in the hope the Court will adopt its proposed claim constructions, and disclosing all pertinent contentions and supporting prior art only after the party loses at claim construction**.

*Id*. (emphasis added).   Apple has not and cannot explain why it did not anticipate the Court's claim construction and identify these prior art references months ago.

### 2. Apple Has Not Demonstrated that the Proposed New References are Any More Relevant Than the Original References

The court should also consider "such factors as the relevance of the new prior art and the difficulty of locating the prior art." *Synopsys Inc v. Mentor Graphics Corp*. 2014 WL 1477917, *2 (N.D.Cal. 2014 (internal quotes omitted).   Here, Apple has not explained any particular relevance of the three proposed new references other than to argue that "[t]he Court's broad constructions turned the Cisco, Apple and Microsoft set-top boxes into relevant prior art for the reasons discussed above."   Mot. at 6-7.   As discussed above, however, the only "reasons" Apple gives are its generic discussion of two specific claim terms, the specific constructions of which do not appear to factor into Apple's actual invalidity contentions.   Apple has not, for example, argued that the newly cited references are any closer to the claimed invention than the previously cited references or that adding them will get Apple any closer to satisfying its burden on invalidity. Rather, Apple appears to want these references in the case only so it can avoid the charge that all of its prior art is related to UPnP, when the patent clearly claims something different.

---

amendment; (b) recent discovery of material prior art despite earlier diligent search; and, (c) recent discovery of nonpublic information about the Accused Instrumentality despite earlier diligent search. The duty to supplement discovery response does not excuse the need to obtain leave of Court to amend contentions."

### 3. Apple's Delay Demonstrates a Lack of Diligence

Even assuming the Court's adoption of Aylus' claim construction truly motivated Apple's addition of the new references, Apple's diligence should be measured from July, 2014, when Apple first learned of Aylus' proposed construction of the two claim terms relied on by Apple; and not the date of the Court's claim construction order.[6]  By July Apple should have reasonably anticipated that its narrow claim constructions, which were inconsistent with the patent specification and other patent claims, would not likely survive the claim construction process.   At that time Apple should have begun its process of researching additional prior art, including the prior art of which is was already aware, the Apple and Cisco references, and other similar references, *e.g.*, the Microsoft reference.

Apple does not, because it cannot, justify its true delay in identifying the new references.  Apple's motion admits that it was able to research, identify and draft contentions for the new references within weeks of the Court's claim construction, so it cannot possibly justify waiting eight months to identify the Apple and Cisco references and at least five months to identify the Microsoft reference.[7]   Apple's unjustified delay in identifying its new prior art and amending its invalidity contentions establishes a lack of diligence and forecloses the required showing of good cause.

### B. Allowing Apple to Amend its Invalidity Contentions at This Late Stage Would Unduly Prejudice Aylus

Where, as here, the moving party cannot show diligence, a court need not consider the prejudice to the non-moving party.   *O2 Micro*, 467 F.3d at 1368; *Genentech, Inc. v. Trs. Of the Univ. of Pa.,* No. 10-CV-02037, 2011 U.S. Dist. LEXIS 108127, at *4 (N.D. Cal. Sept. 16, 2011).  However, if the Court chooses to reach this question, Apple's late supplementation will prejudice Aylus at least because Aylus will not have adequate opportunity to take discovery on Apple's newly asserted prior art references.

---

[6] In its Patent L.R. 4-2 Disclosures on July 17, 2014, Aylus proposed using the plain and ordinary meaning for both claim terms.   In the Patent L.R. joint claim construction chart, filed on July 28, 2014, Aylus added an alternative construction for the "negotiate . . ." term.   That alternative construction was adopted by the Court.

[7] The five months is generously measured from when Apple claims to have been made aware of the Microsoft Xbox, at the tutorial in October.

Apple has identified at least 34 separate documents as related to these three new references, most of them from third parties.   *See* Buergi Decl., Exhibit B at 2, 56 and 86. These documents, many of which Apple only recently produced, do not tell the whole story and Aylus may need to take additional discovery from Apple as well as third parties Microsoft and Cisco.[8]   As Apple knows, third party discovery is especially slow and difficult.   For example, Apple's subpoena to Microsoft, which Apple claims to require documents by April 3 and a deposition by April 17, has yet, as far as Aylus is aware, to yield either documents or a schedule for a deposition.   Martin decl., ¶ 15.

Aylus has many things to accomplish in the remaining seven weeks of discovery without the added burden of taking discovery on these tardily identified references.   For example, Aylus is working diligently to complete necessary discovery on all the issues properly raised in this case, and needs all available time and resources directed at those tasks, including preparing to take and defend over twenty-eight depositions; reviewing recent productions of at least 761,972 pages of documents (over 50% of its total production), which Apple only produced in the last five weeks; and preparing to produce ESI from numerous Aylus custodians over the coming weeks.   Aylus would be prejudiced if it was required to divert its attention and resources from these important efforts to accommodate Apple's eleventh-hour addition of new prior art – prior art it has known about for many months if not longer.   This is especially true because any hope that third party discovery would yield any fruit would require Aylus to divert those resources now, weeks before the Court is scheduled to rule on Apple's motion, which is not set for hearing until May 14, 2015.

To deflect from its failure to timely identify the proposed new references, Apple tries to shift the blame, contending that Aylus "should have expected the claims to encompass such prior art and therefore it should come as no surprise to Aylus that Apple now seeks to amend its invalidity contentions to include such prior art."   Mot. at 8.   But it is Apple's burden to prove invalidity and Aylus has no obligation to anticipate what art Apple might or might not chose to rely on.   Apple also mischaracterizes Aylus' reference to the Microsoft Xbox as somehow putting

---

[8] Because Cisco is a Quinn Emanuel client, Aylus will need to engage separate counsel to pursue discovery from Cisco, which will further complicate and delay any such effort.

1   Aylus on notice that Apple might rely on that device as prior art.  It did not.  Aylus referenced
2   the general features of the Xbox as an example of the state of the art at the time of the invention,
3   *not* "as embodying the technology of the '412 patent." *Id*. The Xbox was old, the Aylus patent was
4   new.  Aylus never considered the Xbox as relevant prior art to its patent and Aylus could not have
5   anticipated Apple's reliance on it now.

6   Apple's proposed eleventh-hour addition of new prior art references would greatly
7   prejudice Aylus and it would reward Apple for gaming the discovery process and undermining the
8   IPR process.

## CONCLUSION

Aylus respectfully requests that the Court deny Apple's request to amend its invalidity contentions to add three new prior art references to the case.

DATED:   April 17, 2015              QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ Amar L Thakur
    Amar L Thakur
    Attorneys for Plaintiff,
    Aylus Networks, Inc.