**Pages 1 - 27**

                    UNITED STATES DISTRICT COURT

                 NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

AYLUS NETWORKS, INC.,            )
                                 )
          Plaintiffs,            )
                                 )
  VS.                            )      NO. C 13-04700 EMC
                                 )
APPLE, INC.,                     )
                                 )
          Defendants.            )
_____      )

                              San Francisco, California
                              Thursday, May 28, 2015

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    DLA PIPER LLP
                    2000 University Avenue
                    East Palo Alto, California  94303
              BY:   **CHRISTINE KERBA CORBETT**
                    **ROBERT BUERGI**
                    **ATTORNEYS AT LAW**

For Defendants:
                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    865 South Figueroa St., 10th Flr.
                    Los Angeles, CA 90017
              BY:   **AMAR THAKUR**
                    **ATTORNEY AT LAW**

Reported By:        Rhonda L. Aquilina, CSR #9956, RMR, CRR
                    Court Reporter

**APPEARANCES:   (continued)**

For Defendants:

Quinn, Emanuel, Urquhart & Sullivan LLP
50 California Street - 22nd Floor
San Francisco, California  94111
By:  **WILLIAM COOPER**
**ATTORNEY AT LAW**

Quinn, Emanuel, Urquhart & Sullivan LLP
555 Twin Dolphin Dr. - 5th Floor
Redwood Shores, California  94065
By:  **AILEEN J. KIM**
**ATTORNEY AT LAW**

**Thursday - May 28, 2015**                              **2:30 p.m.**

**P R O C E E D I N G S**

---oOo---

THE CLERK:  Calling case 13-04700, Aylus versus Apple.

Counsel, please come to the podium and state your name for the record.

MS. CORBETT:  Good afternoon, Your Honor.  Christine Corbett and Robert Buergi on behalf of defendant Apple.

THE COURT:  All right.  Thank you.

MR. THAKUR:  Good afternoon.  Amar Thakur, William Cooper, and Aileen Kim on behalf of Aylus.

THE COURT:  All right.  Good afternoon.

We have two matters on, one is a motion -- Apple's motion to amend invalidity contentions.  And the question here is we all know that diligence is a necessary requisite, and you have to act with diligence in promptly moving to amend after circumstances supporting amendment occurs, and the question is when did those circumstances appear?  Apple argues, well, not until this Court actually issued a claim construction, and Aylus argues that no, it runs prior to that, it runs when you know that there's a good possibility that the counter construction may prevail, in which it meant you'd better get your sort of alternate invalidity contentions out there, because the clock begins to run.

And it does seem to me that that's what the Federal

Circuit said in *O2 Micro*, or that's what it says -- what the district court said in the *France Telecom* case citing another district court case here, that when you have reason to believe that there is a possibility, one could add reasonable possibility, non-speculative possibility, that the counter construction or the opposing construction may prevail, that's when the diligence clock begins to run.  And I've not found a case to the contrary, so it seems to me that judging by that, the parties have exchanged proposed claim constructions as far as back as July of 2014, so that was some eight months, according to my -- yeah, eight or nine months, something like that, eight months, a little over eight months, between that time and the filing of the motion to amend.  And I understand it took some time to sort the issue of claim construction, but that's my take.

MR. BUERGI:  Understood.  Your Honor, I have two authorities that stand for the proposition that the diligence clock starts running when the Court issues its order.  The first one is the Patent Local Rules, and specifically Patent Local Rule 36A, which is the Patent Local Rule and subsection under which Apple is bringing its motion.  That local rule says that good cause to amend invalidity contentions may exist when the Court issues a claim construction that differs from that proposed by the parties seeking amendment.  So for that to make sense, the diligence clock starts running at the Court's claim

construction order.  In other words --

THE COURT:  Well, there certainly can be a case where that is appropriate, where the claim construction is something that neither party asks for that wasn't fairly anticipated by the parties, but if it's one where it was fairly anticipated, I mean, why should it wait?

