UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYLUS NETWORKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 13-cv-04700-EMC (KAW) <br><br> **ORDER REGARDING MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS** <br><br> Re: Dkt. No. 145 |

Plaintiff Aylus Networks, Inc. ("Aylus") moves for leave to amend its infringement contentions. (Pl.'s Mot, Dkt. No. 145.) Defendant Apple, Inc. ("Apple") opposes the motion. (Def.'s Opp'n, Dkt. No. 151.) The Court held a hearing on the motion on August 20, 2015. Having considered the papers filed by the parties, the relevant legal authority, and the arguments advanced by counsel, the Court GRANTS the motion for the reasons set forth below.

## I.   BACKGROUND

On October 9, 2013, Aylus commenced this patent infringement case against Apple, alleging infringement of U.S. Patent No. RE44,412 (the '412 patent). (Compl., Dkt. No. 1.) The patent covers "a system computer or mobile device that can direct and control video signals from a media server located on the internet to be rendered for display on a display device, such as a television, that is separate from the computer or mobile device."[1] (2d Am. Compl. ("SAC") ¶ 11.)

---

[1] Claim 1 states in full:

> A method of controlling and delivering media content from a media server (MS) to a media renderer (MR) utilizing a wide area network for control, comprising the acts of: provisioning a serving node in the *wide area* network with control point (CP) logic that includes logic to negotiate media content delivery with at least one of the MS and the MR, wherein the CP logic, MS, and MR resides outside of a user endpoint (UE) and the CP logic resides in the signaling domain and serves as a first proxy; provisioning the UE of the *wide area* network with control point proxy (CPP) logic that includes (i) logic to negotiate media content delivery with at least

Aylus served its First Set of Requests for Production on March 11, 2014.  (Thakur Decl. ¶ 2, Ex. 1, Dkt. No. 156.)  It served initial infringement contentions on April 3, 2014.  (Cooper Decl., Ex. B, Dkt. No. 145.)[2]  Supplemental infringement contentions followed on May 9, 2014, in response to Apple's challenges about the sufficiency of Aylus's initial infringement contentions.[3]  (*Id.*, Exs. C & D.)

On May 23, 2014, Apple sent a letter in which it claimed that Aylus's supplemental infringement contentions still did not adequately explain Aylus's infringement theories.  (*Id.*, Ex. E.)  According to Aylus, "the only specific deficiency identified by Apple was Aylus's supposed failure to particularly identify the servers that satisfied the serving node and media server elements."  (Pl.'s Mot. at 4.)  Aylus asserts that Apple never sought relief for this purported deficiency and never followed-up on its May 23 letter.  *(Id.)*

Apple made its source code available, and completed its first round of document production, consisting of roughly 12,000 pages of documents, on May 22, 2014.  *(Id.)*  Aylus states that these documents primarily consisted of publicly-available materials, e.g., developer guides, user manuals, website printouts, and advertisements.  *(Id.)*  After reviewing the documents, Aylus briefly examined Apple's source code on June 18, 2014.[4]  *(Id.)*  Aylus asserts that its

---

one of the MS and the MR, (ii) logic to cooperate with CP logic to negotiate media content delivery between the MS and the MR, and (iii) video cassette recorder (VCR) controls to control a presentation of content provided by the MS and rendered by the MR, wherein the CPP logic resides in the UE and serves as a second proxy; in response to a media content delivery request, determining a network context of the UE and a network connectivity of the MS and MR; invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS and the MR if one of the MS and MR are not in communication with the UE via a local wireless network; and once media content delivery is negotiated, controlling a presentation of delivery via the VCR controls on the UE.

'412 Patent col. 24 l. 25-63.

[2] Aylus filed a renewed motion to seal, Dkt. No. 158, with respect to its opening brief and the Cooper Declaration, but it did not include all of the exhibits to the declaration in the renewed filing. The Court will, therefore, refer to the unredacted version of documents that were filed with the original motion to seal, Dkt. No. 145.

[3] Aylus did not seek leave of Court prior to serving its supplemental infringement contentions, but Apple also did not move to strike those contentions or otherwise object.

[4] According to Apple, on June 18, 2014, Aylus's attorney reviewed its source code for two hours

inspection of the source code "revealed that Apple's production was voluminous, and that the documents Apple had produced did not enable Aylus to discern which code was relevant to the functionalities identified in Aylus's infringement contentions." *(Id.)*

Apple produced additional documents in July 2014 and December 2014. (Cooper Decl. ¶ 9.) According to Aylus, the documents produced "did little to shed light on Apple's source code or the technical details of the accused functionality." (Pl.'s Mot. at 3; Cooper Decl. ¶ 10.) Apple did not certify that it had completed production of documents responsive to Aylus's First Set of Requests for Production until March 20, 2015. (Cooper Decl. ¶ 17 & Ex. H.)

