QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Harold A. Barza (Bar No. 80888)
  halbarza@quinnemanuel.com
  Vincent Pollmeier (Bar No. 210684)
  vincentpollmeier@quinnemanuel.com
  Amar L. Thakur (Bar No. 194025)
  amarthakur@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:      (213) 443-3000
Facsimile:      (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Joshua L. Sohn (Bar No. 250105)
  joshuasohn@quinnemanuel.com
777 6th St. NW, 11th Floor
Washington, D.C. 20001
Telephone:      (202) 538-8000
Facsimile:      (202) 538-8100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Joseph B. Martin (Bar No. 284156)
  jobymartin@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:      (415) 875-6000
Facsimile:      (415) 875-6700

Attorneys for Plaintiff Aylus Networks, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYLUS NETWORKS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE, INC., a California corporation<br><br>Defendant. | CASE NO.   3:13-cv-04700-EMC<br><br>**AYLUS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY**<br><br>Date: December 10, 2015<br>Time: 1:30 p.m.<br>Courtroom 5<br>The Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     INTRODUCTION AND SUMMARY ................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED.................................................... 2

III.   STATEMENT OF RELEVANT FACTS ............................................................. 3

     A.     The Asserted Claims ................................................................................. 3

     B.     Apple's Invalidity Evidence for Claims 2 and 21 Fails to Meet All the
            Limitations of those Claims ....................................................................... 4

           1.     The UPnP Design Book Reference ............................................... 5

           2.     The Intel Tools Reference ............................................................ 7

           3.     The Kumar Reference .................................................................. 8

           4.     The Costa-Requena Reference ................................................... 10

           5.     The Stewart Reference ............................................................... 12

           6.     The AirTunes Reference ............................................................. 14

IV.   LEGAL STANDARD ........................................................................................ 15

V.    ARGUMENT ..................................................................................................... 16

     A.     Apple's Evidence Raises No Genuine Issue of Material Fact Precluding
            Summary Judgment on Apple's Invalidity Defenses ............................... 16

     B.     Apple Can Raise No Genuine Issue of Material Fact With Respect to Its
            Assertion that Claims 2 and 21 Are Anticipated .................................... 16

     C.     Apple Can Raise No Genuine Issue of Material Fact With Respect to Its
            Assertion that Claims 2 and 21 are Rendered Obvious........................... 17

     D.     The "Utilizing a Wide Area Network for Control" Language Is Limiting ............. 19

     E.     The Claim 2 and 21 Limitations Are Limiting........................................ 20

VI.   CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Atofina v. Great Lakes Chem. Corp.*,
  441 F.3d 991 (Fed. Cir. 2006) ................................................................................15, 16

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ..........................................................................................19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .........................................................................................................15

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012) ......................................................................................1, 2

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) .........................................................................................15

*Intellectual Ventures II LLC v. Huntington Bancshares Inc.*,
  No. 2:13-CV-00785, 2014 WL 2589420 (S.D. Ohio June 10, 2014) ..................................2

*InTouch Tech., Inc. v. VGO Commc'ns, Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014) ....................................................................................16, 18

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
  545 F.3d 1340 (Fed. Cir. 2008) .......................................................................................17

*Microsoft Corp. v. i4i Ltd. P'Ship*,
  131 S. Ct. 2238 (2011) .....................................................................................................15

*Monsanto Co. v. Syngenta Seeds, Inc.*,
  503 F.3d 1352 (Fed. Cir. 2007) .......................................................................................16

*NTP, Inc. v. Research In Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) .......................................................................................19

*Pacing Tech., LLC v. Garmin Int'l, Inc.*,
  778 F.3d 1021 (Fed. Cir. 2015) ....................................................................................19, 20

*Therasense, Inc. v. Becton, Dickinson & Co., No. C 04-02123-WHA*,
  2008 WL 2323856 (N.D. Cal. May 22, 2008) ....................................................................4

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) .............................................................................................15

*Unigene Labs., Inc. v. Apotex, Inc.*,
  655 F.3d 1352 (Fed. Cir. 2011) .......................................................................................15

*United States v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) .............................................................................................2

**<u>Statutes</u>**

Fed. R. Civ. P. 56(a)................................................................................................................15

**TO: DEFENDANT AND ITS ATTORNEYS OF RECORD**

**NOTICE IS HEREBY GIVEN** that on December 10, 2015, at 1:30 p.m. or such other time as ordered by the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA, Plaintiff Aylus Networks, Inc. will respectfully move the Court for partial summary judgment of no invalidity as to the asserted patent claims (claims 2 and 21 of U.S. Patent No. RE44,412).

