MARK D. FOWLER, Bar No. 124235
mark.fowler@dlapiper.com
CHRISTINE K. CORBETT, Bar No. 209128
christine.corbett@dlapiper.com
ROBERT BUERGI, Bar No. 242910
robert.buergi@dlapiper.com
ERIK R. FUEHRER, Bar No. 252578
erik.fuehrer@dlapiper.com
JONATHAN HICKS, Bar No. 274634
jonathan.hicks@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2214
Telephone:  650.833.2000
Facsimile:   650.833.2001

ROBERT WILLIAMS, Bar No. 246990
robert.williams@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:  (619) 699-2700
Facsimile:   (619) 699-2701

Attorneys for Defendant
APPLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| AYLUS NETWORKS, INC., | CASE NO.  3:13-cv-04700-EMC |
| Plaintiff, | **DEFENDANT APPLE INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| APPLE INC., | DATE:    December 10, 2015 TIME:     1:30 p.m. |
| Defendant. | PLACE: Courtroom 5, 17th Floor JUDGE: Honorable Edward M. Chen |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

**TABLE OF CONTENTS**

2

Page

3   I.       INTRODUCTION ...................................................................................................... 3

4   II.      FACTUAL BACKGROUND .................................................................................... 3

          A.       The Asserted Patent and the Asserted Claims........................................... 3

5         B.       The Accused Apple Products And Accused Functionality ....................... 3

6   III.     LEGAL STANDARDS.............................................................................................. 4

7   IV.      ARGUMENT ............................................................................................................. 5

8         A.       Apple Is Entitled To Summary Judgment Of Non-Infringement Because
                    Apple Does Not Practice The Limitation "The CPP Is Invoked To
                    Negotiate Media Content Delivery Between The MS And The MR." ................. 5

9                  1.       "The CPP logic is invoked" should be construed to mean "invoking
                            only the CPP logic."............................................................................ 6

10                 2.       Apple does not invoke only the CPP logic to negotiate media
11                          content delivery .................................................................................... 9

12        B.       Apple Is Entitled To Summary Judgment Of Non-Infringement Because
                    Not All Of Claimed Method Steps Are Performed By Or Are Attributable
13                  To Apple............................................................................................................. 11

14                 1.       Apple's Sale of the Accused Products Cannot Infringe the Asserted
                            Claims ................................................................................................. 11

15                 2.       Apple Does Not Perform Each Step of the Asserted Claims................... 11

16                 3.       The Alleged Performance of the Asserted Claims Is Not
                            Attributable to Apple.......................................................................... 15

17        C.       Apple Is Entitled To Summary Judgment Of Non-Infringement Because
                    The Accused Apple Products Do Not Include The Claimed "CPP Logic
18                  [That] Serves As A [First/Second] Proxy" .......................................................... 19

19        D.       Apple Is Entitled To Partial Summary Judgment That The Asserted
                    Claims' Conditional Limitations Have No Patentable Weight ......................... 20

    V.       CONCLUSION ......................................................................................................... 22
20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009) (en banc) ................................................................. 7

5

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
No. 2009-1372, 2015 WL 4760450 (Fed. Cir. Aug. 13, 2015) ............................ 11, 14, 17, 18

6

7

*Alloc v. Int'l Trade Comm'n*,
342 F.3d 1361 (Fed. Cir. 2003) ................................................................................. 8

8

9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................................. 4

10

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
731 F.2d 831 (Fed. Cir. 1984) .................................................................................. 5

11

12

*Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*,
533 F.3d 1362 (Fed. Cir. 2008) ................................................................................ 7

13

14

*Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*,
262 F.3d 1258 (Fed. Cir. 2001) ................................................................................ 8

15

16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................. 5

17

*Chimie v. PPG Indus.*,
402 F.3d 1371 (Fed. Cir. 2005) ................................................................................ 7

18

19

*Computer Docking Station Corp. v. Dell, Inc.*,
519 F.3d 1366 (Fed. Cir. 2008) ................................................................................ 7

20

*Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*,
243 Fed. Appx. 603 (Fed. Cir. 2007) ...................................................................... 20

21

22

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) .............................................................................. 15

23

24

*Ex parte de Vriendt*,
Appeal 2012-007086,2015 WL 294310 (PTAB Jan. 21, 2015) ............................. 20

25

*Ex parte Fleming III*,
Appeal 2014-002849, 2014 WL 7146104 (PTAB Dec. 12, 2014) ................... 20, 21

26

*Ex parte Llorente*,
Appeal 2012-012674, 2015 WL 1325518 (PTAB Mar. 20, 2015) ......................... 20

27

28

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006) ................................................................. 5, 17, 18

*Forest Labs., Inc. v. Abbott Labs.*,
    239 F.3d 1305 (Fed. Cir. 2001) ................................................................................... 5

*Gillespie v. Dywidag Sys. Int'l, USA*,
    501 F.3d 1285 (Fed. Cir. 2007) ................................................................................... 7

*In re Johnston*,
    435 F.3d 1381 (Fed. Cir. 2006) ......................................................................... 20, 21

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ......................................................................... 11, 12

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005) ................................................................................... 5

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ................................................................................... 8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    521 F.3d 1351 (Fed. Cir. 2008) ................................................................................... 6

*Open Text S.A. v. Box, Inc.*,
    No. 13-cv-04910-JD, 2015 WL 400348 (N.D. Cal. Jan. 28, 2015) ........................... 6

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006) ................................................................................. 11

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................. 6

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002) ................................................................................... 7

*Schindler Elevator Corp. v. Otis Elevator Co.*,
    593 F.3d 1275 (Fed. Cir. 2010) ................................................................................... 7

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F.3d 1319 (Fed. Cir. 2010) ......................................................................... 14, 16

*Southwall Techs., Inc., v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ..................................................................................... 7

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001) ................................................................................... 5

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ..................................................................................... 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ............................................................................................................. 4, 5

MPEP § 2111.04 ..................................................................................................................... 20

**NOTICE OF MOTION AND MOTION**

To Plaintiff Aylus Networks, Inc. ("Aylus") and its counsel of record:  PLEASE TAKE NOTICE that on December 10, 2015, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 5 of the above-titled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Apple Inc. ("Apple") will and hereby does, move for an order granting Apple summary judgment of non-infringement of U.S. Patent No. RE44,412 (the "'412 patent"), or, in the alternative, partial summary judgment.  This motion is based on this notice of motion, the accompanying memorandum of points and authorities in support thereof, the Declaration of Robert Buergi ("Buergi Decl.") and exhibits attached thereto, and any other written or oral argument that may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

In light of a pending *inter partes* review of the '412 patent, Aylus dismissed with prejudice all of its infringement claims against Apple under the '412 patent other than its claims under dependent method claims 2 and 21.  Aylus also dropped its indirect infringement and doctrine of equivalents claims.  Thus, Aylus's only remaining infringement claim against Apple is its contention that Apple directly and literally infringes method claims 2 and 21.  Pursuant to Federal Rule of Civil Procedure 56, Apple seeks an order granting summary judgment of non-infringement of claims 2 and 21 or, in the alternative, partial summary judgment, on the following four grounds.

