1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
2        Harold A. Barza (Bar No. 80888)
         halbarza@quinnemanuel.com
         Vincent Pollmeier (Bar No. 210684)
3        vincentpollmeier@quinnemanuel.com
         Amar L. Thakur (Bar No. 194025)
4        amarthakur@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:     (213) 443-3000
6   Facsimile:     (213) 443-3100

7   QUINN EMANUEL URQUHART & SULLIVAN, LLP
        Joshua L. Sohn (Bar No. 250105)
8       joshuasohn@quinnemanuel.com
    777 6th St. NW, 11th Floor
9   Washington, D.C. 20001
    Telephone:     (202) 538-8000
10  Facsimile:     (202) 538-8100

11  QUINN EMANUEL URQUHART & SULLIVAN, LLP
        Joseph B. Martin (Bar No. 284156)
12      jobymartin@quinnemanuel.com
    50 California St., 22nd Floor
13  San Francisco, CA 94111
    Telephone:     (415) 875-6000
14  Facsimile:     (415) 875-6700

15  Attorneys for Plaintiff Aylus Networks, Inc.

16                  UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18
    AYLUS NETWORKS, INC., a Delaware
19  corporation,
                                              CASE NO.   3:13-cv-04700-EMC
20              Plaintiff,
                                              **AYLUS' OPPOSITION TO APPLE'S
21        vs.                                 MOTION FOR SUMMARY JUDGMENT
                                              OR PARTIAL SUMMARY JUDGMENT
22  APPLE, INC., a California corporation     [REDACTED VERSION OF DOCUMENT
                                              SOUGHT TO BE SEALED]**
23              Defendant.
                                              Date: December 10, 2015
24                                            Time: 1:30 p.m.
                                              Courtroom 5
25                                            The Honorable Edward M. Chen
26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     APPLE IS NOT ENTITLED TO SUMMARY JUDGMENT OF NON-
        INFRINGEMENT BASED ON THE "CPP LOGIC IS INVOKED" LIMITATION .......... 2

        A.      Apple Cannot Re-Write the Claims to Suit Its Non-Infringement Arguments ........ 2

        B.      Aylus' Statements to the PTAB Do Not Warrant Re-Writing and Re-
                Interpreting the Claims ................................................................................. 3

        C.      Absent Re-Writing and Re-Interpreting the Claims, Apple's Non-
                Infringement Argument is a Non-Starter .......................................................... 7

III.    APPLE IS NOT ENTITLED TO SUMMARY JUDGMENT OF DIVIDED
        INFRINGEMENT .............................................................................................. 7

        A.      The Three Challenged Steps Are Performed by Apple Under *SiRF* and
                *Ericsson* Because They Are Performed by Apple's Software ................................. 8

        B.      Even If the Three Challenged Steps Were Performed by the Apple TV
                Customers, They Are Still Attributable to Apple Under *Akamai* ........................... 11

IV.     APPLE IS NOT ENTITLED TO SUMMARY JUDGMENT OF NON-
        INFRINGEMENT BASED ON THE "CPP LOGIC SERVES AS A
        [FIRST/SECOND] PROXY" LIMITATION ........................................................... 13

V.      APPLE IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT
        THE "CONDITIONAL" LIMITATIONS OF CLAIMS 2 AND 21 HAVE NO
        PATENTABLE WEIGHT .................................................................................... 14

VI.     CONCLUSION ................................................................................................ 17

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Adaptix, Inc. v. Apple, Inc.*,
   78 F. Supp. 3d 952 (N.D. Cal. 2015) ........................................................11

5

6

*Akamai Tech., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015)...........................................1, 8, 11, 12, 13

7

*Altiris, Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003) ......................................................15, 16

8

9

*Bayer AG v. Elan Pharm. Res. Corp.*,
   212 F.3d 1241 (Fed. Cir. 2000) ............................................................5

10

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004) ............................................................2

11

12

*Dane Tech., Inc. v. Gatekeeper Sys., Inc.*,
   Civ. No. 12-2730, 2014 WL 3420788 (D. Minn. July 14, 2014) ........................6

13

*Ex parte de Vreindt*,
   2015 WL 294310 (PTAB Jan. 21, 2015) .....................................................16

14

15

*Ecolab, Inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009) .........................................................5, 6

16

*Ericsson, Inc. v. D-link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014).....................................................8, 10, 11

17

18

*Ex Parte Fleming III*,
   2014 WL 7146104 (PTAB Dec. 12, 2014) ...............................................16, 17

19

*Jang v. Boston Sci. Corp.*,
   532 F.3d 1330 (Fed. Cir. 2008) ...........................................................16

20

*In re Johnston*,
   435 F.3d 1381 (Fed. Cir. 2006) ...........................................................16

21

22

*MagSil Corp. v. Hitachi Global Storage Tech., Inc.*,
   687 F.3d 1377 (Fed. Cir. 2012) ............................................................3

23

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ............................................................5

24

25

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013) ............................................................3

26

*Proctor & Gamble Co. v. CAO Group, Inc.*,
   No. 1:13-cv-337, 2014 WL 2117047 (S.D. Ohio May 21, 2014) ..........................6

27

28

1

*SanDisk Corp. v. Kingston Tech. Co.*,
　695 F.3d 1348 (Fed. Cir. 2012) .................................................................................16