MR. BUERGI:  Well, the Patent Local Rule says a claim construction by the Court different from that proposed by the parties seeking amendment.  So all that the Patent Local Rule contemplates is that the construction was different than what the parties seeking amendment offered.  The local rule doesn't say anything about whether it was foreseeable or whether the Court adopted something that the other side --

THE COURT:  But that kind of reflects that notion.  I mean, different -- in other words, if it were different, then you would admit, right, if they adopted one or the other, then you would admit that, that the clock runs there.  It's the converse, the obverse of Rule 36A.

MR. BUERGI:  If -- I think I understand the Court's question.  If the Court adopted Apple's construction in this case, 36A would not apply.  I think that's what you were asking.  That's correct.

THE COURT:  Or Aylus'.  I mean, if I adopted one or the other's, isn't it --

MR. BUERGI:  Well, I think the Patent Local Rule is

specifically talking about the case where you adopt Aylus'.  In that case, Apple can amend its invalidity contentions.  That's specifically outlined in the rule there, in plain black and white that's what it says.

And as further confirmation, there's a case from this Court, which is the *Positive Technologies -v- Sony* case, that's in the Apple briefs, and in that case the facts are strikingly similar to the facts here.  The Court issued a claim construction order, the defendant did more prior art searches and then sought leave to amend its invalidity contentions, and the Court let it amend its invalidity contentions, in part because the defendant was diligent and started at the time of the Court's claim construction order.  And, again, that was the *Positive Technologies* case.

So that case confirms what the Patent Local Rule says in black and white, which is good cause may exist if the Court's construction differs from the moving parties' proposed construction.

**THE COURT:**  All right.  Why isn't that dispositive?

**MR. THAKUR:**  Your Honor, the Patent Local Rules say good cause may exist.  The fact pattern in here demonstrate that good cause does not exist.

I brought a little board that highlights the dates.  Your Honor, I'll just hold it up here for the Court to see.  The situation in this case is far more egregious than the

traditional case where they waited too long.  They knew on July 28th, 2014 what our proposed constructions were going to be.

What makes this case even more egregious is on September 29, 2014 they filed two IPRs.  In those IPRs they asked the PTAB to adopt Aylus' constructions, so effectively they embraced Aylus' constructions on that date, and they submitted the best prior art to the PTAB on that date based on Aylus' proposed constructions.  So even if the Court somehow finds July 28th not to be persuasive, September 29th, 2014 must be compelling, because that's the date they adopted those constructions, and submitted prior art.

**THE COURT:**  For IPR purposes.

**MR. THAKUR:**  Correct.  But the point is the --

**THE COURT:**  And of course you know everybody wears a different hat, different forum, don't they?  Hard to be consistent.

**MR. THAKUR:**  No.  But the point is on that date they became aware of the relevance.  What they argue is they did not become aware of the relevance of this additional prior art until this date -- excuse me, until the date the Court issued the order.  They clearly understood the relevance on that date.

Your Honor, this is a case that's one week away from close of fact discovery.  They are adding three system prior art references.  These are not three patents, so it's not a matter

of reading 15 documents.  Each one of those references has tens of documents.

**THE COURT:**  Well --

**MR. BUERGI:**  The IPR, as I think the Court recognized, is an entirely different proceeding.  The IPR has no --

**THE COURT:**  All right.  So it may not be binding, but I mean, the idea that you had no way to know or you couldn't anticipate, and, you know, doesn't that inform the diligence?

**MR. BUERGI:**  If the proposition is when we knew of Aylus' constructions, we knew of them when they were disclosed to us, there's no question about that.

**THE COURT:**  And you knew that they were pretty credible -- it's a very credible construction by your actions in IPR.

**MR. BUERGI:**  Respectfully, in the IPR we were using Aylus' constructions against it.  We were saying --

**THE COURT:**  Oh, I understand.  But you had to --

**MR. BUERGI:**  We still disagree with the Court's -- respectfully, we disagree with Aylus' constructions for purposes of this case.

**THE COURT:**  But you certainly knew that there was a -- in arguing in support of it in one forum, you certainly knew it was not a frivolous, meritless, facially absurd construction.

**MR. BUERGI:**  If the Court is asking whether our IPR petitions were facially absurd, they certainly were not, no.

But, again, this motion is based on the Patent Local Rule. And if we look at the Patent Local Rule, it's not concerned with IPRs, it's concerned with the Court's claim construction order, and under 36(a), that's the sole triggering event in Patent Local Rule --

THE COURT:  And it does say "may."