On January 14, 2015, Aylus served a Rule 30(b)(6) deposition notice. (Cooper Decl. ¶ 11.) The following week, it served a Second Set of Requests for Production that purportedly mirrored the subject matter of the Rule 30(b)(6) notice. (*Id.* ¶ 12.) On March 13, 2015, Aylus served a Second Set of Interrogatories, which included Interrogatory No. 13. (Cooper Decl. ¶13.) That interrogatory reads:

> Describe in detail, including by specifically identifying hardware components, software files, and Apple or third party servers, each and every step taken, in the order the steps are taken, by an iOS Product when a user obtains video content by a Video Content Source using the iOS Product and then renders that video content to an Apple TV for viewing via AirPlay.

(Cooper Decl., Ex. F, Interrog. No. 13.)

Aylus asserts that beginning in the last week of February 2015, Apple produced more than 27,000 documents—over 1,000,000 pages. (Pl.'s Mot. at 4.) These materials apparently contained documents Aylus needed to understand Apple's source code and software specifications. (*Id.* at 5.) After the parties resolved objections to Aylus's source code reviewers, Aylus's expert began its source code review on April 14, 2015, "stopping only to assist in preparing for the depositions of Apple's technical witnesses." *(Id.)*

On March 6, 2015, Aylus served its Second Amended Infringement Contentions.[5] (Pl.'s Mot. at 5.) Aylus claims that Apple has never complained about their sufficiency or asserted that

---

and twenty-six minutes hours. Fuehrer Decl. ¶ 3, Dkt. No. 152.

[5] Again, Aylus did not obtain leave of Court prior to serving these amended infringement contentions, and Apple did not move to strike or otherwise object.

3

they represent a change in Aylus's infringement theories. *(Id.)*

On May 11, 2015, Apple provided its first substantive response to Interrogatory No. 13.[6] (Cooper Decl., Ex. F.) Aylus claims this response was critical to understanding Apple's source code and adequately preparing for the depositions of Apple's 30(b)(6) deponents. (Pl.'s Mot. at 5.) Those depositions were completed between May 12, 2015 and June 3, 2015. (*Id.* at 6.)

Aylus asserts that the non-public information Apple produced within the final months of discovery, the response to Interrogatory No. 13, and the deposition testimony, particularly that of Colin Meldrum and Robert Bradley, revealed the information that is the basis for Aylus's proposed amendments. (Pl.'s Mot. at 2.) On June 18, 2015, Aylus served its proposed amended infringement contentions, but on June 24, 2015, Apple indicated that it would not consent to the proposed amendments. (*Id.* at 7; Cooper Decl., Ex. J.) Aylus's formal motion for leave to amend its infringement contentions promptly followed on June 30, 2015. (Pl.'s Mot., Dkt. No. 145)

Fact discovery closed on June 4, 2015.[7] (Pretrial Order at 1, Dkt. No. 108) Trial begins March 28, 2016.

## II. LEGAL STANDARD

"The Northern District of California has adopted local rules that require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed Cir. 2006). The patent local rules provide "for a streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in [their] absence" and are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *DCG Sys. v. Checkpoint Techs.*, *LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (quotations and footnote omitted); *O2 Micro Int'l Ltd.* 467 F.3d at 1366 n.12 (quoting *Nova Measuring*

---

[6] At the hearing, Aylus indicated that Apple supplemented its response to Interrogatory No. 13 six times.

[7] The presiding judge granted the parties a limited extension of this cut-off to allow the parties to take certain depositions and to seek discovery from third parties. Stipulation & Order, Dkt. No. 136.

*Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

Patent Local Rule 3-1 requires a party claiming patent infringement to serve on all parties a disclosure of asserted claims and infringement contentions. Pursuant to that local rule, the infringement contentions must contain (a) each claim of each patent that is allegedly infringed by each party, (b) all accused instrumentalities for each asserted claim, (c) a chart identifying specifically where each limitation of each asserted claim is located within each accused instrumentality, (d) a description of the acts of the alleged indirect infringer that induced the direct infringement by a third party, (e) whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the accused instrumentality, (f) the priority date to which each asserted claim allegedly is entitled if applicable, (g) an identification of each apparatus that practices the claimed invention if applicable, and (h) the basis for the party's allegation of willful infringement if applicable. Patent L.R. 3-1.

A party may amend its infringement contentions "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: (1) an adverse claim construction; (2) recent discovery of material prior art despite an earlier diligent search; and (3) recent discovery of nonpublic information about the accused product that, despite diligent efforts, was not discovered before service of the infringement contentions. *Id.*

The good cause analysis proceeds in two steps: "first, the court must determine whether the moving party was diligent in amending its contentions; second the court must determine whether the non-moving party would suffer undue prejudice if the motion to amend were granted." *DCG Sys.*, 2012 WL 1309161, at *3. "If the court finds that the moving party was not diligent in amending its infringement contentions, there is no need to consider the question of prejudice to the non-moving party, although a court in its discretion may elect to do so." *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012) (footnotes omitted).