More specifically, Aylus will seek partial summary judgment that Defendant Apple, Inc. has failed to raise a genuine issue of material fact on invalidity because Apple has produced no evidence that its prior art references meet the "utilizing a wide area network for control" or the "serving node in the wide area network" limitations of the asserted claims, or that it would have been obvious to modify its references to meet these limitations.   Aylus' Motion will be based on this Notice, the Memorandum of Points and Authorities set forth immediately below, the Declaration of Joshua L. Sohn in support of this Motion ("Sohn Decl."), the Court's files herein, and any other evidence presented at the time of the hearing.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION AND SUMMARY**

No genuine issue of material fact exists to preclude summary judgment on Apple's invalidity defense.   Apple has presented no evidence that any of its six alleged prior art references meet all of the limitations of claims 2 and 21 because Apple relies on a configuration in each reference that indisputably operates exclusively in a ***local*** network and uses only that local network for controlling devices on the network.   Yet claims 2 and 21 depend from claims 1 and 20, and thus require connection to and use of a ***wide area*** network, including "utilizing a ***wide area network*** for control" and a "serving node ***in the wide area network***."   Apple has offered no evidence that the asserted prior art references meet these limitations of asserted claims 2 and 21. Apple has also presented no evidence that it would have been obvious to modify the local-only configurations it relies on for claims 2 and 21 to meet these limitations, and Apple will be unable to do so because, in those configurations, there is no role for a wide area network and no reason to add or connect to a wide area network.

1    Notably, the Patent Trial and Appeal Board (PTAB) has recognized the fundamental

2  failure of proof in Apple's invalidity case against claims 2 and 21.   Apple filed two requests for

3  for *inter partes* review of these claims (and others) last year, asserting all of the prior art

4  publications that it asserts in this litigation.   But the PTAB declined to institute *inter partes*

5  review of claims 2 and 21, finding that Apple had not shown a reasonable likelihood of prevailing

6  against these claims.[1]   If Apple cannot even show a reasonable likelihood of prevailing on

7  invalidity under the "preponderance of the evidence" standard used in PTAB proceedings, then

8  Apple certainly cannot show invalidity by clear and convincing evidence, as required in this

9  litigation.   *Cf. Intellectual Ventures II LLC v. Huntington Bancshares Inc.*, No. 2:13-CV-00785,

10  2014 WL 2589420, at *3 (S.D. Ohio June 10, 2014) ("if the PTAB declines to institute IPR with

11  respect to those four patents, the denial may shed light on the PTAB's assessment of the invalidity

12  arguments raised in those petitions.")   In short, the PTAB's decision not to institute *inter partes*

13  review of claims 2 and 21 further illustrates how Apple's invalidity case against these claims fails

14  to raise a triable issue.   Accordingly, partial summary judgment is warranted.

15  **II.      STATEMENT OF ISSUES TO BE DECIDED**

16     1.     Asserted claims 2 and 21 of U.S. Patent No. RE 44,412 ("the '412 Patent") contain

17  express limitations that require a wide area network, including "utilizing a wide area network for

18  control" and a "serving node in the wide area network."   Apple's invalidity case against these

19  claims relies on prior art configurations that operate exclusively in a local network with no use of

20  or connection to a wide area network.   Has Apple raised a genuine issue of material fact as to

21  whether its asserted prior art references invalidate claims 2 and 21?

22

23

24

25

26  _____

27     [1]   The PTAB also declined to institute *inter partes* review with respect to **any** claim based on
    the Kumar, Costa-Requena and Stewart references raised by Apple in its invalidity defense.

28

## III.     STATEMENT OF RELEVANT FACTS

### A.     The Asserted Claims

The two asserted claims in this case, claims 2 and 21 of the '412 Patent, are dependent claims.   Claim 2 depends from claim 1 and claim 21 depends from claim 20.   These dependent and independent claims read as follows (emphasis added):[2]

> **1.**   A method of controlling and delivering media content from a media server (MS) to a media renderer (MR) ***utilizing a wide area network for control***, comprising the acts of:
>
> provisioning ***a serving node in the wide area network*** with control point (CP) logic that includes logic to negotiate media content delivery with at least one of the MS and the MR, wherein the CP logic, MS, and MR resides outside of a user endpoint (UE) and the CP logic resides in the signaling domain and serves as a first proxy;
>
> provisioning the UE of the wide area network with control point proxy (CPP) logic that includes (i) logic to negotiate media content delivery with at least one of the MS and the MR, (ii) logic to cooperate with CP logic to negotiate media content delivery between the MS and the MR, and (iii) video cassette recorder (VCR) controls to control a presentation of content provided by the MS and rendered by the MR, wherein the CPP logic resides in the UE and serves as a second proxy;
>
> in response to a media content delivery request, determining a network context of the UE and a network connectivity of the MS and MR;
>
> invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS and the MR if one of the MS and MR are not in communication with the UE via a local wireless network; and
>
> once media content delivery is negotiated, controlling a presentation of delivery via the VCR controls on the UE.
>
> **2.**   The method of claim 1, wherein the CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS and MR are both in communication with the UE via a local wireless network.
>
> **20.**   A method of controlling and delivering media content from a media server (MS) to a media renderer (MR) ***utilizing a wide area network for control***, where a user endpoint (UE) is provisioned with control point proxy (CPP) logic that includes (i) logic to negotiate media content delivery with at least one of the MS and the MR, (ii) logic to cooperate with network control point (CP) logic to negotiate media content delivery between the MS and the MR, and (iii) video play controls to control a presentation of content provided by the MS and rendered by the MR, wherein the CPP logic resides in the UE and serves as a first proxy, comprising the acts of:

---

[2]   The full text of the '412 Patent is attached as Exhibit A the Complaint in this case (Dkt. 1).

provisioning *a serving node in the wide area network* with control point (CP) logic that includes logic to negotiate media content delivery with at least one of the MS and the MR, wherein the CP logic, MS, and MR resides outside of a user endpoint (UE) and the CP logic resides in the signaling domain and serves as a second proxy;

in response to a media content delivery request, the wide area network determining a network context of the UE and a network connectivity of the MS and MR;

invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS and the MR if one of the MS and MR are not in communication with the UE via a local wireless network; and

once media content delivery is negotiated, receiving video play controls from the UE.