First, claims 2 and 21 each require that "the CPP logic is invoked to negotiate media content delivery between the MS and the MR."  Apple does not practice this claim step under the construction of this claim limitation that is required both by the plain language of the claims, and by Aylus's clear and unmistakable disavowal of claim scope before the PTO.

Second, as a matter of law, Apple only can directly infringe these method claims if the performance of each step of the method claims is performed by or attributable to Apple.  However, undisputed facts establish that while some of the method steps, to the extent they allegedly are performed, are attributable to Apple, other steps, to the extent they allegedly are

performed, are performed by Apple's customers or by Apple's products, and that performance is not attributable to Apple.  Therefore, as a matter of law, Apple is not liable for direct infringement.

Third, independent claims 1 and 20, upon which asserted dependent claims 20 and 21 respectively depend, require that an accused product include "CPP logic [that] serves as a [first/second] proxy."  The accused Apple products do not infringe the asserted claims because they lack the required "proxy" under the Court's construction of that term.

Fourth, as a matter of law, because they each constitute a conditional method step limitation where the condition may not occur, none of the following claim limitations has patentable weight:  (1) "invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS and the MR if one of the MS and MR are not in communication with the UE via a local wireless network" (claims 1 and 20); and (2) "the CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS and MR are both in communication with the UE via a local wireless network" (claims 2 and 21).

## STATEMENT OF THE ISSUES TO BE DECIDED

1.   Whether Apple is entitled to summary judgment of non-infringement where Apple does not perform the claim step "the CPP logic is invoked to negotiate media content delivery between the MS and MR" under the correct construction of that limitation in light of both the plain claim language and Aylus's clear and unmistakable disclaimer of claim scope before the PTO.

2.   Whether Apple is entitled to summary judgment of non-infringement under Aylus's infringement theory where not all of the claimed method steps are either performed by or attributable to Apple.

3.   Whether Apple is entitled to summary judgment of non-infringement under Aylus's infringement theory where the accused Apple products do not include a "proxy" that satisfies the Court's construction of that term.

4.   Whether Apple is entitled to partial summary judgment that the asserted claims' two conditional limitations have no patentable weight.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3          After the Patent Trial and Appeal Board ("PTAB") instituted *inter partes* review ("IPR")

4    of all but two of the asserted claims of the '412 patent, Aylus avoided a stay of this case by

5    dismissing with prejudice all of its asserted claims other than the two claims that escaped

6    institution, dependent method claims 2 and 21.  Dkt. No 131.  In order to resolve disputes

7    surrounding the sufficiency of its amended infringement contentions, Aylus then dropped its

8    indirect infringement and doctrine of equivalents infringement theories.  Dkt. No. 156-3 at 8; Dkt.

9    No. 171 at 6 n.8; Dkt. No. 179 at 46-48.  During expert discovery, Aylus further limited the scope

10   of its direct, literal infringement theory to cover only the specific use case of when a user of an

11   Apple iOS device (*e.g.*, an iPhone) buys iTunes Store video content and then AirPlays that video

12   to a TV connected to an Apple TV in the manner prescribed by dependent claims 2 and 21.

13   Apple is entitled to summary judgment of non-infringement because this remaining, razor-thin

14   infringement theory is not practiced by Apple for at least the reasons explained below, each of

15   which is established by undisputed materials facts.

16

**II.     FACTUAL BACKGROUND**

17

    **A.     The Asserted Patent and the Asserted Claims**

18          The sole asserted patent in this case is U.S. Patent No. 44,412.  Ex. 1.[1]  Aylus dismissed

19   with prejudice all asserted claims except two in order to avoid a stay of this case pending the

20   outcome of a pending IPR of the '412 patent.  Dkt. No. 131.  The remaining asserted claims are

21   method claims 2 and 21, which depend from independent method claims 1 and 20, respectively.

22

    **B.     The Accused Apple Products And Accused Functionality**

23          The accused Apple products in this case are iOS devices (*i.e.*, iPhones, iPads, and iPod

24   Touches), the Apple TV, ████████████████, and ████ Content Delivery

25

26

27   ───────────────

[1] Unless otherwise noted, all cited exhibits are attached to the Declaration of Robert Buergi in

28   Support of Apple's Motion for Summary Judgment Or, In The Alternative, Partial Summary
     Judgment ("Buergi Decl.").

Network ("CDN") servers.[2]  An Apple TV is a small device that plugs into a third party TV in order to allow a user to access additional sources of content from the TV, such as content from Netflix, Hulu, or the iTunes Store.  The iTunes Store is an Apple service that allows users to buy media, such as music, movies, and TV shows.  ██████ CDN servers are servers that ██████ ████████████████████████████████ and are located throughout the country to distribute content, such as iTunes Store content, to consumers.

The allegedly infringing acts in this case occur when a user of an iOS device purchases video from the Apple iTunes Store, such as a movie or TV show, and uses an iOS device's "AirPlay" feature to direct that video to be played on a nearby TV that is connected to an Apple TV.  *See* Ex. 2 at 18-27 (discussing an example accused use of AirPlay).  For example, an iOS device user might purchase a movie from the iTunes Store, start watching that movie on his or her iPad, and then select the AirPlay option on the iPad to instead play that movie on the user's nearby TV to which an Apple TV is connected.  *Id*.  Under Aylus's infringement theories, the iOS device user must also use controls on the iOS device to pause, fast-forward, or rewind the iTunes Store video being displayed on the TV.  Ex. 2, Appendix A at 16.  Aylus's infringement theories are limited to the use of AirPlay with iOS devices, Apple TVs, iTunes Store video, and ██████ CDN servers, and Aylus's technical expert, Dr. Schonfeld, does not dispute otherwise.  Ex. 3 (Schonfeld Depo. Tr.) at 25:23-27:3.