2

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
　601 F.3d 1319 (Fed. Cir. 2010) ...............................................................8, 9, 10, 11

3

4

*United States v. Alexander*,
　106 F.3d 874 (9th Cir. 1997) ...................................................................................15

5

6

**<u>Statutes</u>**

7

37 C.F.R. § 42.71(d) .......................................................................................................15

8

Local Rule 7-9 ................................................................................................................15

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:13-cv-04700-EMC
AYLUS' OPPOSITION TO APPLE'S MSJ

## I.       INTRODUCTION

None of Apple's summary judgment arguments are persuasive.   First, Apple argues that it does not meet the "CPP logic is invoked" limitation of claims 2 and 21, but Apple's non-infringement argument requires rewriting the claims to add words to the claims, and then further asks this Court to interpret the rewritten claims in a manner that is entirely inconsistent with the patent specification.   Such claim re-drafting is improper, particularly since Apple does not even try to anchor its re-drafting in the patent specification.   Apple instead seeks to justify its claim re-drafting by citing scattered statements from the PTAB proceedings — but none of the passages it cites even addressed claim construction, nor do they support Apple's re-drafting of the claims.

Apple's other non-infringement arguments fare no better.   For example, Apple argues divided infringement, on the theory that some of the claim steps are performed by the iOS device customers.   But Apple's own allegations show that these steps are actually carried out by the iOS devices themselves, based on software that Apple programmed.   Under Federal Circuit precedent, the actor who "performs" these steps is Apple, not the customers.   And even if these steps were performed by the customers, they are at least ***attributable*** to Apple under the new *Akamai* standard, given that Apple conditions receipt of Apple TV benefits on the performance of these steps and exclusively establishes the manner by which these steps must be carried out.

Apple also asserts that the iOS device software does not meet the "proxy" limitation because a "proxy" must communicate with a "real server."   Apple argues that the Apple TV is not a "real server," and thus the iOS device software is not acting as a "proxy" when it communicates with the Apple TV.   But this argument attacks a straw man.   Aylus' argument has always been that the iOS device software acts as a "proxy" when it communicates with the ███ ***CDN server***, not with the Apple TV.   And Apple does not dispute that an ███ CDN server is a "real server," as required by the Court's construction of "proxy."

Finally, Apple moves for partial summary judgment that the limitations added by claims 2 and 21 have "no patentable weight."   This argument asks the Court to reverse itself, as the Court already held that these dependent claims ***do*** have patentable weight and ***do not*** rise and fall with their parent independent claims.   This argument is also inconsistent with the PTAB's decisions on

*inter partes* review, as the PTAB instituted review of claims 1 and 20 but pointedly did not institute review of claims 2 and 21.   According, Apple's "no patentable weight" argument should be rejected.

## II.   APPLE IS NOT ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON THE "CPP LOGIC IS INVOKED" LIMITATION

Apple argues that it does not infringe the limitation of asserted claims 2 and 21 requiring that "the CPP logic is invoked to negotiate media content delivery between the MS and the MR . . ."   Notably, Apple does not assert non-infringement under the plain language of this limitation, which was not construed by the Court.   Rather, Apple asks this Court to re-write the claim language to read "the CPP logic *only* is invoked to negotiate media content delivery between the MS and the MR."   Mot. at 5-8.   Apple further asks the Court to interpret this re-written claim language to mean that the CPP logic cannot utilize or communicate with any other elements (including the CP logic) when negotiating media content delivery.   *Id.*   To support this re-written and re-interpreted claim language, Apple improperly relies on sentence fragments from Aylus' explanation before the PTAB in opposing Apple's requests for *inter partes* review.   *Id.*   But Apple cannot re-write the claim language and improperly interpret the re-written claim language to suit its non-infringement arguments, and nothing in Aylus' PTAB statements (or the PTAB's decisions) suggests otherwise.

### A.   Apple Cannot Re-Write the Claims to Suit Its Non-Infringement Arguments

Apple argues that media content delivery in its accused system requires involvement by the alleged CPP logic and the alleged CP logic.   Mot. at 9-10.   To turn this into a ***non-infringement*** argument, Apple argues that "'[t]he CPP logic is invoked' [in claims 2 and 21] should be construed to mean 'invoking only the CPP logic.'"   *Id.* at 5.   Thus, Apple would re-write the claims to add the word "only."   Apple would then interpret the re-written claims to preclude any communications with the CP logic.

This is improper.   Indeed, the Federal Circuit "repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).   If claims may not be

1    re-drafted to make them operable or sustain their validity, then they certainly may not be re-

2    drafted at a defendant's behest simply to create a non-infringement argument.   Yet that is

3    precisely what Apple asks this Court to do.

4          Apple's request that this Court re-write the claims is particularly improper given that

5    Apple seeks to add negative limitations.   Specifically, Apple argues that "invoking the CPP logic

6    to negotiate media content delivery" should by re-written to bar any involvement by the CP logic.

7    But the claims at issue (claims 2 and 21) are "comprising" claims — their parent preambles recite

8    "[a] method of controlling and delivering media content from a media server (MS) to a media

9    renderer (MR) . . . comprising the acts of . . ."   "Open claim language, such as the word

10   'comprising' as a transition from the preamble to the body of a claim, 'signals that the ***entire***

11   ***claim*** is presumptively open-ended,'" *i.e.*, it "'creates a presumption that the recited elements are

12   only a part of the device, that the claim does not exclude additional, unrecited elements.'"