MR. BUERGI:  And it says "may," and it says "may" because there are other requirements of good cause, one is lack of prejudice to the other side, and the second is diligence.

THE COURT:  And why isn't there prejudice, by the way?

MR. BUERGI:  There's no prejudice to Aylus here for a variety of reasons.  I'll try to go through them quickly.  One is Aylus is not -- cannot credibly be expected to take third party -- or discovery from third party discovery or discovery from Apple about this prior art.  Aylus has not taken meaningful prior art discovery in this case either from Apple or from third parties.  The only prior art discovery --

THE COURT:  Based on the prior invalidity contentions that were disclosed.

MR. BUERGI:  Yes, thank you for the clarification.  To date, it hasn't done so.  It did issue a subpoena to Intel, but that was a copy of Apple's subpoena to Intel, and it hasn't followed up on that subpoena, as far as I know.

So it's -- prior art discovery in this case has been trivial, if anything, and there's no reason to think that all

of a sudden now it's going to have all this discovery work to do. That's just not a reasonable expectation.

Moreover -- so more reasons why there is no prejudice to Aylus. Aylus knew of the X-Box prior art in particular before Apple. Aylus brought that art up at its technology tutorial, and that was the date when Apple first learned of the prior art, so Aylus can't say it's prejudiced by this X-box prior art that it knew of before Apple. I just don't see that as a credible argument.

Moreover, the prior art here, all three prior art references that Apple is seeking to amend to its contentions, are now newly relevant in light of the Court's claim constructions of two particular terms, and those constructions are Aylus' constructions. So this prior art is relevant because the Court adopted Aylus' constructions, and therefore, it's not prejudicial to Aylus for it to reap the results of the Court adopting its constructions. The fair result here is for it to be subject to this prior art that is now newly relevant in light of its own constructions. In other words, if it was going to offer those constructions, it should have known that if the Court adopted them, it would make more prior art relevant, which it did in this case.

THE COURT: So they should have anticipated your proposed amendment to the invalidity contentions, and the fact that you didn't file them is kind of their counter lack of

diligence.

**MR. BUERGI:** They should have anticipated. But by offering the Court broad constructions, it would make more prior art relevant than if the Court had adopted Apple's constructions which were narrower. And because the Court adopted Aylus' constructions, it made more prior art relevant, and now Apple is seeking to amend its invalidity contentions, in light of this newly relevant art. In other words, it's the flip side of the Court adopting Aylus' constructions.

**THE COURT:** All right. Let me get your take on the prejudice. What -- you say a week away from close of non-expert discovery. What's -- I mean, you anticipated this; what are you going to do? What's the problem?

**MR. THAKUR:** So Your Honor, so most of the prior art they disclosed previously was publications and patents, which is what they went to the IPR on, and so hence not the lack of -- what they claim the lack of third party discovery.

Number two, I think they misrepresent, because they don't know for a fact that we contacted some third party people and arrived at our own conclusions that such discovery was not necessary. But now we're talking about three system references, these are not a pop ad and publication. These are -- when they say we knew about the X-Box, I might have known about the X-Box; I certainly didn't know about the tens of references that they are using now to describe the X-Box.

And so, you know -- and on the other ones now they say, well, we became aware of the relevance on March, and as we explained, that's not facially possible given the fact that they must have known the relevance when they submitted the IPR.

So, you know, as I say, we are one week away from close of fact discovery.

THE COURT:  So what kind of discovery would you want to take?  If I were to grant this motion, what would you need to do?

MR. THAKUR:  Your Honor, I mean, the reality, we would probably need to subpoena them and get some prior art.

But the bigger prejudice is this, they're the largest corporation in the world, we're not.  To do a prior art search on an invalidity case that they have already failed to prevail at at the IPR -- I mean, the whole benefit of the IPR process was to allow defendant a quick and easy crack at the validity of the patent.