### III. DISCUSSION

Aylus seeks leave to amend its infringement contentions to include new, non-public

information obtained from Apple. (Pl.'s Mot. at 2.) It claims that it has been diligent in its discovery efforts and that the proposed amendments will not prejudice Apple. *(Id.)* Aylus asserts that the proposed amendments will narrow this case "by removing allegations of infringement under the doctrine of equivalents, willful infringement, and indirect infringement, as well as Aylus's claim that its products practiced the asserted claims of the '412 patent."[8] *(Id.)*

Aylus specifically seeks to amend its infringement contentions to reflect information obtained from (1) confidential documents and responses Apple provided during the "final weeks and months of fact discovery," (2) the depositions of Apple's Rule 30(b)(6) witnesses that occurred in May and June, and (3) source code that Aylus could not properly understand until after it received Apple's document production and deposed its witnesses. *(Id.)* Specifically, Aylus identifies two "key pieces of evidence" that necessitated the proposed amendments: (1) the identity and function of the iTunes Store servers that comprise the claimed serving node, and (2) the existence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Apple's products. (Pl.'s Reply at 1.)

In opposition, Apple argues Aylus was not diligent in obtaining the discovery that is the basis for the proposed amendments. (Defs.' Opp'n at 1, Dkt. No. 151-4.) Apple asserts that the purportedly new evidence has been available for approximately one year. (*Id.* at 2.) It accuses Aylus of choosing to wait until late in discovery to obtain the deposition testimony and interrogatory responses that necessitate the proposed amendments. *(Id.)* Apple argues that it would be prejudiced by any allowed amendment, as the proposed amendments raise new theories of infringement. (*Id.* at 12.) It also contends that it "would be materially prejudiced if it were denied the opportunity to investigate Aylus's new infringement theories through the fact discovery process, including party and third party discovery." (*Id.* at 14-15.)

### A. Diligence

"[T]he diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for

---

[8] At the hearing, the parties indicated that they have reached an agreement regarding these allegations.

6

amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). "The burden is on the movant to establish diligence rather than on the opposing party to establish lack of diligence." *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 3728482, at *1 (N.D. Cal. July 28, 2014). "In considering the party's diligence, the critical question is whether the party could have discovered the new information earlier had it acted with the requisite diligence." *Id.*

Aylus claims that it has diligently pursued discovery that serves as the basis for its proposed amendments. (Pl.'s Mot. at 8-9.) It asserts that it in order to understand Apple's server-side software processes and to articulate how the iTunes Store servers satisfy the serving node element, it "needed Apple's interrogatory response (served May 11), as well as documents showing the architecture of the iTunes Store (produced April 1), and the testimony of Colin Meldrum (deposed May 14)." (*Id.* at 9.) It also asserts that nothing in Apple's source code or documents revealed the existence of ▮▮▮▮▮▮▮▮▮▮▮▮ Airplay that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ in Apple's products. (Pl.'s Reply at 2.) According to Aylus:

> This basic and fundamental information—which either explicitly or implicitly underlies the vast majority of Aylus's proposed amendments—came only from Apple's response to Interrogatory No. 13, and the explanations given during the depositions of Colin Meldrum and Robert Bradley.

(*Id.*)

As basic and fundamental as that information may have been, Aylus did not serve Interrogatory No. 13 until March 13, 2015, and the depositions of Colin Meldrum and Robert Bradley did not occur until the last three weeks of discovery, between May 12 and June 3. (Cooper Decl. ¶ 13; Pl.'s Mot. at 5.) Aylus, however, attributes any delay in completing this discovery not to its own failure to act diligently, but to Apple's purported delay in fulfilling its discovery obligations. (*See, e.g.,* Pl.'s Reply at 3 ("Apple's argument rests on a distorted account of fact discovery in this case and effectively asks the Court to punish *Aylus* for *Apple's* delays in discovery.").

Aylus served its First Set of Requests for Production on March 11, 2014. (Thakur Decl. ¶ 2, Ex. 1.) Apple did not certify that it completed its production until March 20, 2015, about three

7

months before the discovery cut-off and over one year after the First Set of Requests for Production were served. (Cooper Decl., Ex. H; Thakur Decl., Ex. 1.) Aylus's decision to wait to serve Interrogatory No. 13 until Apple substantially completed its production is not wholly unreasonable. That is not to say, however, that Aylus can entirely fault Apple for that decision. Indeed, the timing of Apple's certification played only a minimal role.