**21.**   The method of claim 20, wherein the CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS and MR are both in communication with the UE via a local wireless network.

Claims 2 and 21 claim the step of invoking CPP logic to negotiate media content delivery when the media server (MS) and media renderer (MR) are in communication with the User Endpoint (UE) "via a local wireless network."   But because these claims depend from claims 1 and 20, respectively, they also contain the limitations of their parent claims, including the above-italicized limitations of claims 1 and 20 that require "utilizing a wide area network for control" and provisioning a "serving node in the wide area network."

### B.   Apple's Invalidity Evidence for Claims 2 and 21 Fails to Meet All the Limitations of those Claims

Apple's invalidity case is set forth in detail in the Expert Report of Dr. Nathanial Polish Regarding Invalidity of U.S. Patent No. RE44,412 ("Invalidity Report") (Sohn Decl. Exs. A-D),[3] which asserts that six different prior art references invalidate the asserted claims of the '412 Patent.[4]   Each of these references is capable of various configurations.   For its invalidity case

---

[3]   Due to the size of the Polish Report and the limitations of the CM/ECF system, Aylus has split this Report into four Exhibits to allow for ECF filing.   The body of the Report is Exhibit A to the Sohn Declaration, Exhibit 3 of the Polish Report (the UPnP claim chart) is Exhibit B to the Sohn Declaration, Exhibit 4 of the Polish Report (the Intel Tools claim chart) is Exhibit C to the Sohn Declaration, and Exhibits 5-8 of the Polish Report (the Kumar, Costa-Requena, Stewart, and AirTunes claim charts) are Exhibit D to the Sohn Declaration.

[4]   Apple's invalidity case at trial, at least that provided through its expert, will be limited to what its expert has set forth in his report.   *See, e.g., Therasense, Inc. v. Becton, Dickinson & Co.*, (footnote continued)

*against claims 1 and 20*, which are not asserted, Apple proffers configurations in which an alleged serving node is connected to a wide area network, *i.e.*, the Internet, and in which the MS and MR are *not* together in a single local network but are instead controlled over a wide area network.   For its invalidity case *against claims 2 and 21*, however, Apple shifts to an entirely different configuration of each reference, in which the MS and MR are together in a single local area network such that all control is over that local network and any alleged serving node has no need for a connection to the Internet.   Apple articulates no role for a wide area network in these claim 2 and 21 configurations, nor does Apple explain why it would have been obvious to add a wide area network to these configurations.

## 1.        The UPnP Design Book Reference

Apple's first prior art reference is a book titled "UPnP Design By Example: A Software Developer's Guide to Universal Plug and Play," together with materials contained on an accompanying CD ("UPnP Design Book").[5]   The UPnP Design Book is directed at developers of UPnP devices and describes, among other things, how UPnP can be used to control media delivery between a media server and media renderer through a local area network (LAN).   For example, Apple's invalidity report reproduces the following diagram from page 360 of the UPnP Design Book, disclosing this LAN architecture:

_____

No. C 04-02123-WHA, 2008 WL 2323856, at *3 (N.D. Cal. May 22, 2008) ("All experts . . . . will be limited to the four corners of their expert reports on direct examination.")

   [5]    The book is attached as Sohn Decl., Exhibits E1-E2.



**Figure 17.1** UPnP A/V architecture

UPnP Design Book at 360; Invalidity Report, Ex. 3 at 2.   In UPnP, control points are used to control UPnP devices on a local network.   In the audio/visual context depicted above, the control point interacts with media servers and media renders on its local network to negotiate the transfer of media content from a media server to a media renderer.   Like UPnP generally, in this local network architecture all devices are controlled exclusively over a local area network and thus do not "utilize a wide area network" for such control.   *See* Saint-Hilaire Dep. at 25:3-7[6] (Sohn Decl., Ex. F) ("Q: And a UPnP control point could run on a device that has access to a wide area network.   Is that correct? A. Due to the limitation of UPnP, usually they are limited to a local area network.")