Aylus does not assert indirect infringement or infringement under the doctrine of equivalents.  Dkt. No. 156-3 at 8; Dkt. No. 171 at 6 n.8; Dkt. No. 179 at 46-48.  Instead, Aylus asserts only direct, literal infringement.  Ex. 2 at 35 (the "accused Apple products directly infringe").

## III.    LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Summary judgment is an "integral part of

---

[2] The facts presented in this paragraph are for background purposes only and are not relied upon by Apple in seeking summary judgment.

1    the Federal Rules" aimed at securing "the just, speedy and inexpensive determination of every

2    action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

3        A moving party which does not bear the burden of proof on an issue at trial discharges its

4    burden on summary judgment by pointing out the absence of evidence to support the nonmoving

5    party's case.  *See Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307-08 (Fed. Cir.

6    2006).  When the movant makes a prima facie showing that it is entitled to summary judgment,

7    the burden shifts to the non-movant to present specific evidence identifying a genuine issue for

8    trial.  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1373

9    (Fed. Cir. 2005) (citing *Anderson*, 477 U.S. at 248.).

10       The non-movant, as the party bearing the burden of proof, cannot defeat summary

11   judgment by merely asserting that disputed facts exist.  *See Barmag Barmer Maschinenfabrik AG*

12   *v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) ("Mere denials or conclusory

13   statements are insufficient.").  Instead, the non-movant "must present proof that the accused

14   product meets each and every claim limitation." *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d

15   1305, 1310 (Fed. Cir. 2001).

16       Where, as here, a plaintiff cannot meet this evidentiary burden, summary judgment of

17   non-infringement is appropriate and proper.  *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247

18   F.3d 1316, 1323 (Fed. Cir. 2001); Fed. R. Civ. P. 56(a).

## IV.    ARGUMENT

### A.    Apple Is Entitled To Summary Judgment Of Non-Infringement Because Apple Does Not Practice The Limitation "The CPP Is Invoked To Negotiate Media Content Delivery Between The MS And The MR."

Claims 2 and 21 each recite that "the CPP is invoked to negotiate media content delivery

between the MS and the MR." '412 patent, 24:64-66, 26:15-17.  Apple does not practice this

claim limitation under a proper construction of this limitation.

#### 1.    "The CPP logic is invoked" should be construed to mean "invoking only the CPP logic."

This claim term was not presented to the Court for construction during the *Markman*

process in this case.  However, it is now clear that the parties have a fundamental dispute over the

1   meaning of this claim limitation that requires resolution by the Court.  In this regard, "[w]hen the

2   parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to

3   resolve it."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed.

4   Cir. 2008); *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 400348 at *1 (N.D. Cal.

5   Jan. 28, 2015).  Here, the claim language itself, as well as Aylus's clear and unmistakable

6   disclaimer of claim scope made to the PTO during the pending IPR, mandates that the Court

7   construe the term "the CPP logic is invoked" to mean "invoking only the CPP logic."[3]

8         Aylus's dispositive prosecution disclaimer, addressed below, is entirely consistent with

9   the plain language of the claims.  Independent claims 1 and 20 each recite, "invoking the CPP

10   logic ***and*** the CP logic to cooperatively negotiate media content delivery between the MS and the

11   MR."  '412 patent, 24:58-60, 26:8-10 (emphasis added).  Thus, in the case of the independent

12   claims, it is clear that both the CPP logic and the CP logic must be invoked.  This stands in stark

13   contrast to what is then claimed immediately thereafter in dependent claims 2 and 21, each of

14   which recite that "the CPP logic is invoked to negotiate media content delivery between the MS

15   and MR."  Thus, in the dependent claims, ***only*** the CPP logic is invoked to negotiate media

16   content delivery.

17         During the pending IPR before the PTO, Aylus stated – in a clear, unmistakable, and

18   binding disclaimer of claim scope – that only the CPP logic is invoked to negotiate media content

19   delivery in claims 2 and 21.  In this regard, prosecution of a patent includes "the complete record

20   of all the proceedings before the Patent and Trademark Office, including any express

21   representations made by the applicant regarding the scope of the claims."  *Vitronics Corp. v.

22   Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Thus, *inter partes* review proceedings

23   before the PTAB, a part of the PTO, are part of a patent's prosecution history.

24         "[T]he prosecution history can often inform the meaning of the claim language by

25   demonstrating how … the inventor limited the invention in the course of prosecution, making the

26   claim scope narrower than it would otherwise be."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317

27

28

---

[3] Apple has phrased this construction in active voice for clarity; an acceptable alternative construction in passive voice is "only the CPP logic is invoked."

(Fed. Cir. 2005) (en banc).  In this regard, "[b]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover."  *Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp*., 533 F.3d 1362, 1373 (Fed. Cir. 2008).  As a result, a patent owner "is not entitled to any interpretation that is disclaimed during prosecution."  *Schindler Elevator Corp. v. Otis Elevator Co*., 593 F.3d 1275, 1285 (Fed. Cir. 2010).  "Such a use of the prosecution history ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers," and "protects the public's reliance on definitive statements made during prosecution."  *Bd. of Regents*, 533 F.3d at 1373; *Chimie v. PPG Indus*., 402 F.3d 1371, 1384 (Fed. Cir. 2005).[4]

In Aylus's preliminary responses in each of the two *inter partes* reviews of the '412 patent, Aylus ***repeatedly, clearly and unequivocally*** argued to the PTO that the prior art did not disclose asserted claims 2 and 21 by stating that the "the CPP is invoked" limitation means ***only*** the CPP is invoked:

> tively negotiate media content delivery between the MS and the MR."  If, however, "the MS and MR are both in communication with the UE via a local wireless net-work," then only "the CPP is invoked to negotiate media content delivery between the MS and the MR."  [Claims 2 and 21].  Finally, "if neither the MS nor the MR are in

---

[4] *See also Southwall Techs., Inc., v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."); *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("Explicit arguments made during prosecution to overcome prior art can lead to a narrow claim interpretation because '[t]he public has a right to rely on such definitive statements made during prosecution'") (quoting *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998)); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1289 (Fed. Cir. 2009) (en banc) ("'the prosecution history can often inform the meaning of the claim language by demonstrating . . . whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.'") (quoting *Phillips*, 415 F.3d at 1317); *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) ("[t]he patentee is held to what he declares during the prosecution of his patent."); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) (holding that "the sum of the patentees' statements during prosecution would lead a competitor to believe that the patentee had disavowed" devices otherwise covered by the claim language).