13   *MagSil Corp. v. Hitachi Global Storage Tech., Inc.*, 687 F.3d 1377, 1383 (Fed. Cir. 2012)

14   (emphasis added, citation omitted).   Yet Apple would close off this open-ended language, by re-

15   writing the claims to preclude any involvement by the CP logic.   Notably, Apple offers not one

16   iota of evidence from the '412 specification to support adding in these negative limitations.   *See*

17   *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1361 (Fed. Cir.

18   2013) ("[T]he specification is always highly relevant to the claim construction analysis.   Usually,

19   it is dispositive; it is the single best guide to the meaning of a disputed term.") (citation omitted).

20        **B.    Aylus' Statements to the PTAB Do Not Warrant Re-Writing and Re-
             Interpreting the Claims**

21

22        In the face of all this, Apple's argument for re-writing the claims is that Aylus made

23   statements to the PTAB characterizing claims 2 and 21 as describing a situation in which "only"

     the CPP logic is invoked to negotiate media content delivery.   Mot. at 7-8.   But this

24   fundamentally misunderstands Aylus' statements to the PTAB — statements that the PTAB

25   understood quite well, but which were not statements of claim construction and which the PTAB

26   did not rely on to make its decision not to institute *inter partes* review of claims 2 and 21.

27   Specifically, by characterizing claims 2 and 21 as describing a situation in which only the CPP

28

1  logic is invoked to negotiate media content delivery, Aylus explained that only the CPP logic

2  *handles* the negotiation of media content delivery and that the CP logic is not required to

3  participate in the handling, as it is in claims 1 and 20.   This statement to the PTAB merely repeats

4  what is in the express language of claims 2 and 21.

5           The PTAB clearly understood this point.   For example, in rejecting Apple's Petition for

6  *inter partes* review of claims 2 and 21, the PTAB noted that "[i]t is unclear from the Petition how

7  UPnP Design allegedly meets the different limitations of dependent claims 2, 4, 21, and 23 in

8  which either CP logic or the CPP logic exclusively *handles* the negotiation of media content

9  delivery between the MS and MR."   Mot., Ex. 6 at 18 (emphasis added).   But this does not

10 preclude the CPP logic from communicating with or utilizing the services of the CP logic, as long

11 as the CPP logic "handles" the negotiations.   By way of analogy, no one would say that a

12 limitation that only the "CPP logic is invoked" would be unmet if the CPP logic made use of

13 wires, screens, computer chips, or other system components to negotiate the media content

14 delivery.   Similarly, such a limitation would not be unmet just because the CPP logic

15 communicates with or makes use of the CP logic.   As long as the CPP logic is handling the media

16 content delivery, it may utilize whatever system components it needs to.

17         Furthermore, this understanding fully comports with the language of the claims, including

18 the interplay between claims 1 and 20 on the one hand and claims 2 and 21 on the other.   Claims

19 1 and 20 require "invoking the CPP logic and the CP logic to *cooperatively* negotiate media

20 content delivery," implying some degree of shared handling of the negotiation.   By contrast,

21 claim 2 and 21 require that "the CPP logic is invoked to negotiate media content delivery,"

22 implying that the CPP logic has responsibility for handling the negotiation and is not required to

23 share the handling of the negotiation with the CP.   But the CPP logic can still communicate with

24 and make use of the CP logic for the media delivery, just as it could make use of wires, screens,

25 chips, etc.   Nothing in the claims (or in Aylus' statements to the PTAB) states otherwise.

26         This understanding also comports with the Court's construction of "negotiate media

27 content delivery between the MS and the MR."   The Court construed this term to mean

28 "*[c]oordinate* transport of audiovisual content from the MS to the MR."   Dkt. 102 at 10

1   (emphasis added).   Thus, when claims 2 and 21 require that "the CPP logic is invoked to

2   negotiate media content delivery between the MS and the MR," that merely means that the CPP

3   logic is the "coordinator" of this process.   This does not preclude the CPP logic from

4   communicating with or utilizing the CP logic to help carry out this process, any more than a

5   wedding coordinator would be precluded from communicating with food service or flower

6   vendors or the musicians and the wedding hall coordinator.

7          Moreover, while Apple relies on the aforementioned Aylus and PTAB statements to

8   construe the claims as precluding any involvement by the CP logic, Apple neglects to inform this

9   Court that the Aylus statements and PTAB statements it relies on were expressly not directed to

10  claim construction.   The "CPP logic is invoked" language was not offered for construction by

11  either Apple or Aylus in the PTAB proceedings, and the PTAB did not construe this term.   *See*

12  Mot., Ex. 6 at 7-12.   Moreover, the PTAB's decision not to institute *inter partes* review of claims

13  2 and 21 did not, as Apple contends (Mot. at 8), rely on any representation made by Aylus.

14  Rather, the PTAB, citing only Apple's Petition, expressly faulted Apple for citing the same

15  evidence for the invoking step of claims 1 and 20 as it cited for the different invoking step of

16  claims 2 and 21.   Mot., Ex. 6 at 17-18.