The reciprocal point of that was that the plaintiff then gets some certainty.  All of that certainty is vitiated, because the reality is these prior art references, based on my review, are not really any different from what they previously submitted.  The reason these three prior art references are being submitted now is that when they go to trial, they cannot -- we will not be able to say to the jury this prior art was considered by the PTAB.  If they go to trial on the six

prior art references that they lost at the PTAB, we would be able to say that the PTAB has considered this prior art.  So what I'm saying is this additional prior art, which is substantial, is being added, and will have a very consequential effect at trial.  It's not just a matter of --

THE COURT:  That's more strategic, so then it would be free from the taint of any PTAB opinion or determination.

MR. THAKUR:  Correct.  So this piece of prior art was not submitted to the PTAB, so it would be free of the taint of having been considered.  But --

THE COURT:  But in terms of the paring factually --

MR. THAKUR:  Right.

THE COURT:  -- it doesn't sound like -- it's not like you're saying that there are a bunch of depositions that have to be taken or third party discovery.

MR. THAKUR:  I will not deny that, Your Honor.  But the standard is good cause and prejudice.  What I'm arguing is they lack good cause.  We are one week away --

THE COURT:  So it's mainly the cause and the diligence -- lack of diligence rather than the prejudice prong.

MR. THAKUR:  Prejudice is an effect, but not legal, I concede that point.

THE COURT:  Okay.  Well, it still leaves me with, even if you, best case scenario, take that -- what was it, September date on your chart, when there was a submission to the PTAB

sort of endorsing Aylus' construction, which was on September 29th, 2014, and this motion was filed on April, is that right, so that's about seven months, is that about a seven-month -- six and-a-half month delay, and there are cases that say delays of that lengthy period don't meet the diligence standard, and in the case -- I say four months, I think I said that in the Sony case.  And so I find that the diligence required, and therefore the cause that must be shown under Local Rule 36(a), has not been met in view of the timeline sequence of this and the cases that I have cited, so the motion to amend invalidity contentions is denied.

And I want to now address Apple's renewed motion to stay litigation pending PTAB IPR.  And I understand that of all the claims that are now under IPR, that Aylus has agreed to dismiss those with prejudice.

**MR. THAKUR:**  Correct, Your Honor.

**THE COURT:**  So the only reason to stay is to say, well, something may come out of that adjudication process that might inform the issues here, which is possible, but they are not dispositive, unlikely to be dispositive, it seems to me; that depends on, I guess, what is said.  But given that there are claims here, and even though they're dependent claims, they may survive validity where the independent claim might not, for reasons, you know, whatever the additional elements are, so -- and given that we're pretty far down the road in this case --

if this was at the beginning of this case, you know, that would be one thing, but this case is now two years old, you know, and so I don't see, frankly, any reason to completely stop this case at this juncture, given and conditioned on the dismissal of all the other claims except for leaving -- is it 4?

**MR. THAKUR:**  2 and 21.

**THE COURT:**  Just 2 and 21.  I understand that there may be some benefit in the hearing that the PTAB does in terms of its analysis, but it is not -- certainly not a sure thing, and perhaps not even likely it's going to be dispositive here anyway, and we are far down the road.  So that's my inclination.  You can dissuade me.

**MS. CORBETT:**  Thank you, Your Honor.

So one thing you said was that the only importance that we can gain from the PTAB was that it may inform or provide some guidance on scope of the dependent claims 2 and 21, and I respectfully disagree with that.  And the reason for that is I don't believe that there is any dispute that in order for us -- for Apple to prove invalidity of dependent claims 2 and 21, we're going to have to address the invalidity of independent claims 1 and 20 that are subject to the PTAB.

And so what's going to happen here is that we're going to have expert reports, we're going to have motions for summary judgment, we're going to have pretrial proceedings, and we're going to have a trial that's going to go through claims,

independent claims 1 and 20.  And we have copied and pasted claim 1 in our reply brief so that you could look at it, and it's a lengthy claim, and so a lot of the heavy lifting here on invalidity of the two dependent claims is going to be on the invalidity of the independent claims that are subject to the PTAB; and so there, contrary to what Aylus says, that there won't be duplicative efforts, there won't be wasted resources, we disagree with that, because we are going to be analyzing and discussing and presenting to the jury independent claims 1 and 20 when addressing dependent claims 2 and 21.

THE COURT:  Is it possible that 1 and 20 can be declared invalid, and 2 and 21 survive?