At the hearing, Aylus also argued that because it provided Apple with earlier iterations of its infringement contentions, this gave Apple notice, which is sufficient to support a finding that Aylus acted with the requisite diligence. It relies on *The Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, No. C 05-4158 MHP, 2008 WL 624771 (N.D. Cal. Mar. 4, 2008), a case not cited in its papers and offered for the first time at the hearing. There, the plaintiff, without first obtaining leave of court, served amended infringement contentions approximately two months after the defendant released a new product. *Roche*, 2008 WL 624771, at *1. It then waited another five months before seeking leave of court. *Id.* at *2. The court noted that while this delay "raise[d] a serious doubt about [the plaintiff's] diligence, [the plaintiff] did serve its amended contentions on [the defendants] as soon as the [new] product was approved by the FDA." *Id.* The court rejected the argument that the defendants' promises of certain discovery and the defendants' failure to object to the amended infringement contentions excused the plaintiff's failure to seek leave of court. *Id.* at *3. It nonetheless determined that because the defendants had notice of the plaintiff's amended infringement contentions, which informed their claim construction arguments, the plaintiff's "overall diligence was not insufficient." *Id.* *3.

Here, the Court declines to find that Aylus was diligent simply because it repeatedly served unauthorized infringement contentions on Apple. Nonetheless, Aylus timely served Interrogatory No. 13 more than two months prior to the close of fact discovery, and it deposed Colin Meldrum and Robert Bradley prior to the cut-off. During those depositions, Aylus finally obtained the explanations it needed to understand certain technical information. Though Apple argues that Aylus should have completed this discovery sooner, the Court declines to find that Aylus failed to act with the requisite diligence in discovering the information necessitating the proposed

amendments.[9]

As for the second phase of the diligence inquiry, the Court finds that Aylus was diligent in seeking to amend its infringement contentions once it discovered the relevant information. Shortly after the 30(b)(6) depositions concluded on June 3, 2015, Aylus served its proposed amended infringement contentions on Apple on June 18, 2015. When Apple did not consent to the proposed amendments on June 24, 2015, Aylus promptly filed its formal motion on June 30, 2015. This satisfies the first prong of the good cause standard set forth in Patent Local Rule 3-6.

### B. Undue prejudice

The second step of the good cause analysis requires the court to consider "whether the non-moving party would suffer undue prejudice if the motion to amend were granted." *DCG Sys.*, 2012 WL 1309161, at *3.

Apple claims that such is the case here. (Def.'s Opp'n at 12.) It contends that the amended infringement contentions raise new and materially different theories of infringement. *(Id.)* Apple also argues that it "would be materially prejudiced if it were denied the opportunity to investigate Aylus's new infringement theories through the fact discovery process." (*Id.* at 14-15.)

These arguments are unpersuasive for two reasons. First, Apple did not move to strike any of Aylus's unauthorized infringement contentions. Instead, Apple provided Aylus with substantive feedback, identified deficiencies, and proceeded with this litigation accordingly. In light of this, Apple could have anticipated that Aylus would eventually seek leave of Court and formally amend its infringement contentions. Indeed, litigants are encouraged to meet and confer on issues and present stipulations for court approval rather than engage in unnecessary motion practice.

Second, even if the proposed amendments raised new theories of infringement, Apple has not indicated what additional discovery, if any, it would need to conduct. At the hearing, Apple conceded that it would not likely have to do any additional discovery if the Court granted the

---

[9] During oral argument, Apple relied on *Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144 SBA, C 09-5718 SBA, 2010 WL 1838693 (N.D. Cal. May, 5, 2010), a case not cited in its papers and offered for the first time at the hearing, to support its argument that Aylus was not diligent. That case, however, is distinguishable, as the plaintiff's proposed amendments added six new claims, required reopening discovery, and potentially required additional claim construction proceedings. Apple has not shown that such circumstances are present here.

9

instant motion. Based on this, the Court finds that the claimed inability to conduct additional discovery will not unduly prejudice Apple. *See ProconGPS, Inc. v. Skypatrol LLC*, No. C 11-3975 SI, 2013 WL 1788049, at 2 (N.D. Cal. Apr. 26, 2013) (opposing party was not prejudiced because it stated that it had not and would not seek any additional discovery). In any event, if Apple is later able to make a showing that additional discovery is necessary, it may promptly seek leave to conduct such limited discovery from the presiding judge. This, however, does not rise to the level of undue prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Aylus acted with the requisite diligence, and Apple will not suffer undue prejudice if the proposed amendments are allowed. This satisfies the good cause requirement of Patent Local Rule 3-6. Aylus's motion for leave to amend its infringement contentions is, therefore, GRANTED.

**IT IS SO ORDERED.**

Dated: 08/28/15

KANDIS A. WESTMORE
United States Magistrate Judge