For ***claims 1 and 20***, Apple relies on an Intel tool known as "Device Relay" as the device that introduces the wide area network to this otherwise-local network configuration.   Device Relay, which Apple maps to the claimed CP logic, is a program that runs on a PC, the alleged serving node, that is connected to a wide area network, *e.g.*, the Internet.   Device Relay was

---

[6]   Yilan Saint-Hilaire is an Intel employee and was in charge of the three-man team that developed the Intel UPnP tools relied on by Apple.   Saint-Hilaire Dep. at 11:25-13:3.

designed to help UPnP developers remotely test their UPnP devices by bridging two local UPnP networks using the Internet.   Saint-Hilaire Dep. at 47:22-48:4; *see also* Invalidity Report, Ex. 3 at 14, quoting the UPnP Book at 185 ("Once your device has been deployed, you'll often find yourself in a different physical location than where your UPnP device is actually running.   Device Relay provides the capability to test and debug your device remotely from any location in the world over the Internet by making the device that exists over the WAN interface appear to exist on your own LAN.")[7]

For ***asserted claims 2 and 21***, however, Apple asserts the standard UPnP architecture depicted in the Figure above, where Device Relay is not needed and the wide area network is not used to control any device.   Apple's only evidence against claims 2 and 21, therefore, is a configuration where a control point (the alleged CPP logic of the UE) is in communication with the MS and the MR over a LAN, which could allegedly be a wireless network.   *See* Invalidity Report, Ex. 3 at 41, 47.   In this configuration, there is no serving node in the wide area network and no utilization of a wide area network for control of any device.

### 2.      The Intel Tools Reference

Apple's second prior art reference is Intel Tools for UPnP Technologies ("Intel Tools"), a suite of code files on a CD-ROM that was packaged together with the UPnP Book.   *See* Invalidity Report at 34.   Because these are the same Intel Tools relied on by Apple for its invalidity assertions with respect to the UPnP Design Book, Apple's invalidity case based on the Intel Tools is identical to its invalidity case based on the UPnP Design Book.

---

[7]   To be clear, Aylus does not agree with Apple's characterization of UPnP Design Book for purposes of claims 1 and 20.   Indeed, for ***all*** of Apple's proffered references, Aylus does not concede that Apple's description of its "claim 1 and 20" configurations are technically accurate, much less that these configurations invalidate claims 1 and 20.   Nonetheless, for purposes of the present motion, the key point is that Apple has asserted prior art configurations for claims 1 and 20 that are entirely incompatible with Apple's asserted configurations for claims 2 and 21.   The claim 2 and 21 configurations do not have the wide area network (WAN) elements allegedly present in the claim 1 and 20 configurations.   Nor would there be any logical reason to add such WAN elements to the claim 2 and 21 configurations, given that the claim 2 and 21 configurations communicate purely locally.

1    For example, with respect to claims 1 and 20, Apple states that "[t]he Intel Tools are able

2    to 'utilize a wide area network for control' by virtue of the Device Relay tools, discussed more

3    below, which can invoke services of UPnP devices on a remote UPnP network across a wide area

4    network such as the Internet."   Invalidity Report, Ex. 4 at 10-11; *see also id.* at 13 ("I also discuss

5    Device Relay in my claim chart regarding the UPnP Design publication, which discussion I

6    incorporate here by reference.")   But for its invalidity case against asserted claims 2 and 21,

7    Apple again abandons Device Relay and the WAN interface that Device Relay operates on, and

8    again relies on the standard UPnP configuration in which the control point (alleged CPP logic of

9    the UE) communicates with the MS and the MR over a LAN, which could allegedly be a wireless

10   network.   Invalidity Report, Ex. 4 at 41 (contending that the MS and MR may run on "Windows

11   XP computers, *which one of skill in the art will also recognize can be part of the same local area*

12   *network*.") (emphases added).

13            **3.       The Kumar Reference**

14   Apple's third reference is U.S. Published Patent Application No. 2006/0245403 to Kumar

15   ("Kumar").[8]   Kumar discloses a way to deliver media content from a UPnP mobile device to other

16   UPnP devices within a LAN, even when the mobile device travels outside that LAN.   As Kumar

17   explains regarding the prior state of the art: "UPnP is designed to operate with devices that are on

18   the same IP sub network . . . it cannot directly handle scenarios where a UPnP device becomes

19   mobile, and its IP attachment point moves outside a local area network."   Kumar at para. 0003.

20   Kumar attempts to solve this problem by providing a "mobility architecture" that allows a mobile

21   device to "remotely register with the home network [*i.e.,* the LAN] upon attaching to a different

22   network environment."   Kumar at Abstract, *see also id.* at Fig. 1:

23

24

25

26

27   ─────────────────────

28      [8]    Kumar is attached as Sohn Decl., Exhibit G.



For its invalidity case against claims 1 and 20, Apple relies on the Kumar configuration depicted above, in which the mobile UPnP device is outside the LAN and communicates remotely with the other devices through the Internet and the home network gateway, the alleged serving node with CP logic.   Invalidity Report, Ex. 5 at 2.   Referring to the above-depicted Fig. 1 of Kumar, Apple asserts that "Kumar discloses that 'mobile UPnP device 16' can control the UPnP devices (e.g. the camcorder (MS) and TV (MR)) of a home network using a 'home network gateway'/'gateway device' over the Internet (utilizing a wide area network for control)."   *Id.* at 1.

But for its invalidity case against asserted claims 2 and 21, Apple's only evidence is a supposed alternative configuration, in which the mobile device is ***inside*** the home network and there is no wide area network involvement at all.   According to Apple, "Kumar discloses that mobile device 16 (UE) may be in a UPnP local area network, the 'home network,' with UPnP camcorder (MS) and UPnP TV (MR).   One of skill in the art will recognize that mobile device 16 (UE) is capable of communicating wirelessly, and therefore that mobile device 16 (UE) may be in communication with the UPnP camcorder (MS) and UPnP TV (MR) via a local wireless network."   Invalidity Report, Ex. 5 at 9 (internal citations omitted).   In this configuration, which does not

1   include the alleged serving node in the wide area network, *i.e.*, the home network gateway, the

2   mobile device 16 would use only the local network for control of the UPnP devices on that

3   network.   *Id*. at 10.