Ex. 4 at 35; *see also id.* at 4 ("certain of the challenged claims require that … **only** the control point proxy logic … be invoked") (emphasis added); Ex. 5 at 4 ("certain of the challenged claims require that … **only** the control point proxy logic … be invoked") (emphasis added), 33 ("**only** 'the CPP is invoked …'") (emphasis added).

In the PTAB's decision instituting *inter partes* review of all but four claims of the '412 patent, the PTAB agreed with Aylus's claim construction position and adopted Aylus's proposed construction of "the CPP is invoked." Ex. 6 at 17-18. Based on that construction, the PTAB denied review of claims 2 and 21 by finding that the prior art did not disclose invoking **only** the CPP to negotiate media content delivery. *Id.* Specifically, the PTAB found that claims 2 and 21 required that "the CPP logic **exclusively** handles the negotiation." *Id.* (emphasis added). But for this finding, claims 2 and 21 also would now be before the PTAB (along with all of the other previously asserted claims in this case that Aylus dismissed with prejudice).

Aylus's statements in the IPRs regarding the construction of this claim limitation are a clear, unmistakable disavowal of claim scope. *See, e.g.*, *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (limiting the term "transmitting" because the patentee stated during prosecution that the invention transmits over a standard telephone line, thus disclaiming transmission over a packet-switched network); *Alloc v. Int'l Trade Comm'n*, 342 F.3d 1361, 1372 (Fed. Cir. 2003) (finding that the patentee expressly disavowed floor paneling systems without "play" because the applicant cited the feature during prosecution to overcome prior art); *Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1273 (Fed. Cir. 2001) (limiting operation of the "transceiver" to the three stated modes because of limiting statements made by the patentee to try to overcome a prior art rejection).

Accordingly, in light of Aylus's clear disclaimer of claim scope before the PTO, claims 2 and 21 cannot now be construed to recapture the claim scope Aylus previously expressly disavowed—namely, that anything other than the CPP logic is invoked to negotiate the recited media content delivery.

2. **Apple does not invoke only the CPP logic to negotiate media content delivery.**

Aylus's expert, Dr. Schonfeld, contends that the recited "CPP logic" is the software of the accused iOS devices and that the recited "media content delivery between the MS and the MR" is the delivery of iTunes Store video from an █████████ Content Delivery Network ("CDN") server to an Apple TV during an AirPlay session. Ex. 2, Appendix A at 17 ("the software on the iOS device (*i.e.*, control point proxy logic)"), 19 ("media content delivery between the ████████ 'Content Delivery Network (CDN)' Server (*i.e.*, media server) and the Apple TV (*i.e.*, media renderer)").

But the delivery of iTunes Store video to an Apple TV during an AirPlay session is not accomplished by invoking only the iOS device software (the alleged CPP logic). Instead, it must also invoke software of the iTunes Store servers, which Aylus contends is the recited CP logic. Ex. 2, Appendix A at 3 ("software on iTunes Store Server (*i.e.*, control point logic)"). Accordingly, because both the CPP logic and the CP logic allegedly are invoked, claims 2 and 21 are not practiced by Apple and Apple is therefore entitled to summary judgment of non-infringement.

AirPlay of video to an Apple TV will take one of two forms, referred to as "AirPlay Version 1" and "AirPlay from the Cloud." The major difference between these two AirPlay modes is, ███████████████████████████████████████████████████, and █ ███████████████████████████████████████████████████████████. Nonetheless, both modes always require invoking iTunes Store server software (the alleged CP logic). Specifically, an AirPlay from the Cloud session consists of at least ██████████████ ██████████████████████████████████████████████████████████████ ██████. These four steps are:

- ████████████████ sends the iOS device ██████████████;
- ████████████████████████████ and sends the Apple TV ██████████ █;
- ████████████████████████████████████ and sends the Apple TV ██████████ ███████ and

- ████████████████████████████████ and sends the Apple TV █ ████████████ .

Ex. 7 at 13-14 (steps 2, 5, 9, and 12); Ex. 8 (Transcript of Deposition of Apple employee Colin Meldrum) at 53:14-20 (step 2), 58:2-59:17 (step 5), 72:23-73:10 (step 9), 77:10-22 (step 12).

Similarly, an AirPlay Version 1 session includes at least ████████████████ ██████████████████████████ :

- ████████████████ sends the iOS device ███████████████ .

Ex. 7 at 15 (step 2); Ex. 8 (Meldrum Depo. Tr.) at 96:7-98:6 (step 2).  In short, AirPlaying iTunes Store video to an Apple TV necessarily involves ██████████████████████ (the alleged CP logic).

Dr. Schonfeld concedes that AirPlaying iTunes Store video to an Apple TV involves ██ ████████████████ recited above, and admits that the recited "media content delivery" involves these steps.  Ex. 3 at 139:13-17, 141:8-12, 142:12-17, 143:20-144:1, 152:3-13 (admitting that AirPlay involves ████████████ for AirPlay from the Cloud and ████ for AirPlay Version 1).  Thus, there is no genuine issue of material fact regarding this operation of the accused products,[5] and it is therefore undisputed that AirPlaying iTunes Store video content invokes not only the iOS device software (the alleged CPP logic), but also ████████████████ ████████ (the alleged CP logic).  Accordingly, AirPlaying iTunes Store video content does not invoke only the alleged CPP logic, as required by the claim, and Apple therefore does not infringe the asserted claims.