17         Apple's disclaimer argument for re-writing and then limiting the re-written claims also

18  violates Federal Circuit precedent on the disclaimer doctrine.   To constitute a disclaimer that

19  alters claim scope, Aylus' IPR statements would need to constitute "a clear and unmistakable

20  surrender of subject matter."   *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009)

21  (*quoting Bayer AG v. Elan Pharm. Res. Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000)).   The

22  Federal Circuit has consistently held that there is a "heavy presumption that claim terms carry

23  their full ordinary and customary meaning unless the patentee unequivocally imparted a novel

24  meaning to those terms or expressly relinquished claim scope during prosecution" by

25  distinguishing over the cited prior art in order to obtain claim allowance.   *Omega Eng'g, Inc. v.*

26  *Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) (internal citation omitted).   In *Ecolab*, the

27  Federal Circuit rejected an effort by the defendant to, as Apple does here, insert a negative

28  limitation into a claim that called for a solution "which consists essentially of" a particular

antimicrobial agent, PAA.  During prosecution the patentee had distinguished the prior art by "arguing, inter alia, that its invention uses sanitizing solutions containing PAA as the *only* antimicrobial agent."  *Ecolab*, 569 F.3d at 1343 (emphasis added).  Defendant relied on this statement to argue that the claims should be limited to a solution that contained *only* PAA and no other antimicrobial agent.  *Id*. at 1342.  The Federal Circuit rejected this argument because the "consisting essentially of" language, like the "comprising" language of the Aylus claims, usually "signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients."  The Federal Circuit found that the intrinsic evidence as a whole did not support a conclusion that the patentee had "altered the typical meaning of 'consists essentially of' [or] clearly disclaimed compositions containing multiple antimicrobial agents."  *Id*. at 1343-44.  District courts have applied the same test when considering statements made during *inter partes* review.  *See Proctor & Gamble Co. v. CAO Group, Inc.*, No. 1:13-cv-337, 2014 WL 2117047, *4 (S.D. Ohio May 21, 2014) (finding that patent owner's statement in IPR was "not clear and unmistakable enough to invoke the doctrine of prosecution history disclaimer."); *Dane Tech., Inc. v. Gatekeeper Sys., Inc.*, Civ. No. 12-2730, 2014 WL 3420788, *7 (D. Minn. July 14, 2014) (same).

As discussed above, the Aylus statements relied on by Apple were not connected to claim construction and were not made in any effort to distinguish the prior art.  Aylus did not, as Apple contends (Mot. at 7), argue that claims 2 and 21 were unmet by the prior art because "only" the CPP logic must be invoked.  Rather, Aylus simply explained how the "invoking" limitation of claims 1 and 20 differed from the similar limitations of claims 2/21 and 4/23.  Mot., Ex. 4 at 35.  With respect to the prior art, Aylus pointed out how Apple's Petition sought "to avoid addressing the specifics of these claims by arguing that 'UPnP A/V is media and transfer protocol agnostic' and that 'UPnP Design's disclosure of delivery negotiation is agnostic as to whether the MS and MR are in communication with the UE via the local wireless network or other type of network.'"  *Id.*  In other words, Apple's Petition offered no evidence that the UPnP prior art cared how the MS and the MR were in communication with the UE, and thus Apple had not shown that UPnP disclosed the "invoking" step of *any* of the claims.  It was this feature of

1    Apple's Petition that the PTAB relied on to deny institution of claims 2, 4, 21, and 23, because

2    Apple had treated all these claims together and relied on the same evidence for each.   Mot., Ex. 6

3    at 18 ("With respect to dependent claims 2, 4, 21, and 23, however, the Petition asserts, based on

4    the **same evidence**, that either CP logic or CPP logic exclusively handles the negotiation of media

5    content delivery between the MS and MR. . . . It is unclear from the Petition how UPnP Design

6    allegedly meets the **different limitations** of dependent claims 2, 4, 21, and 23. . . .") (emphasis

7    added).

8            For all these reasons, Aylus' IPR statements certainly do not constitute a "clear and

9    unmistakable" disclaimer of all communication between the CPP logic and CP logic in claims 2

10   and 21.   Apple's attempt to re-write and re-interpret the claims to preclude all communication

11   between the CPP logic and CP logic should be rejected.

12           **C.     Absent Re-Writing and Re-Interpreting the Claims, Apple's Non-
                      Infringement Argument is a Non-Starter**

13

14           If the Court rejects Apple's claim re-writing — as it should — then Apple's non-

15   infringement argument likewise fails.   Apple does not dispute that the accused CPP logic (the iOS

16   device software) handles the media content delivery in the accused system, as Aylus' expert Dr.

17   Schonfeld explained in his infringement report.   *See, e.g.,* Schonfeld Report, App'x A at 17-19.[1]

18   Apple merely alleges that the accused CP logic (the iTunes Store server software) is also involved,

19   at the iOS device's behest.   Mot. at 9-10.   But as explained above, claims 2 and 21 should not be

20   re-written to bar the CPP logic from communicating with or utilizing the CP logic for media

21   content delivery.   Accordingly, the fact that the CPP logic in the accused system (the iOS device

22   software) communicates with and utilizes the CP logic (the iTunes Store server software) is

23   irrelevant to the issue of infringement.

24   **III.    APPLE IS NOT ENTITLED TO SUMMARY JUDGMENT OF DIVIDED
              INFRINGEMENT**

25

26

27   _____

28           [1]   Dr. Schonfeld's Non-Infringement Report was filed as Exhibit 2 to Apple's Motion.