MS. CORBETT:  There's certainly -- and it's certainly not our position that the invalidity of claims 1 and 20 would render the dependent claims invalid.  What it would do is it would streamline the trial and expert reports and motions for summary judgment incredibly.

Claims 1 and 20 have a significant amount of elements that we need to walk through, teach the jury about, educate the jury about, that if those were found invalid, we could focus on a very narrow limitation of claim 2 and 21.

THE COURT:  What is our -- I don't have the case schedule in front of me.  What is the case schedule in this case?

THE CLERK:  The last day to hear dispositive motion,

November 23rd.  No further CMC.

**THE COURT:**  We don't have a trial date?

**THE CLERK:**  We do have a trial date.

**MS. CORBETT:**  Yes, Your Honor.  Trial date is scheduled for March of 2016.

**THE COURT:**  What's the -- how long does the PTAB usually take?

**MS. CORBETT:**  So in this case, Your Honor, for the PTAB, we'll be having oral argument in December of 2015 and a decision, assuming that there are no extensions, a decision will be made by April of 2016, so in about less than a month after we've gone through the resources and the expenses of going to trial.

**THE COURT:**  And what work needs -- remains to be done in this case besides the actual trial preparation process?

**MS. CORBETT:**  So Your Honor, there is a significant amount of work to be done.  Of course fact discovery does close in one week.  But we filed our original motion to stay back in September of 2014.  We filed a renewed motion to stay before any depositions had been taken in this case, and we submit that that at the very least should be the timing that should be looked at for stage of the case factor.

In terms of what needs to happen going forward --

**THE COURT:**  Wait.  Say that part again.

**MS. CORBETT:**  So there's case law, there's that

*Virtual Agility* case that talks about that the timing to determine the posture of the case for the factor of where the case -- that stage should be set as of the time of the motion was filed, not at the time that the hearing, for example, was held.

THE COURT:  Well, tell me what more needs to be done in this case as we sit here today?

MS. CORBETT:  Sure, yes.  So going forward, we've got expert reports due in August, we've got motions for summary judgment that are due -- let me see -- we've got opening expert reports due in August, rebuttal expert reports due in September, and expert discovery cutoff at the end of September, MSJs in November, a pretrial conference at the beginning of March, and then jury trial starts March 28th.

THE COURT:  And how much of the expert work here parallels or overlaps with what's going to be done on the issues before the PTAB?

MS. CORBETT:  Well, there's not a lot of overlap, obviously, on the infringement front.  There's a significant amount of work that needs to be done on that aspect of it.

THE COURT:  But the invalidity experts I assume will overlap.

MS. CORBETT:  There will be some.  But of course there are some prior art that we did not submit to the PTAB or that we could not submit; system prior art, by way of example, is

one that we could not submit to the PTAB; it's just not allowed.  So there is definitely some prior art that is not overlapped with the PTAB that will require a significant amount of work during expert phase.

And there's also damages.  That's not going to be any small feat here, so damages is going to take obviously considerable amount of time and expense, both preparing and responding to.

THE COURT:  So the -- you forecast that a decision will not be forthcoming at the earliest until April of 2016 from the PTAB.  And under your ideal scenario things would be stayed -- I think with the expert, we can assume the expert phase of things, that wouldn't even begin until sometime thereafter, which means that there would not be a trial here -- we've got sort of a built-in time lag, because then you've got to allow for summary judgment and everything else -- of six months, seven months.  That puts us end of 2016; is that right?

MS. CORBETT:  That sounds right, Your Honor.

MR. THAKUR:  Actually, that's -- your Honor, any IPR proceeding would almost certainly be appealed.  So the claims that are not at issue in this case will have an IPR; it will go up to the federal circuit.  This is Apple.  We're looking at years of delay.  It's not a six-month delay.

And I do want to sort of emphasize, what Apple is asking this Court to do is make new law.  Not one court in this nation

has ever stayed a case, patent case -- let alone at this stage of the proceedings -- ever stayed a case where the asserted claims were not subject to the IPR.  All of the asserted claims that remain in this case are not subject to the IPR, even if you set aside the facts.