4          **4.**        **The Costa-Requena Reference**

5        Apple's fourth reference is U.S. Published Patent Application 2006/0143295 to Costa-

6   Requena et al. ("Costa-Requena").[9]   Costa-Requena discloses "[m]ethods and systems . . . to link

7   two Universal Plug and Play ('UPnP') networks to enable the devices in one to communicate

8   directly with the devices in the other.   Specifically, a mobile station visiting a first UPnP network

9   may establish communication with a second UPnP network via Web Services ("WS") protocol

10  with a network gateway of the second UPnP network."   Costa-Requena at Abstract.

11       For its invalidity case against claims 1 and 20, Apple relies on a configuration of Costa-

12  Requena in which a mobile device outside a local UPnP network allegedly controls devices inside

13  that local network through a web proxy gateway (alleged CP logic).   Referring to Figure 5 from

14  Costa-Requena (reproduced below), Apple contends that "Costa-Requena discloses that mobile

15  station 122 [alleged UE with CPP logic] can control the UPnP devices 114 via a web proxy

16  gateway 512, which is accessible via a wide area network such as 'the Internet' (using a wide area

17  network for control)."   Invalidity Report, Ex. 6 at 1; *see also* Costa Requena at Fig. 5:

18

19

20

21

22

23

24

25

26

27

28       [9]   Costa-Requena is attached as Sohn Decl., Exhibit H.

FIG. 5

But for its invalidity case against asserted claims 2 and 21, Apple's only evidence is the very different configuration of Figure 1 (reproduced below) in which mobile device 122 (the alleged UE with CPP logic) is part of local network 120 and, in Apple's configuration, only communicates with devices on that local network: "One of skill in the art also will recognize that mobile station 122 (UE) does not need to use web proxy gateway 512 (CP logic) to communicate with UPnP devices to which it is in communication via a local wireless network. Fig. 1." Invalidity Report, Ex. 6 at 9.   Apple's evidence for claims 2 and 21 expressly *does not* include anything that could be considered a serving node in the wide area network or a wide area network utilized for control.



FIG. 1

### 5. The Stewart Reference

Apple's fifth invalidity reference is U.S. Published Patent Application No. 2006/0112192 to Stewart et al. ("Stewart").[10]   Stewart discloses an architecture that allows a control point on one local UPnP network to control devices on a different local UPnP network.   As stated in the Stewart Abstract: "A Universal Plug and Play relationship is established between platforms that comprise parts of separate local networks.   A link is provided via that Universal Plug and Play relationship to then facilitate Universal Plug and Play-compatible communications as between elements that do not, in fact, share a common local network."   Stewart at Abstract; *see also id.* at Fig. 4 (reproduced below).

---

[10]   Stewart is attached as Sohn Decl., Exhibit I.



For its invalidity case against claims 1 and 20, Apple relies on the above disclosure from Stewart, in which a wide area network (WAN) allows communication between UPnP devices on two different LANs.   Apple contends that "Stewart discloses that 'Universal Plug and Play messages are readily sent back and forth over the connection between the two enabling devices' on a home local area network and a remote local area network where the remote local area network includes a 'control point' (utilizing a wide area network for control).   Stewart discloses that such local area networks may be separated by a wide area network 42, which may be the Internet (wide area network)."   Invalidity Report, Ex. 7 at 1-2 (internal citations omitted).

For its invalidity case against asserted claims 2 and 21, however, Apple's only evidence is of a different configuration of Stewart in which all devices are contained within a single LAN and media delivery is coordinated only within that LAN.   For these claims, Apple contends that "Stewart discloses that device A (an MS) and device B (an MR) reside on the home LAN, which also includes home LAN logic (CP logic).   It would have been obvious to one of skill in the art for the home LAN CP (CP logic) to have logic to negotiate media content delivery between a UPnP MS and a UPnP MR, as discussed above.   It also would have been obvious to one of skill

1   in the art to invoke home LAN CP (CP logic) to negotiate media content delivery between device

2   A (an MS) and device B (an MR)."   Invalidity Report, Ex. 7 at 9.[11]   Apple's evidence **does not**

3   include anything that could be considered a serving node in the wide area network or a wide area

4   network utilized for control.

5              **6.        The AirTunes Reference**

6            Apple's sixth and final invalidity reference is Apple's AirTunes system.   AirTunes was a

7   feature of Apple's iTunes client software typically installed on an Apple or Windows computer.

8   A user could use the iTunes client software to communicate with the iTunes Store over the

9   Internet and purchase music, which the user could then download into their iTunes library from a

10  content server, also over the Internet.   If the computer was part of a local network that included an

11  Apple AirPort Express wireless base station with connected speakers, the user could, in a separate

12  and distinct operation, use AirTunes to play the purchased music from the user's iTunes library on

13  the speakers connected to the AirPort Express.   As Apple explains, "AirTunes was configured to

14  play music purchased through the iTunes store . . . on output devices such as an AirPort Express

15  with connected speakers."   Invalidity Report, Ex. 8 at 1-2.