---

[5] Indeed, Aylus affirmatively relies on the iTunes Store server steps recited above to argue as part of its infringement theory that AirPlay "negotiates media content delivery between the MS and MR."  Specifically, Dr. Schonfeld contends that such negotiation is performed as discussed in Section VII of his report, and in Apple's response to Aylus's Interrogatory No. 13 (cited above), both of which recite the steps involving the iTunes Store servers above.  Ex 2, Appendix A at 19 (citing Section VII of Dr. Schonfeld's report and Apple's response to Interrogatory No. 13); *id.* at 18-34 (Section VII) (referencing ████████████ performed by █████████████████ at ¶¶ 48, 51, 55, 58, and 67); Ex. 7 (Apple's Response to Interrogatory No. 13) at 13-15 (reciting the steps listed above).

**B.**     **Apple Is Entitled To Summary Judgment Of Non-Infringement Because Not All Of Claimed Method Steps Are Performed By Or Are Attributable To Apple.**

**1.**     **Apple's Sale of the Accused Products Cannot Infringe the Asserted Claims.**

Aylus's technical expert, Dr. Schonfeld, contends that the "accused Apple products directly infringe claims 2 and 21." Ex. 2 at ¶ 81.  In his infringement expert report, Dr. Schonfeld does not contend that Apple, as opposed to the accused Apple products themselves, infringe the asserted claims.[6]  *Id*.  But both of the asserted claims are method claims, and direct infringement of method claims occurs only when someone performs the claimed method, not when someone sells a product that can be used to allegedly infringe the claims.  *Ormco Corp. v. Align Tech., Inc*., 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *see also Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("Direct infringement occurs only when someone performs the claimed method.").  Thus, Dr. Schonfeld's contention that the accused products alone practice the asserted claims is not a legally sufficient ground on which to find Apple liable for direct infringement.

**2.**     **Apple Does Not Perform Each Step of the Asserted Claims.**

To the extent that Aylus argues in its opposition brief that Apple, instead of Apple's products, performs the asserted claims, neither Aylus nor its expert, Dr. Schonfeld, timely offered such a theory.  Ex. 2 at ¶ 81.  Nevertheless, even if they had timely offered such a theory, Apple still would be entitled to summary judgment because direct infringement of a method claim only "occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc*., No. 2009-1372, 2015 WL 4760450 at *1 (Fed. Cir. Aug. 13, 2015) ("*Akamai*").

With regard to the "performed by" part of the *Akamai* test, Apple does not perform all

---

[6] Dr. Schonfeld also submitted an untimely and unauthorized "supplemental" infringement report following his deposition on the issue of infringement.  That report and the belated opinions contained therein (which are "limited" to addressing Apple's alleged "control" of iOS device users) are the subject of Apple's pending motion to strike (Dkt. No. 177) and, therefore, are not addressed in this motion.

1    steps of the asserted claims because certain steps of the asserted claims, if they are performed as

2    Dr. Schonfeld alleges (which they are not), would be performed instead by the iOS device user or

3    by the accused Apple products.  Apple addresses three such claimed method steps below, but a

4    finding that Apple does not perform any <u>one</u> such step is sufficient to support a finding that Apple

5    does not perform the asserted claims.  *Lucent Techs.*, 580 F.3d at 1317 ("To infringe a method

6    claim, a person must have practiced all steps of the claimed method.").

7         <u>First</u>, asserted dependent claims 2 and 21 each recite, "the CPP logic is invoked to

8    negotiate media content delivery between the MS and the MR if the MS and MR are both in

9    communication with the UE via a local wireless network."  Dr. Schonfeld contends that in the

10   allegedly infringing use cases, the condition of this limitation is satisfied (*i.e.*, that the alleged MS

11   and MR are both in communication with the UE via a local wireless network), and, therefore, that

12   the corresponding step must be performed (*i.e.*, the CPP logic must be invoked to negotiate media

13   content delivery between the MS and MR).  Ex. 2, Appendix A at 18-19, Appendix B at 18-19,

14   Appendix C at 18-19, Appendix D at 18-19.  In this regard, Dr. Schonfeld contends that (1) the

15   recited "CPP logic" is the software of the accused iOS devices, (2) the recited "MS" is an ████

16   CDN server, (3) the recited "MR" is the Apple TV, and (4) the recited "[negotiation of] media

17   content delivery between the MS and MR" occurs when an iOS device user AirPlays an iTunes

18   Store video to an Apple TV.  Ex. 2, Appendix A at 19, Appendix B at 19, Appendix C at 19,

19   Appendix D at 19.

20        Apple does not infringe the asserted method claims because Apple does not invoke the

21   iOS device software (alleged CPP logic) to AirPlay an iTunes Store video to an Apple TV; rather,

22   the iOS device user does so.  Specifically, in order to use an iOS device to AirPlay an iTunes

23   Store video to an Apple TV, the iOS device user must use the iOS device to select the AirPlay

24   option, select an Apple TV destination, and select an iTunes Store video.  Ex. 9 ("Here's how to

25   start using AirPlay. … Tap AirPlay … Tap the name of the device you want to AirPlay to. …

26   Now the content in [your] Videos … app will stream to your Apple TV."); Ex. 2 at 18-34

27   (discussing the allegedly infringing AirPlay use cases, in which the iOS device user uses the iOS

28   device software to select the AirPlay option, select an Apple TV destination, and select an iTunes

Store video).  All of these steps of invoking the iOS device and its software are performed by the iOS device user, not Apple.  *Id.*

These facts are undisputed and Dr. Schonfeld concedes as much when he describes how an iOS device user uses AirPlay:  "<u>the user</u> has selected the AirPlay button on the iOS device and has selected to display the content on the Apple TV."  Ex. 2 at ¶¶ 47, 73 (emphasis added).  Similarly, Dr. Schonfeld admits that "[t]he user has control over whether to AirPlay and to which Apple TV they want to do it."  Ex. 3 at 116:7-11.  It is therefore the iOS device user, not Apple, who allegedly would "invoke the CPP logic."