Apple's divided infringement argument fails for two overarching reasons.   First, each of the three steps that Apple alleges is performed by the Apple TV customer is actually performed by *software* in the iOS device and/or the Apple TV — software that Apple designed and built. Under *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010) and *Ericsson, Inc. v. D-link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014), these steps are performed by Apple, not the customer.   Second, even if any of these three steps were performed by Apple's customers, these steps are still *attributable* to Apple under *Akamai Tech., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc), because Apple conditions receipt of Apple TV benefits on the performance of these steps and establishes the manner by which these steps are carried out.

> ### A.   The Three Challenged Steps Are Performed by Apple Under *SiRF* and *Ericsson* Because They Are Performed by Apple's Software

Apple alleges that three claim steps are performed by the Apple TV customer (which Apple also calls the "iOS device user.")   These three steps are: (1) "the CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS and MR are both in communication with the UE via a local wireless network"; (2) "once media content delivery is negotiated, controlling a presentation of delivery via the VCR controls on the UE"; and (3) "in response to a media content delivery request [ . . .], determining a network context of the UE and a network connectivity of the MS and MR."   *See* Mot. at 12-14.   But the evidence shows that these three steps are actually performed by the *software* on the iOS device and/or the Apple TV.

For example, as to the "CPP logic is invoked" step, Dr. Schonfeld explained how this step is performed when the iOS device sends a "███████" request to an ███████ server in the iTunes Store server.   Schonfeld Report ¶ 47, Ex. A at 19; Schonfeld Dep. at 215:19-216:9.[2]   As to the step of "controlling a presentation of delivery via the VCR controls," Apple itself admits that "the VCR controls of the accused products are internal signals in the iOS device software" under Aylus' infringement theory.   Mot. at 13.   And as to the "determining a network context"

---

[2]   The excerpts from the Schonfeld deposition cited in this Brief are attached as Exhibit A to the Declaration of Joshua L. Sohn ("Sohn Decl."), filed herewith.

1 step, Apple likewise admits that "this claim limitation is performed by the iOS device and the

2 Apple TV" under Aylus' infringement theory.   *Id.* at 14.   So for all three steps, it is not the

3 customer who performs the steps.   Rather, it is the software in the accused devices that performs

4 these steps — software that is indisputably designed and built by Apple.

5      This means that Apple is the actor who "performs" these steps when its software carries

6 out the steps.   *SiRF* is controlling law here.   In *SiRF*, the Federal Circuit held that the claim step

7 of "processing the satellite signals received at the mobile GPS receiver" was performed by the

8 creator of the chips and software that did the processing, even though these chips and software

9 were embedded in GPS receivers owned and used by end-customers.   *SiRF*, 601 F.3d at 1330-31.

10 *SiRF* specifically held that "[o]nce the technology is enabled, SiRF's SiRFstarIII chip and

11 software, designed and built by SiRF, automatically perform the disputed steps of the claims at

12 issue because the SiRFstarIII chips are programmed by SiRF to use the InstantFix ephemeris data

13 automatically if it has been transmitted to the remote device."   *Id.* at 1331 (emphasis added).

14 *SiRF* went on to note that "[n]either SiRF's customers (the equipment manufacturers and software

15 developers) nor the end users of the GPS receivers can modify the use of the EE files by SiRF's

16 software or the functionality of the SiRFstarIII chip."   *Id.*

17      Just as the chips and software that performed the processing in *SiRF* were designed and

18 built by SiRF, the software that performs the challenged steps in the accused system was designed

19 and built by Apple.   And just as the end-users of the GPS devices had no ability to modify the

20 software or chip functionality in *SiRF*, there is no evidence that Apple TV customers can modify

21 the functionality of the software in the iOS device and the Apple TV.   Thus, just as the steps

22 carried out by SiRF's chips and software were performed by SiRF instead of the end-users, the

23 steps carried out by software on the iOS device and Apple TV are performed by Apple instead of

24 the Apple TV customers.

25      Apple argues that the customers are nonetheless responsible for performing these steps

26 because the customers must take certain actions to enable these steps to be performed.   For

27 example, Apple reasons that a customer must "use the iOS device to select the AirPlay option,

28 select an Apple TV destination, and select an iTunes Store video" before the "CPP logic is

invoked" step can be carried out.   Mot. at 12.   Apple similarly reasons that a customer must "request to purchase or rent a movie from the iTunes Store" before the "determining a network context" step can be carried out.   *Id.* at 15.   But these arguments are identical to the arguments that were rejected in *SiRF*.   Specifically, the accused infringer in *SiRF* had argued that it did not perform the challenged "processing" step "because though the GPS receivers employ SiRF chips and InstantFix software [to perform the processing], end users must actually initiate the process of downloading the EE data by connecting the device to the Internet and activating the InstantFix functionality."   *SiRF*, 601 F.3d at 1330-31.   Just as this user initiation was not enough to shift performance of the subsequent steps from SiRF to the end-customers, the fact that an Apple TV customer must select AirPlay and request a video before the claim steps are carried out does not mean that the claim steps are performed by the customer.   Rather, as in *SiRF*, they are performed by Apple because they are carried out by Apple's software, which will "automatically" perform its programmed steps when asked to do so.   Taking Apple's argument to its logical conclusion, Apple's iOS products would never infringe any method patent claims that could not be performed unless a user first powers up their iOS device.