THE COURT:  And are there cases, remind me, that involve dependent claims that have gone forward to trial notwithstanding the fact that the dependent claims are an IPR -- independent claims are an IPR?

MR. THAKUR:  Correct, Your Honor.  So, first of all, dependent claims are really not dependent claims, they're they're own claim, it's just the way they're written.  So it can sometimes seem a bit confusing by saying they're dependent claims.  Under section 282, claims 2 and 21 are a claim; they're not a dependent claim.

THE COURT:  No, I'm aware of that.  I understand the relationship.  But I'm asking factually are there cases in which you say, well, there's not a case in the nation where a court has stayed claims that are not an IPR; is that true?  Does that include situations like this where there is a relationship between the claims that are an IPR and the claims that are sought to be stayed or not stayed?

MR. THAKUR:  Your Honor, since it's never happened, I'm not going to reprove the reverse.

What I can show is in the Northern District of California,

in the Northern District, where there were dependent claims and independent claims, and some of the claims were in the IPR but others were not, universally at this stage in the case, in the Northern District, under that considerably more favorable scenario to Apple, the cases have not been stayed.

What Apple is asking this Court to do has never happened before.

**MS. CORBETT:**  Your Honor, there is no case like this, because this case, the way it's been now postured, is unique. I'd be in a very different situation right now if we were talking about independent claims.  We're talking about two dependent claims, and there are -- we have not found any case law that has allowed dependent claims to go forward where the independent claims are subject to PTAB, and that makes sense, and it makes sense both on the invalidity front -- there's going to be duplicative resources, there's going to be wasted efforts here, because we're going to have to walk through the independent claims to address the dependent claims.

**THE COURT:**  Well, I don't think anybody is denying that there could be some economies obtained, and there could be potential for inconsistencies avoided.  The question is how do you weigh those probabilities and the cost of those probabilities versus the problem of delaying the case in -- you know, are you suggesting a stay until the IPR is finally decided including any appeals?  I mean, if you're going to go

that far, you might as well -- I mean, what good is it, if it's going to be appealed, to go forward with trial?

MS. CORBETT:  Well, Your Honor, there is a benefit to the PTAB, to the district court litigation.  There is -- even if the independent claims are found valid and we've, you know, spent a year waiting for that result, the statements made by Aylus, the statements made by the PTAB are going to help define the scope of the remaining claims.  There can be no dispute as to that.

THE COURT:  Although the test of construction is different.

MS. CORBETT:  Sure, absolutely.  And we, of course, agree to acknowledge that, but there's certainly instructive value, both to the Court, to the parties, and to the jury that I think would be instrumental to understanding the scope of any remaining claims.

And in terms of also the other factors here, the stage of the case, there are cases that talk about claim construction orders being issued, fact discovery being closed or nearly closed and the court still finds that a stay makes sense; and one of those cases, I recite it in our papers, is the *PersonalWeb versus Facebook*.  And here, a stay makes sense where -- again, as I said before, I'd be in a very different position right now if we were addressing independent claims, but we're not.  We're talking about narrow limitations on two

dependent claims where the heavy lifting and the bulk of any sort of teachings to the jury, MSJs, and certainly expert reports are going to focus on the independent claims that are subject to IPR.

**THE COURT:**  And it appears that the main difference between the claims at issue here, the so-called dependent claims and independent claims before the IPR, has to do with the element regarding the user endpoint connection to the media server.

**MR. THAKUR:**  Correct.  The claims that survive those, Your Honor, was where -- there's three different scenarios. One, the scenario -- the two scenarios out of the three that survived involved with the control point proxy, which is the infringing scenario where the UE is used to invoke the delivery of the media content from the media server to the media rendering.

I do want to address this issue of overlap.  There's a suggestion that there's substantial overlap.  Let me walk through what is overlapping and what is not overlapping.

Infringement.  Where our experts and source code people have completed their work and they're about to file -- start writing a report:  No overlap; damages:  No overlap;

Invalidity.  They filed an IPR on 6 of 26 references that they declared to us.  The IPR was actually only granted, even with respect to the other claims, for one of those references.

So 25 references that they have charted will not be considered by the PTAB.  Only one reference they've charted will be considered by the PTAB.