16           For its invalidity case against claims 1 and 20, Apple alleges that the iTunes Store server is

17  the "serving node in the wide area network" and that it "would be an element of a wide area

18  network used for control . . . because it also would process financial transactions, authenticate a

19  user, and so on (utilizing a wide area network for control.)"   Invalidity Report, Ex. 8 at 5.   Apple

20  also alleges that the content server is the claimed media server.   *Id.*

21           For its invalidity case against asserted claims 2 and 21, however, the iTunes Store server

22  (alleged serving node in the wide area network) is not needed because the songs are not purchased

23  from the iTunes Store and then downloaded from the content server (alleged MS), but are instead

24  obtained directly from "a local computer that is sharing music" — *e.g.,* a second user's computer

25

26       [11]    Claims 2 and 21 require that "***CPP logic*** is invoked to negotiate media content delivery.
     Apple, however, asserts only that Stewart shows that "home LAN CP (***CP logic***) [is invoked] to
27   negotiate media content delivery . . . ."   Invalidity Report, Ex. 7 at 9.   For this additional reason
     Apple has failed to produce evidence that Stewart invalidates claims 2 and 21.

28

1   with an iTunes library.   Specifically, Apple contends that "the user's computer (UE) with the

2   iTunes client software with AirTunes (CPP logic) . . . would obtain media (audio) **_from a local_**

3   **_computer that is sharing music (an MS)_** and deliver it to an AirPort Express with speakers."

4   Invalidity Report, Ex. 8 at 20 (emphasis added).   Apple's contentions for claims 2 and 21,

5   therefore, lack any evidence of a "serving node in the wide area network" or "utilizing a wide area

6   network for control."   Everything is handled in the local network.

7   **IV.   LEGAL STANDARD**

8        Summary judgment is warranted "if the movant shows that there is no genuine dispute as

9   to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P.

10   56(a).   "To defeat the motion for summary judgment, the nonmoving party must 'make a

11   sufficient showing on [all] essential element[s] of [his] case with respect to which [he] has the

12   burden of proof.'"   *Underwager v. Channel 9 Australia*, 69 F.3d 361, 365 (9th Cir. 1995)

13   (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (Court's brackets).)   Conversely,

14   "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point

15   out 'that there is an absence of evidence to support the nonmoving party's case.'"   *Devereaux v.*

16   *Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

17        In patent cases, the alleged infringer bears the burden of proving invalidity by clear and

18   convincing evidence.   *Microsoft Corp. v. i4i Ltd. P'Ship*, 131 S. Ct. 2238 (2011).   Where, as

19   here, an invalidity case is based on prior art, the alleged infringer must show that the prior art

20   either anticipates the asserted claims or renders them obvious.   "Anticipation requires a showing

21   that each limitation of a claim is found in a single reference, either expressly or inherently."

22   *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006).   By contrast, "[a]n

23   obviousness analysis measures the difference between the claimed invention and the prior art to

24   determine whether the subject matter as a whole would have been obvious at the time the

25   invention was made to a person having ordinary skill in the art."   *Unigene Labs., Inc. v. Apotex,*

26   *Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011).   "A party seeking to invalidate a patent on

27   obviousness grounds must demonstrate by clear and convincing evidence that a skilled artisan

28   would have been motivated to combine the teachings of the prior art references to achieve the

1  claimed invention, and that the skilled artisan would have had a reasonable expectation of success

2  in doing so."  *InTouch Tech., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014).

3  **V.      ARGUMENT**

4       **A.      Apple's Evidence Raises No Genuine Issue of Material Fact Precluding
   Summary Judgment on Apple's Invalidity Defenses**

5

6       Apple has failed to present evidence to support its contention that the asserted claims are

7  anticipated or rendered obvious by any of its six alleged prior art references.   Apple cannot,

   therefore, demonstrate a genuine issue of material fact precluding partial summary judgment on its

8  invalidity defenses.

9

10       As detailed in the Statement of Facts above, each of Apple's attacks against asserted

    dependent claims 2 and 21 suffers from a common flaw: each fails to demonstrate required

11  limitations recited in the respective parent claims.   For each asserted prior art reference, Apple's

12  proffered evidence against claims 2 and 21 demonstrates that all system components exist on a

13  single local network with no connection to or communication over a wide area network, such as

14  the Internet, as required by parent claims 1 and 20.   As a result, Apple has a complete failure of

15  proof with respect to at least two claim limitations: (1) "utilizing a wide area network for control,"

16  as found in the preambles of claims 1 and 20; and (2) provisioning "a serving node in the wide

17  area network," as found in the bodies of claims 1 and 20.   These limitations from claims 1 and 20

18  apply fully to asserted claims 2 and 21, given that claims 2 and 21 depend from claims 1 and 20.

19  *See Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) ("claims in

20  dependent form include all the limitations of the claim incorporated by reference into the

21  dependent claim.")