<u>Second</u>, independent claim 1, the parent claim of asserted claim 2, recites, "once media content delivery is negotiated, controlling a presentation of delivery via the VCR controls on the UE."  The Court has construed "VCR controls" to mean "controls for the display of video content that traditionally appear on a VCR (*e.g.*, play, pause, rewind, stop buttons)."  Dkt. No. 102 at 6.  Dr. Schonfeld contends that the VCR controls of the accused products are internal signals in the iOS device software that are generated when an iOS device user selects buttons on the iOS device user interface to pause, fast-forward, or rewind a video being AirPlayed.  Ex. 3 at 49:11-50:2 ("I'm particularly referring to various messages and signals sent in response to a – to a button being pressed. … The various buttons that are available … when you're using AirPlay"); *see also* Ex. 2 at 22 (showing the screen that appears on an iOS device when a user is AirPlaying iTunes Store content to an Apple TV, which screen includes controls to pause, rewind, and fast-forward at the bottom).

Apple does not infringe the asserted method claims because Apple does not use such controls to control the presentation of the video that is being AirPlayed; rather, the iOS device user does so.  Specifically, in order to control the presentation of a video being AirPlayed using the controls described above, the iOS device user will press the pause button to pause the video, press the fast-forward button to fast-forward the video, or press the rewind button to rewind the video.  Ex. 10 (Transcript of Deposition of Apple employee Greg Chapman) at 62:6-15 ("pause," "fast forward," and "rewind" "are done via controls on the iOS device"), 112:7-18 ("the user interface for those controls is … on the iOS device"); Ex. 2 at 26 (describing an iOS device user's

use of the controls on the iOS device when the user is AirPlaying a video).  Dr. Schonfeld concedes as much when he describes how a user controls the playback of AirPlayed video:  "The user can activate these controls by pressing the 'pause,' 'fast-forward,' and 'rewind' icons on the bottom of the screen or by using the 'sliding disk' on the top of the screen."  Ex. 2 at 25-26, 33 (emphasis added).  Similarly, Dr. Schonfeld admits that "it's the signals generated in response to the actual user pressing it."  Ex. 3 at 50:23-51:6 (emphasis added); *see also id.* at 253:2-254:9 ("once the user has pressed various buttons on the iOS device … those result in internal controls") (emphasis added).

Third, claims 1 and 20, the parent claims of asserted dependent claims 2 and 21, recite, "in response to a media content delivery request, […] determining a network context of the UE and a network connectivity of the MS and MR."  '412 patent, 24:58-61, 26:5-7.  Dr. Schonfeld contends that the "determining a network context" step of this claim limitation is performed by the iOS device and the Apple TV.  Ex. 3 at 97:19-99:4.  Thus, if anything performs this step, it is certain accused Apple products that do so rather than Apple.

Therefore, if the three above-discussed method steps of the asserted claims are performed as alleged by Dr. Schonfeld, either the iOS device user or the accused products, not Apple, performs the steps.[7]

### 3.   The Alleged Performance of the Asserted Claims Is Not Attributable to Apple.

With regard to the second part of the *Akamai* test, the alleged performance of the method steps that are not performed by Apple is not attributable to Apple.

#### a.   The accused products' alleged performance of certain steps of the claims is not attributable to Apple.

Where a product performs a step of a method claim, performance of that step is attributable to the product's manufacturer only if (1) the product performs the step automatically, and (2) only the manufacturer's actions are involved in performing the step.  *SiRF Tech., Inc. v.*

---

[7] Other steps of the asserted claims also are not performed by Apple, but Apple addresses only selected steps in this motion because, as discussed above, Apple only needs to prevail as to one step in order to be entitled to summary judgment of non-infringement.

1    *Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) (finding that SiRF was responsible for

2    performance of steps performed by SiRF chips because the chips "automatically perform the

3    disputed steps" and "only SiRF's actions are involved in" performance of the steps); *see also*

4    *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014) (finding that defendant

5    D-Link was not responsible for steps allegedly performed by D-Link products because "[u]nlike

6    the method in SiRF, there are no steps automatically performed by equipment controlled by D-

7    Link").

8         As established below, none of the three method steps identified above that Apple does not

9    perform is attributable to Apple.

10        <u>First</u>, claims 2 and 21 each recite, "the CPP logic is invoked to negotiate media content

11   delivery between the MS and the MR if the MS and MR are both in communication with the UE

12   via a local wireless network."  Because the alleged performance of this step requires action by an

13   iOS device user, as described above, it does not happen automatically and does not involve only

14   actions by Apple.  *See* Section IV.B.2 (the iOS device user must select the AirPlay button, select

15   an Apple TV destination for the video, and select the iTunes Store video in order to AirPlay the

16   video).  The action is therefore not attributable to Apple under governing precedent.

17        <u>Second</u>, claim 1, the parent claim of asserted claim 2 recites, "once media content delivery

18   is negotiated, controlling a presentation of delivery via the VCR controls on the UE."  '412

19   patent, 24:62-63.  The alleged performance of this step also requires action by an iOS device user,

20   as described above, and therefore does not happen automatically and does not involve only

21   actions by Apple.  *See* Section IV.B.2 (the iOS device user must use controls on the iOS device to

22   control presentation of an AirPlayed video using the alleged VCR controls).

23        <u>Third</u>, claims 1 and 20, the parent claims of asserted dependent claims 2 and 21, recite, "in

24   response to a media content delivery request, [...] determining a network context of the UE and a

25   network connectivity of the MS and MR."  '412 patent, 24:58-61, 26:5-7.  Dr. Schonfeld

26   contends that the "determining a network context" step of this claim limitation is performed by

27   the iOS device and the Apple TV.  Ex. 3 at 97:19-99:4.  But even if the iOS device and/or the

28   Apple TV perform this step, they do not do so automatically.  Instead, as required by the claim

limitation itself, they must do so "in response to a media content delivery request." '412 patent, 24:55, 26:5 (emphasis added).

Dr. Schonfeld contends that the "media content delivery request" is a request by an iOS device user to purchase or rent a movie from the iTunes Store. Ex. 3 at 47:18-24 ("the request by the user when they either purchased or rented a movie"). A request to purchase or rent a movie from the iTunes Store also does not happen automatically. Instead, an iOS device user must navigate to the iTunes Store, browse the available content, select a movie, select whether to purchase or rent the movie, pay for the purchase or rental, and so on. This series of purchasing steps is anything but automatic, and is performed at the sole desire of the iOS device user. Dr. Schonfeld concedes as much when he testifies that "the user has pressed they would like to purchase a movie" and "the user has selected to purchase the movie." Ex. 3 at 88:1-24, 216:19-24 (emphasis added). Thus, the alleged performance of the "determining a network context" step of the asserted claims does not happen automatically and therefore is not attributable to Apple. *SiRF Tech.*, 601 F.3d at 1331.