The Federal Circuit's 2014 *Ericsson* decision confirms that the challenged steps are performed by Apple.   *Ericsson* refined *SiRF* to hold that, when a defendant sells a computer device programmed to perform a patented method, the steps performed by the device are "performed" by the defendant only if the defendant also performs at least **one** other step on other equipment under its control.   *See Ericsson*, 773 F.3d at 1221-22 ("Our decision in *SiRF* is not applicable here because **all** of the steps of the method in claims 1 and 2 of the ′215 patent are performed on the end product, which is controlled by a third party.   Unlike the method in *SiRF,* there are **no** steps automatically performed by equipment controlled by D–Link.   In fact, none of our decisions have found direct infringement of a method claim by sales of an end user product which performs the **entire** method, and we decline to do so here.") (emphasis added, internal citation omitted).   Applying this test to the present case, there is direct infringement by Apple because Apple does not contest that it performs at least **some** of the claim steps on its own back-end servers.   For example, Apple's expert Dr. Polish states that Apple is the entity who performs

1    the "provisioning a serving node in the wide area network" step by installing software onto the

2    iTunes Store server.    Polish Report, ¶¶ 259-60.[3]

3         Indeed, Apple is asking this Court to contradict a ruling that Apple recently litigated in this

4    District, in the case of *Adaptix, Inc. v. Apple, Inc.*, 78 F. Supp. 3d 952 (N.D. Cal. 2015).    In a

5    thoughtful decision, the *Adaptix* judge (Magistrate Judge Grewal) analyzed *SiRF* and *Ericsson* to

6    hold when a defendant sells a computer device programmed to perform a patented method, the

7    steps performed by the device will be deemed "performed" by the defendant if the defendant also

8    performs at least one other step on other equipment under its control.    As Judge Grewal held:

9    "Under *Ericsson,* even if they supply handsets preprogrammed to perform multiple claimed steps,

10   Defendants must still perform at least ***one*** step of a claimed method themselves to be held liable

11   for direct infringement."    *Id.* at 954 (emphasis added).    Judge Grewal further explained: "What

12   is relevant is whether any such Defendant supplying a handset programmed to perform at least one

13   step may be said to have performed or controlled any others.    If so, as in *SiRF*, there is direct

14   infringement."    *Id.* at 957.

15        Applying this test to the present case, there clearly is direct infringement by Apple.

16   Again, Apple admits that it performs at least ***some*** of the claim steps on its own back-end servers,

17   such as the "provisioning a serving node in the wide area network" step.    Polish Report, ¶¶ 259-

18   60.   Because Apple: (1) performs at least one method step on its own servers; and (2) programs

19   the iOS device and/or Apple TV to perform the other method steps, Apple is deemed to perform

20   ***every*** step under *SiRF*, *Ericsson*, and *Adaptix*.[4]    Thus, Apple's divided infringement defense fails.

21        **B.    Even If the Three Challenged Steps Were Performed by the Apple TV**
             **Customers, They Are Still Attributable to Apple Under *Akamai***

22

23        Even if the three challenged steps were "performed" by Apple TV customers — which

24   they are not, as explained above — these steps are still ***attributable*** to Apple under the legal

25        [3]    Dr. Polish's Report has previously been filed as Exhibit 1 in support of Aylus' *Daubert*
26   motion (Dkt. 188).
          [4]    Notably, Apple's summary judgment motion never even mentions *Adaptix*, even though
27   Apple asks this Court to make a ruling that would directly contradict *Adaptix* and thus create an
     intra-District split in authority.

28

standards enunciated in *Akamai*.   Specifically, *Akamai* held that a third-party's performance of a method step will be attributed to an accused infringer for purposes of direct infringement "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023.   Here, even if the Apple TV customers performed the three steps at issue, there is more than sufficient evidence to find that Apple conditions receipt of Apple TV benefits on performance of these steps and establishes the manner by which these steps are performed.

For example, as to the "CPP logic is invoked" step, Dr. Schonfeld explained how this step entails the iOS device sending a "███████" request to an ████████ server in the iTunes Store server.   Schonfeld Report ¶ 47, Ex. A at 19; Schonfeld Dep. at 215:19-216:9.   This step is required before Apple will stream Apple TV content to the Apple TV customer.   *See generally* Schonfeld Report at ¶¶ 47-61 (disclosing the requisite chain of events).   Thus, Apple conditions receipt of Apple TV benefits on performance of this step.   And Apple also establishes the manner by which this step is carried out, because the step is carried out by sending a message written in Apple source code ("████████") from one Apple-programmed device to another.   *See also* Schonfeld Supp. Report (Sohn Decl., Ex. B) at ¶ 14 (further explaining how Apple conditions receipt of Apple TV benefits on this step and establishes the manner by which this step is carried out).

A similar logic applies to the "controlling a presentation of delivery via the VCR controls" step.   The VCR controls provide the only way for the user to pause, re-wind, or fast-forward Apple TV content using the iOS device.   *See* Schonfeld Report at ¶¶ 60, 79.   Therefore, Apple conditions the receipt of these benefits (*i.e.*, the benefit of being able to pause, rewind, and fast-forward Apple TV content using the iOS device) on the performance of this step.   Apple also establishes the manner by which this step is carried out, as there is no dispute that Apple provides the user interface with the pause, re-wind, and fast-forward buttons as well as the internal signals that these buttons generate.   *See* Mot. at 13; Schonfeld Report at ¶¶ 60, 79; Schonfeld Supp. Report at ¶ 12.