Number two, the PTAB has already specifically looked at that particular limitation and found it absent.  That's why the IPR was denied.  So even with respect to that one reference that where the PTAB is going to issue, the particular element that made claim 2 its own novel invention, and that's critical, its own novel invention is -- will be what will go to the jury.

And an invention is a combination of known elements.  The mere fact that some of the elements were known to the prior art will not be something that will go to the jury.  And what -- the thing is there isn't a requirement of, in a patent infringement case, for a plaintiff to prove the point of novelty.  It is the known elements.

**THE COURT:**  And the PTAB refused, did not grant IPR claims 2 and 21.

**MR. THAKUR:**  Correct, they specifically found missing evidence to support that element.

**THE COURT:**  All right.  I'm going to deny the motion to stay.  I understand that there are potential benefits.  But it seems to me, even though there's a relationship between claims 1 and 2 and 21 and 20, that the potential savings, in terms of duplicate work overlap is, while perhaps is existing, is not so substantial as to outweigh the other factors, and

that is this case has been pending in this Court for quite a long time, and we are proceeding to pace; we are very close to the end of the discovery and about to launch into the next phase, and that, in all likelihood, whatever happens, this case is big enough that whatever happens before the PTAB is probably not going to be the end of those proceedings.  And the idea of staying this case, even if it's just for the PTAB proceedings, for nine, ten, eleven months beyond what we've already incurred in this case, and perhaps even longer if one were to be extra cautious and await any appellate outcome from the PTAB, I think is just simply not warranted in terms of any benefit to be obtained from that, from the stay.  So the benefits do not outweigh the costs, and I find it is not appropriate to issue a stay, so we're going to proceed in this matter.

**MR. THAKUR:**  Thank you, Your Honor.

**MS. CORBETT:**  And all the other remaining asserted claims are dismissed with prejudice?

**THE COURT:**  They are dismissed with prejudice; right?

**MR. THAKUR:**  Correct, Your Honor.

**THE COURT:**  You've already filed it or you will file it?

**MR. THAKUR:**  We will file it, Your Honor.

**THE COURT:**  All right, great.

**MS. CORBETT:**  Thank you.

**THE COURT:**  So you got something out of it.

**MS. CORBETT:**  Thank you, Your Honor.

**MR. THAKUR:**  Your Honor --sorry.

**THE COURT:**  I don't know if we need any further -- we probably should have a further status date.

Is there -- let me ask -- I always ask the question of ADR, and I can't remember where you -- what you've done in the past, but where you are now given the posture that's happened before the PTAB and what's happening here.  Is there any thought to further ADR?

**MS. CORBETT:**  So, actually, Your Honor, one date that I did neglect to inform you about was today we actually have a joint status report that's due, and we have a status conference scheduled for a week from today.

**THE COURT:**  A week from today?

**MS. CORBETT:**  Yeah, June 4th.

**MR. THAKUR:**  Correct, that's the issue I was raising, so please continue.

**MS. CORBETT:**  Yes.  And so we have -- and I apologize I didn't raise this with you before, but the joint status report is due today, and I was wondering, given that we're all here, if we could have until tomorrow to get that on file?

**THE COURT:**  Sure.

**MR. THAKUR:**  Actually, Your Honor, my question is do we need that status conference?

(Laughter)

**THE COURT:**  Well, I don't know.  It depends on what's in the report, we could have something here.  But of course my first question is going to be about ADR.

**MR. THAKUR:**  So on ADR, Your Honor, we met with Judge Infante, and he suggested coming back to him once the IPR was decided.  And you may not be aware, but Apple's in-house counsel suggested that to me after a recent deposition, so I expect something like that will happen soon.

**MS. CORBETT:**  I don't have an answer on that yet, Your Honor.

**THE COURT:**  All right.  Well, I guess I'll see you in your filings tomorrow.

**MS. CORBETT:**  All right.  That's fair enough.

**THE COURT:**  Great.  Thank you.

**MS. CORBETT:**  Thank you, Your Honor.

**THE COURT:**  We're going to take a break for our court reporter.

**THE CLERK:**  Court is in recess.

(Recess taken at 3:07 p.m.)

(Proceedings resumed at 3:16 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Friday, August 14, 2015

_____
Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
Court Reporter