22       **B.      Apple Can Raise No Genuine Issue of Material Fact With Respect to Its
   Assertion that Claims 2 and 21 Are Anticipated**

23

24       Apple has asserted an anticipation defense with respect to only two of its six prior art

25  references: the UPnP Design Book and the Intel Tools.   Invalidity Report at 31.   As discussed

26  above, to meet its burden on anticipation, Apple must prove by clear and convincing evidence

27  "that each limitation of [the challenged claims] is found in a single reference, either expressly or

28  inherently."   *Atofina*, 441 F.3d at 999.   Apple will be unable to meet this burden or identify a

genuine issue of material fact with respect to this burden because Apple has presented no evidence

that either the UPnP Design Book or the Intel Tools discloses, either expressly or inherently, a

method that practices each limitation of claims 2 and 21.   Specifically, the evidence Apple has

offered for these claims discloses only devices connected via a local network where no "serving

node in the wide area network" has been provisioned and which do not "utiliz[e] a wide area

network for control," as required by both claims 2 and 21.

 As discussed above, for both the UPnP Design Book and the Intel Tools, Apple contends

that the standard UPnP local network configuration depicted in the UPnP Design Book and

reproduced in Section III(B)(1) above anticipates claims 2 and 21.   Invalidity Report, Ex. 3 at 41

and 47, Ex. 4 at 41 and 47.   In this local-only configuration, Device Relay — which Apple has

mapped to the CP logic of the serving node and which must be "in the wide area network" — is

not used.   Invalidity Report, Ex. 4 at 41.   Moreover, because Apple describes only three devices,

all connected over a single LAN, none of those devices are controlled "utilizing a wide area

network."   For at least these reasons, there is no genuine issue of material fact precluding partial

summary judgment with respect to Apple's anticipation defense.[12]

### C.     Apple Can Raise No Genuine Issue of Material Fact With Respect to Its Assertion that Claims 2 and 21 are Rendered Obvious

 For the UPnP Design Book, the Intel Tools, and the other four prior art references, Apple

asserts that each reference renders the asserted claims obvious.   Invalidity Report at 56.   But as

discussed above in the Statement of Facts, Apple has produced no evidence that the configurations

it relies on for the alleged obviousness of claims 2 and 21 disclose required limitations of those

---

[12]     Another reason neither the UPnP Design Book nor the Intel Tools can anticipate the asserted claims is that neither is a single reference.   As the PTAB has already ruled, "UPnP Design, which consists of [multiple separate documents], cannot anticipate anything because 'it' does not constitute a single reference.   *See, e.g.*, *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1351, (Fed. Cir. 2008) . . . . Although the asserted references all relate to UPnP architecture and are grouped together for consumption by a person of ordinary skill in the art, they remain separate references. In fact, they were not even published simultaneously."   IPR2014-01566, Institution Decision, Paper No. 10, at 7 (Sohn Decl. Ex. J.)   The Intel Tools fare no better because Apple has offered no evidence that those tools were ever arranged into the configurations it asserts anticipate the claims.   Polish Dep. 37:13-39:1 (Sohn Decl., Ex. K.)

claims, including "utilization of a wide area network for control" and provisioning a "serving node in the wide area network." *See* Section III.B.1 above for the UPnP Design Book; Section III.B.2 for Intel Tools; Section III.B.3 for Kumar; Section III.B.4 for Costa-Requena; Section III.B.5 for Stewart; and Section III.B.6 for Airtunes.

Moreover, despite using a completely different configuration from that relied on for claims 1 and 20, Apple makes no effort to demonstrate how the configurations relied on for claims 2 and 21 meet or render obvious ***any*** of the specific limitations of the parent claims.   Rather, Apple's assertions with respect to claims 2 and 21 merely emphasize how, in those specific configurations, the alleged CPP logic, alleged MS, and alleged MR are "all in communication via a local wireless network."   Invalidity Report, Ex. 3 at 39-41 (UPnP Design Book); *see also id.*, Ex. 4 at 41 (Intel Tools); Ex. 5 at 9 (Kumar); Ex. 6 at 8 (Costa-Requena); Ex. 7 at 9 (Stewart); Ex. 8 at 18-19 (AirTunes).

Apple also offers no evidence and makes no argument that these particular configurations could have been modified to include the missing limitations or that it would have been obvious for one of ordinary skill in the art to make such modifications.   This is not surprising given that, in these configurations, all identified entities exist on a single local network.   Thus, there is no role for a wide area network and no reason to connect to a wide area network or utilize one for control. *InTouch Tech.*, 751 F.3d at 1347 ("A party seeking to invalidate a patent on obviousness grounds must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention . . .")[13]

---

[13]   This fundamental flaw in Apple's invalidity case is essentially the mirror-image of the flaw the PTAB found when refusing to institute *inter partes* review of claims 2 and 21.   In rejecting Apple's bid for *inter partes* review of these claims, the PTAB noted that Apple relied on the "same evidence" for claims 2 and 21 as it relied on for the corresponding limitations of the respective parent claims.   IPR2014-01565, Paper 10, Institution Decision at 17-18 (Sohn Decl., Ex. L).   Here, Apple has overcorrected in the opposite direction by asserting incompatible prior art configurations for claims 1 and 20 on the one hand and claim 2 and 21 on the other.