Nor does the accused products' alleged performance of the "determining a network context" step involve actions only by Apple, as it must in order to be attributable to Apple. *Id*. Instead, the claim limitation requires that the "determining" step be performed "in response to a media content delivery request," which Dr. Schonfeld contends is an iOS device user's request to purchase or rent a movie from the iTunes Store, as discussed above. A request to purchase or rent a movie from the iTunes Store necessarily involves actions by an iOS device user instead of Apple, as described above. Thus, the alleged performance of the limitation "in response to a media content delivery request, […] determining a network context of the UE" necessarily involves actions other than actions by Apple, and therefore is again not attributable to Apple. *SiRF Tech.*, 601 F.3d at 1331.

### b. Any alleged performance of the asserted claims by more than one actor is not attributable to Apple.

"Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the

1   infringement." *Akamai Techs.*, 2015 WL 4760450, at \*1.  A court "will hold an entity

2   responsible for others' performance of method steps in two sets of circumstances: (1) where that

3   entity directs or controls others' performance, and (2) where the actors form a joint enterprise."

4   *Id*.  Although Aylus has not to date offered any theory that more than one actor practices the

5   asserted claims (and it should be precluded from doing so at this point in the case), any such

6   alleged performance of the claims (*e.g*., by Apple and the iOS device users) is not attributable to

7   Apple.

8          First, Apple does not direct or control any other actor's performance in the alleged

9   performance of the asserted claims.  An entity may be said to direct or control another actor's

10   performance in one of three circumstances: (1) there is an agency relationship, such as an

11   employer/employee relationship, between the alleged infringer and the actors performing the

12   method steps; (2) the alleged infringer contracts with another to perform one or more of the

13   method steps; and (3) the alleged infringer "conditions participation in an activity or receipt of a

14   benefit upon performance of a step" in the method claim.  *Akamai Techs.*, 2015 WL 4760450, at

15   \*1.  None of these circumstances exists in this case.

16          Regarding circumstance (1), Aylus has not offered any evidence that Apple is in an

17   agency relationship, such as an employer/employee relationship, with iOS device users.  Rather,

18   the iOS device users are members of the general public, and the general public is not employed

19   by Apple or otherwise acting as an agent for Apple.  Aylus, which bears the burden of proof on

20   this issue, has not alleged, much less offered any evidence, to the contrary.  *Exigent Tech.*, 442

21   F.3d at 1307-08 (a moving party which does not bear the burden of proof on an issue at trial

22   discharges its burden on summary judgment by pointing out the absence of evidence to support

23   the nonmoving party's case).

24          Regarding circumstance (2), Aylus has not offered any evidence that Apple has contracted

25   with iOS device users to perform any of the steps of the asserted claims.  For example, Aylus has

26   not offered any evidence that iOS device users are contractually obligated to use AirPlay (which

27   they are not), let alone use AirPlay with video instead of, for example, audio (which they are not),

28   or to use AirPlay with iTunes Store content as opposed to, for example, Netflix content (which

17

1    they are not).  Instead, iOS device users are free to use or not use AirPlay, free to buy or not buy

2    iTunes Store content, and free to AirPlay iTunes Store content or not AirPlay iTunes Store

3    content.  Aylus, which bears the burden of proof on this issue, has not alleged, much less offered

4    any evidence, to the contrary.  *Exigent Tech.*, 442 F.3d at 1307-08.

5            Regarding circumstance (3), an example of this circumstance being satisfied in another,

6    non-Apple case is a Content Deliver Network ("CDN") provider conditioning its customers' use

7    of its CDN on its customers' performance of a method claim's "tagging" step by requiring the

8    customer to sign a contract that requires the customer to tag content if the customer uses the CDN

9    to host the content.  *Akamai Techs.*, 2015 WL 4760450 at *3.  Here, Aylus has not offered any

10    evidence that Apple conditions participation in any activity or receipt of any benefit on the

11    alleged performance of the asserted claims, *i.e.*, on iOS device users AirPlaying iTunes Store

12    content.  For example, Aylus has not offered any evidence that Apple makes certain iTunes Store

13    content viewable only if an iOS device user AirPlays the content to an Apple TV.

14            Nor does Apple otherwise "direct and control" iOS device users with respect to AirPlay.

15    For example, Apple does not decide:  whether a given iOS device user will use AirPlay; whether

16    the iOS device user will AirPlay video instead of, for example, audio or photos; whether the iOS

17    device user will AirPlay iTunes Store content instead of, for example, Netflix content, and so on.

18    Ex. 3 at 116:7-11 ("The user has control over whether to AirPlay.").

19            Thus, Apple does not "direct and control" an iOS device user's, or any other actor's,

20    alleged performance of any step of the asserted claims.

21            <u>Second</u>, Aylus has not offered any evidence that Apple has formed a "joint enterprise"

22    with any actor with regard to the alleged performance of the asserted claims.  Such a joint

23    enterprise requires:  (1) an agreement among the members of the group; (2) a common purpose to

24    be carried out by the group; (3) a community of pecuniary interest in that purpose, among the

25    members; and(4) an equal right to a voice in the direction of the enterprise, which gives an equal

26    right of control.  *Akamai Techs.*, No. 2009-1372, 2015 WL 4760450 at *1-2.  Aylus has not

27    offered any evidence that Apple and iOS device users satisfy any of these elements.