1     Finally, as to the "determining a network context" step, Dr. Schonfeld explained how a

2  necessary step in the delivery of Apple TV content is for the "████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████"   Schonfeld Report, Ex. A at 13.   Thus, again, Apple conditions receipt of Apple TV

5  benefits on the performance of this step.   And because this step is carried out through the use of

6  Apple proprietary software modules (██████████████████████████████████),

7  Apple certainly establishes the manner by which this step is performed.   *See also* Schonfeld Supp.

8  Report at ¶ 11 (further explaining how Apple conditions receipt of Apple TV benefits on this step

9  and establishes the manner by which this step is carried out).

10    In sum, all three challenged steps are clearly ***attributable*** to Apple under *Akamai*, even if

11  Apple could somehow show that any of the steps are actually ***performed*** by the Apple TV

12  customers.   Thus, for this additional reason, Apple's divided infringement defense fails.

13  **IV.    APPLE IS NOT ENTITLED TO SUMMARY JUDGMENT OF NON-
        INFRINGEMENT BASED ON THE "CPP LOGIC SERVES AS A
14      [FIRST/SECOND] PROXY" LIMITATION**

15    Apple's final non-infringement argument is to say that the accused CPP logic (the iOS

16  device software) does not serve as a "proxy," as required by the asserted claims.   Mot. at 19.

17  This argument is unavailing.   The Court's construction of "proxy" requires "a process that accepts

18  requests for some service and passes them on to the real server."  Dkt. 102 at 13.   Here, Dr.

19  Schonfeld explained how the accused "proxy" (the iOS device software) accepts media requests

20  and passes them on to the ████ CDN servers.   *See, e.g.*, Schonfeld Report at ¶ 70 ("████████

21  ████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████"); *see also* Schonfeld Dep. at 205:10-12 ("There is communication between the iOS

25  device and the ████ CDN server.")   By passing requests to the ████ CDN servers, the iOS

26  Device software (CPP logic) serves as a "proxy," and Apple does not contend otherwise.

27

28

Instead, Apple's argument is merely that the ***Apple TV*** (the accused "media renderer") is not a "server," and thus the iOS device software is not acting as a "proxy" when it communicates with the Apple TV.   Mot. at 19.   But as detailed above, Aylus does not rely on the Apple TV as the "real server" required by the Court's construction of "proxy."   Rather, Aylus relies on the ███ CDN servers.   And when the iOS device software passes requests to the ███ CDN servers as part of the overall process of controlling media delivery, the iOS device software is unquestionably acting as a "proxy."

## V.   APPLE IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT THE "CONDITIONAL" LIMITATIONS OF CLAIMS 2 AND 21 HAVE NO PATENTABLE WEIGHT

The final section of Apple's summary judgment motion seeks a declaration "that the asserted claims' conditional limitations have no patentable weight."   Mot. at 19.   Specifically, with respect to asserted claims 2 and 21, Apple argues that "[t]he limitations of claims 2 and 21 recite a step 'the CPP logic is invoked to negotiate media content delivery between the MS and the MR' that is conditioned upon the prerequisite that 'if the MS and MR are both in communication with the UE via a local wireless network.'   This condition may not occur . . . Thus, these conditional limitations are not entitled to patentable weight, and Apple is therefore entitled to partial summary judgment that these limitations have no patentable weight."   *Id.* at 21.

By making this argument, Apple asks this Court to reverse its previous ruling on this exact issue.   After all, Apple's argument necessarily implies that ***claims 2 and 21 themselves*** have no patentable weight, since the only limitations added by these claims are the "conditional" limitations that Apple argues have no patentable weight.   Thus, Apple's argument necessarily implies that the invalidity of dependent claims 2 and 21 will rise and fall with the invalidity of their parent independent claims.   But the Court rejected this argument at the May 28, 2015 Hearing on Apple's Motion to Stay.   5.28.15 Hearing Tr. at 14:21-24 (THE COURT: "But given that there are claims here, and even though they're dependent claims, ***they may survive invalidity where the independent claims might not*** . . .") (emphasis added).   Thus, Apple now asks the Court to reverse that ruling.

1    If Apple wished for the Court to reconsider this ruling, it should have filed a motion for

2    reconsideration under Local Rule 7-9.   Apple never did so, nor did Apple even attempt to satisfy

3    all the substantive and procedural requirements that Local Rule 7-9 imposes.   Thus, Apple has

4    provided no basis for this Court to reverse its prior holding that claims 2 and 21 **do** have

5    patentable weight and ***do not*** rise and fall with their parent claims.   *See also United States v.*

6    *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, a court is

7    generally precluded from reconsidering an issue that has already been decided by the same court,

8    or a higher court in the identical case.   The doctrine is not a limitation on a tribunal's power, but

9    rather a guide to discretion.") (internal citations and quotation marks omitted).

10   Not only does Apple's "no patentable weight" argument defy the Court's prior holding, but

11   it is completely inconsistent with the PTAB's decision on *inter partes* review.   The PTAB

12   instituted *inter partes* review for claims 1 and 20 but did not institute review for claims 2 and 21.