1    Apple has not, therefore, offered any evidence that any of its prior art references disclose

2 or render obvious each limitation of claims 2 and 21, at least because Apple has provided no

3 evidence that the configurations it relies on for those claims disclose or render obvious "utilizing a

4 wide area network for control" or provisioning a "serving node in the wide area network."   Thus,

5 there is no genuine issue of material fact precluding partial summary judgment with respect to

6 Apple's obviousness defense

7        **D.        The "Utilizing a Wide Area Network for Control" Language Is Limiting**

8    Neither party (nor their experts) have ever disputed that the "utilizing a wide area network

9 for control" language is a required limitation of the claims, even though it appears in the preamble

10 of claims 1 and 20.   The claim preambles are limiting here because they provide the antecedent

11 basis for numerous terms in the body of the claims.   *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d

12 1349, 1358 (Fed. Cir. 2012) ("a preamble phrase that provides antecedent basis for a claim

13 limitation generally limits the scope of the claim."); *Pacing Tech., LLC v. Garmin Int'l, Inc.*, 778

14 F.3d 1021, 1024 (Fed. Cir. 2015) ("Because the preamble terms 'user' and 'repetitive motion

15 pacing system' provide antecedent basis for and are necessary to understand positive limitations in

16 the body of claims in the ′843 patent, we hold that the preamble to claim 25 is limiting.")

17    For example, the preambles for both claims 1 and 20 introduce "*a* media server (MS)," "*a*

18 media renderer (MR)", and "*a* wide area network."   These previously-introduced elements are

19 then referred to in the body of the claims as "*the* MS," "*the* MR," and "*the* wide area network."

20 It is thus clear that the preamble provides antecedent basis for these terms.   *See, e.g., NTP, Inc. v.*

21 *Research In Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) ("The antecedent basis of the

22 disputed claim limitation 'to *the* at least one of the plurality of destination processors' is the

23 destination processor recited in the preamble.") (emphasis in original, internal citations deleted);

24

25 *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 954 (Fed. Cir. 2006) ("'the abutment' of limitation [e]

26 refers to the particular abutment described in the preamble of the claim.")   And as noted above,

27 where a preamble provides antecedent basis for terms in the claim body, the preamble is limiting.

28

*Deere*, 703 F.3d at 1358; *Pacing Tech.*, 778 F.3d at 1024.   Thus, Apple cannot brush aside the

"utilizing a wide area network for control" language simply because it appears in the claim

preamble.   Rather, this language limits the claims and, therefore, must be met by a prior art

reference for invalidity.

     **E.**      **The Claim 2 and 21 Limitations Are Limiting**

     Apple previously argued in its Motion to Stay briefing that the limitations added by claims

2 and 21 are not required because they are "conditional" limitations — *i.e.*, they state that "CPP

logic is invoked to negotiate media content delivery between the MS and the MR *if* the MS and

MR are both in communication with the UE via a local wireless network."   Apple asserted that

such conditional limitations "are not entitled to patentable weight" and thus need not be found in

the prior art for invalidity.   Dkt. 129 at 4.   Under this theory, a prior art reference that met the

limitations of claims 1 and 20 would automatically invalidate claims 2 and 21 as well.

     It would be improper for Apple to re-assert this argument at summary judgment, as Apple

had explicitly disavowed this argument by the time of the Motion to Stay hearing.   5.28.15

Hearing Tr. at 16:13-15 (MS. CORBETT: "There's certainly – and it's certainly not our position

that the invalidity of claims 1 and 20 would render the dependent claims invalid.")   The Court

likewise rejected this argument at the hearing.   *Id.* at 14:21-24 (THE COURT: "But given that

there are claims here, and even though they're dependent claims, they may survive invalidity

where the independent claims might not . . .")   Thus, Apple could not re-raise this argument at

summary judgment without asking the Court to reverse itself, which is improper.   *See, e.g.,*

*United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case'

doctrine, a court is generally precluded from reconsidering an issue that has already been decided

by the same court, or a higher court in the identical case.   The doctrine is not a limitation on a

tribunal's power, but rather a guide to discretion.") (internal citations and quotation marks

omitted).

     Nonetheless, to the extent Apple does re-assert its prior argument at summary judgment,

the argument is meritless.   First, it is completely inconsistent with the PTAB's decision on *inter*

Case No. 3:13-cv-04700-EMC

AYLUS' MSJ OF NO INVALIDITY

*partes* review, given that the PTAB instituted *inter partes* review for claims 1 and 20 but did not institute review for claims 2 and 21.   If the limitations added by claims 2 and 21 had no patentable weight, such that the validity of claims 2 and 21 rose or fell with claims 1 and 20, then this PTAB decision would be utterly illogical.   Indeed, it would have been illogical for the PTO to grant claims 2 and 21 in the first place if Apple's "no patentable weight" argument was correct.

For all these reasons, the limitations of claims 2 and 21 **do** have patentable weight and cannot be disregarded, as the Court properly held at the Motion to Stay hearing.   Apple cannot ignore these limitations for purposes of invalidity.

## VI.   CONCLUSION

For the foregoing reasons Aylus respectfully requests that the Court grant partial summary judgment against Apple's invalidity defenses.

DATED: October 19, 2015                   QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP


                                          By   /s/ Amar Thakur
                                             Amar Thakur
                                             Attorney for AYLUS NETWORKS, INC.