28

**C.    Apple Is Entitled To Summary Judgment Of Non-Infringement Because The Accused Apple Products Do Not Include The Claimed "CPP Logic [That] Serves As A [First/Second] Proxy"**

Claim 1 recites, "CPP logic [that] serves as a second proxy," and claim 20 recites, "CPP logic [that] serves as a first proxy." '412 patent, 24:53-55, 25:64-65.  The Court construed "proxy" as "a process that accepts requests for some service and passes them on to <u>the real server</u>." Dkt. No. 102 at 13 ("The Court adopts that construction.") (emphasis added).  Aylus's technical expert, Dr. Schonfeld, contends in his infringement expert report that the accused iOS device's software is the recited "CPP logic," and that the iOS device software serves as the required  "proxy" "because it allows for control of the Apple TV (*i.e.*, media renderer)."  Ex. 2, Appendix A at 13, Appendix B at 6-7, Appendix C at 13, Appendix D at 8.  Aylus has not offered any other theory on how the alleged CPP logic allegedly serves as a proxy.  *Id.*

Dr. Schonfeld's infringement theory that the iOS device software serves as the required proxy necessarily means that the Apple TV allegedly is "the real server" of the Court's construction of "proxy," because he asserts that the iOS device software "proxy" is controlling the Apple TV.   But Dr. Schonfeld at deposition admitted the Apple TV is not a server:

> Q.  Do you consider an Apple TV to be a server?
> A.  Not that I'm aware of, no.
> Q.  Why not?
> A.  Because I don't believe it serves as a server.  It doesn't provide services.

Ex. 3 at 201:4-9.  The Apple TV therefore cannot be "the real server" of the Court's construction of "proxy."  Accordingly, the accused Apple products lack the required "proxy" of the claims and, therefore, the Court should grant Apple summary judgment of non-infringement.

**D.    Apple Is Entitled To Partial Summary Judgment That The Asserted Claims' Conditional Limitations Have No Patentable Weight.**

Claims 1 and 20 both recite the step of "invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS and the MR <u>if</u> one of the MS and MR are not in communication with the UE via a local wireless network." '412 patent, 24:58-61, 26:8-12 (emphasis added).  Claims 2 and 21 both recite the step that "the CPP logic is invoked to negotiate media content delivery between the MS and the MR <u>if</u> the MS and MR are both in

1    communication with the UE via a local wireless network." *Id.*, 24:64-68, 26:15-18 (emphasis

2    added).

3        These "if" step limitations are "conditional" limitations because performance of the

4    recited step (in claims 1 and 20, "invoking the CPP logic and the CP logic to cooperatively

5    negotiate media content delivery between the MS and the MR," and in claims 2 and 21, "the CPP

6    logic is invoked to negotiate media content delivery between the MS and the MR") is predicated

7    upon the satisfaction of a condition (in claims 1 and 20, "if one of the MS and MR are not in

8    communication with the UE via a local wireless network," and in claims 2 and 21, "if the MS and

9    MR are both in communication with the UE via a local wireless network"). *Cybersettle, Inc. v.*

10   *Nat'l Arbitration Forum, Inc*., 243 Fed. Appx. 603, 606-07 (Fed. Cir. 2007) ("[M]ethod steps

11   may be contingent.  If the condition for performing a contingent step is not satisfied, the

12   performance recited by the step need not be carried out in order for the claimed method to be

13   performed.").

14       Where a step in a method claim is conditioned on an event that may not occur, the

15   limitation is not entitled to patentable weight. *In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir.

16   2006) ("optional elements do not narrow the claim because they can always be omitted"); *Ex*

17   *parte Llorente*, Appeal 2012-012674, 2015 WL 1325518 at *2 (PTAB Mar. 20, 2015)

18   ("conditional steps … are entitled to no patentable weight"); *Ex parte de Vriendt*, Appeal 2012-

19   007086, 2015 WL 294310 at *4 (PTAB Jan. 21, 2015) ("[T]he [limitation at issue] is a

20   conditional limitation predicated on the private name server failing. … [B]ecause the [method

21   step] is conditional on an event that may not occur … the conditional step is not entitled to

22   patentable weight."); *Ex parte Fleming III*, Appeal 2014-002849, 2014 WL 7146104 at *1 (PTAB

23   Dec. 12, 2014) (finding that the limitation "generating an alert if the position of the device is not

24   within a predetermined distance of a predetermined position" "is not entitled to patentable

25   weight" "because the performance of [the step] is conditional on an event that may not occur")

26   (emphasis added); MPEP § 2111.04 ("Claim scope is not limited by claim language that suggests

27   or makes optional but does not require steps to be performed.").

28       The limitations of claims 1 and 20 recite a step, "invoking the CPP logic and the CP logic

1    to cooperatively negotiate media content delivery between the MS and the MR," that is

2    conditioned upon "if one of the MS and MR are not in communication with the UE via a local

3    wireless network." This condition may not occur because, for example, neither the MS nor the

4    MR may be in communication with the UE via a local wireless network, as is recited by claim 4.

5    '412 patent, 25:6-7 ("neither the MS nor the MR are in communication with the UE via the local

6    wireless network"). The limitations of claims 2 and 21 recite a step, "the CPP logic is invoked to

7    negotiate media content delivery between the MS and the MR" that is conditioned upon the

8    prerequisite that "if the MS and MR are both in communication with the UE via a local wireless

9    network." This condition may not occur for the same reason. Thus, these conditional limitations

10   are not entitled to patentable weight, and Apple is therefore entitled to partial summary judgment

11   that these limitations have no patentable weight.

12          When a claim limitation does not have patentable weight, it does not need to appear in the

13   prior art in order for the claim to be invalid if the other limitations of the claim are found in the

14   prior art. *Ex parte Fleming III*, 2014 WL 7146104 at *3 ("the prior art need not disclose

15   'generating an alert' to render the claim unpatentable"); *Ex parte Katz*, Appeal 2010-006083,

16   2011 WL 514314 at *4 (PTAB Jan. 27, 2011) ("the Examiner was not required to find these

17   limitations in the prior art in order to render the claims obvious"); *see also In re Johnston*, 435

18   F.3d at 1384 ("optional elements do not narrow the claim"). Thus, the conditional limitations of

19   claims 1-2 and 20-21 do not need to be found in the prior art in order for those claims to be found

20   invalid.

21   **V.     CONCLUSION**

22          For the foregoing reasons, Apple respectfully requests that the Court grant Apple

23   summary judgment of non-infringement or, in the alternative, partial summary judgment.

24

25

26

27

28

1   Dated:  October 19, 2015              DLA PIPER LLP (US)

2                                         By: /s/ Mark D. Fowler
                                              MARK D. FOWLER
3                                             CHRISTINE K. CORBETT
                                              ROBERT BUERGI
4                                             ROBERT WILLIAMS
                                              ERIK R. FUEHRER
5                                             JONATHAN HICKS

6                                             Attorneys for Defendant
7                                             Apple Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28