13   This PTAB decision would have been utterly illogical if the limitations added by claims 2 and 21

14   had no patentable weight, because in that case the § 103 invalidity case for claims 2 and 21 would

15   have been identical to the invalidity case for claims 1 and 20, and the PTAB could have conducted

16   the same review for both sets of claims.   Thus, Apple's "no patentable weight" argument

17   necessarily asserts that the PTAB committed an illogical error of law by instituting *inter partes*

18   review for claims 1 and 20 but not claims 2 and 21.   Yet Apple did not even raise its "no

19   patentable weight" argument in its initial PTAB petitions for review.   Nor did Apple seek

20   rehearing of the PTAB's decision not to institute *inter partes* review on claims 2 and 21, as

21   authorized by 37 C.F.R. § 42.71(d).   Instead, Apple raises the argument before this Court, and

22   asks this Court to hold that the PTAB committed an illogical error of patent law by reviewing

23   claims 1 and 20 without reviewing claims 2 and 21.

24   Even as a general matter — divorced from this Court's decisions and the PTAB's

25   decisions on the '412 Patent — the Federal Circuit has implicitly rejected Apple's argument that

26   conditional limitations have no patentable weight.   In *Altiris, Inc. v. Symantec Corp.*, 318 F.3d

27   1363 (Fed. Cir. 2003), the Federal Circuit was faced with a method claim that included the steps

28   of "testing automatically for automation boot sequence data" and "transferring control of said

-15-

computer system to automation code, if said testing automatically step indicates an automation

boot sequence." *Id.* at 1367.   The second quoted step was clearly a conditional limitation — it

required transferring control of the computer system to automation code *if* the testing indicated an

automation boot sequence.   Yet the Federal Circuit did not hold that this limitation was devoid of

patentable weight.   To the contrary, it proceeded to analyze and affirm the district court's

construction of "automation code" from this conditional limitation.   *See id.* at 1374-75.   If the

conditional limitation had no patentable weight, then there would have been no reason for the

Federal Circuit to construe terms from that limitation.   Indeed, the Federal Circuit would not even

have had Article III jurisdiction to do so.   *See, e.g., SanDisk Corp. v. Kingston Tech. Co.*, 695

F.3d 1348, 1354 (Fed. Cir. 2012) ("resolving claim construction issues 'that do not actually affect

the infringement controversy between the parties' would result in impermissible advisory

opinion[,] because '[t]he Supreme Court has explicitly held that Article III does not permit the

courts to resolve issues when it is not clear that the resolution of the question will resolve a

concrete controversy between interested parties.'" (quoting *Jang v. Boston Sci. Corp.*, 532 F.3d

1330, 1336 (Fed. Cir. 2008)).

   Moreover, the Federal Circuit in *Altiris* also issued a ruling on the required order of the

conditional limitations, stating: "[t]he only order mandated by the claim language is the

conditional language in several of the steps, indicating that they must be performed after the

'testing' step."   *Altiris*, 318 F.3d at 1370.   Again, this holding would make no sense if the

conditional limitations were meaningless surplusage devoid of patentable weight.

   Apple's cited caselaw (Mot. at 20-21) is not to the contrary, because this caselaw merely

states that *optional* limitations that may be skipped entirely are not limiting.   *See In re Johnston*,

435 F.3d 1381, 1384 (Fed. Cir. 2006) ("optional elements do not narrow the claim because they

can always be omitted"); *Ex Parte Fleming III*, 2014 WL 7146104, *3 (PTAB Dec. 12, 2014)

(holding that optional step was not limiting where it was possible that "the method concludes"

before that step is even reached); *Ex Parte de Vreindt*, 2015 WL 294310, *4 (PTAB Jan. 21, 2015)

("An optional limitation need not be found in the cited prior art.")   By contrast, the conditional

limitations of claims 2 and 21 (like the parallel conditional limitations of claims 1/20 and 4/23) are

not "optional."    These limitations recite distinct ways of invoking the CP and/or CPP logic to

negotiate media content delivery.    But while these claims recite distinct and alternative ways to

do the invoking and negotiating, the invoking and negotiating is not "optional."    Rather, invoking

logic to negotiate media content delivery *must* occur in order to reach the final step of the claimed

methods.    *See* claim 1 ("once media content delivery is negotiated, controlling a presentation of

delivery via the VCR controls on the UE"); claim 20 ("once media content delivery is negotiated,

receiving video play controls from the UE.")    Thus, these limitations are not the sort of *optional*

limitations that are non-limiting.    And the mere fact that these limitations are written in

conditional, disjunctive form — *i.e.*, reciting different types of "invoking" depending on which

conditions are met — does not strip them of patentable weight.    *See Ex Parte Fleming III*, 2014

WL 7146104 at *2 ("we did not and do not hold that every conditional step recitation in a method

claim is not entitled to patentable weight.")

## VI.    CONCLUSION

For the foregoing reasons, Aylus respectfully requests that the Court deny Apple's Motion

for Summary Judgment or Partial Summary Judgment.


DATED: November 9, 2015                    QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP


                                           By   */s/ Amar Thakur*
                                                Amar Thakur
                                                Attorney for AYLUS NETWORKS, INC.