UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYLUS NETWORKS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 13-cv-04700-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF APPLE'S EXPERTS; DENYING DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF AYLUS'S EXPERTS**<br><br>Docket No. 180, 182, 185, 188 |

## I. INTRODUCTION

Plaintiff Aylus Networks, Inc. filed the instant suit against Defendant Apple, Inc., alleging that Apple's AirPlay feature infringes claims 2 and 21 of U.S. Patent No. RE44,412 ('412 patent). *See* Docket No. 37 (Second Amended Complaint) (SAC) at ¶ 11. The '412 patent concerns an invention "whereby a user of a computer or mobile device can direct and control video signals from servers located on the internet to be rendered for display on a display device (e.g., a television)." *Id.* at ¶ 10. Specifically, the '412 patent describes a media streaming architecture that allows a user to coordinate the transport of media content from an internet-based media server to a physically proximate media renderer. *Id.* at ¶ 12.

AirPlay is a feature that allows users of iOS devices – such as the iPod Touch, iPhone, and iPad – to select and display video, music, or photos on a television connected to an Apple TV. *See* Docket No. 182 at 4. AirPlay can work in two ways. First, it can "mirror" what is being shown on the screen of the Apple product onto the television. Second, it can "stream" video content that

is downloaded from the Apple iTunes store or other third party applications, such as Netflix and Hulu. Aylus's theory of direct infringement is limited to when an iOS user purchases iTunes Store video content and then AirPlays that video to a TV connected to an Apple TV. *Id.* at 3.

Pending before the Court are two motions for summary judgment and two motions to exclude expert reports. Docket No. 180 (Aylus Mot.); Docket No. 182 (Apple Mot.); Docket No. 185 (Apple Daubert Mot.); Docket No. 188 (Aylus Daubert Mot.). The parties' motions came on for hearing before the Court on December 17, 2015. For the reasons stated below, the Court **GRANTS** Apple's motion for summary judgment. Because Apple's motion for summary judgment resolves the merits of the case in its entirety, the Court need not address the remaining motions.

## II.   BACKGROUND

The '412 patent describes two scenarios, one which involves three primary components – the Control Point (CP), the Media Server (MS), and the Media Renderer (MR) – and one which involves four primary components – the CP, MS, MR, and the Control Point Proxy (CPP). In the first scenario, the CP queries the MS for a directory of content, and negotiates content delivery within the MS, including instructing the MS to deliver content to the MR. Docket No. 183 (Buergi Dec.), Exh. 6 (IPR Decision) at 4-5. The CP also negotiates media rendering with the MR, instructing the MR to start expecting content from the MS and to present such. *Id.* at 5. The MS then delivers media content to the MR. *Id.* In the second scenario, the CP is located in a wide area network via the "Service Provider," while the CPP is within the "User Premises." *Id.* at 5. There, "[t]he CP communicates with the MS, the CPP communicates with the MR, and the CP and CPP communicate with each other." *Id.* at 5-6.

Apple filed a Petition for *inter partes* review of all claims (*i.e.*, claims 1-33) of the '412 patent. The Patent Trial and Appeal Board (PTAB) initiated review of claims 1, 3, 5-20, 22, and 24-33, but not claims 2, 4, 21, and 23. *Id.* at 2. For the claims that the PTAB instituted *inter partes* review, the PTAB found that Apple would likely prevail with respect to those claims being obvious over the UPnP (Universal Plug and Play) Design book. *Id.* at 14.

Following initiation of review, Aylus dismissed with prejudice its infringement claims

1  except as to dependent claims 2 and 21.  Docket No. 131.  Claim 2 depends from claim 1, while

2  claim 21 depends from claim 20.  In relevant part, Claim 1 is:

> [a] method of controlling and delivering media content from a media server (MS) to a media renderer (MR) utilizing a wide area network for control, comprising the acts of . . . invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS and the MR if one of the MS and MR are not in communication with the UE [user endpoint] via a local wireless network . . . .

Buergi Dec., Exh. 1 ('412 Patent) col. 24 ll. 37-39, 58-61.  Claim 2, in turn, is "[t]he method of claim 1, wherein the CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS and MR are both in communication with the UE (user endpoint) via a local wireless network."  *Id.* at col. 24 ll. 64-67.

Similarly, Claim 20 is:

> [a] method of controlling and delivering media content from a media server (MS) to a media renderer (MR) utilizing a wide area network for control, where a user endpoint (UE) is provisioned with control point proxy (CPP) logic that includes (i) logic to negotiate media content delivery with at least one of the MS and the MR, (ii) logic to cooperate with network control point (CP) logic to negotiate media content delivery between the MS and the MR, and (iii) video play controls to control a presentation of content provided by the MS and rendered by the MR, wherein the CPP logic resides in the UE and serves as a first proxy, comprising the acts of . . . invoking the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS and the MR if one of the MS and MR are not in communication with the UE via a local wireless network; and

*Id.* at col. 25 ll. 55-65, col. 26 ll. 8-11.  Claim 21, like claim 2, is "[t]he method of claim 20, wherein the CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS and MR are both in communication with the UE via a local wireless network."  *Id.* at col. 26 ll. 14-17.

In the instant case, Aylus contends that the Control Point Proxy (CPP) is software within the iOS device, the Control Point (CP) is the iTunes Store ▮ servers (specifically the iTunes Store servers named ▮, ▮, and ▮), the Media Server (MS) is the ▮ Content Delivery Network (CDN) servers, and the Media Renderer (MR) is the Apple TV.

3

1 According to Aylus's technical expert, Dr. Dan Schonfeld, the accused product can be operated
2 by: (1) AirPlay from the Cloud, and (2) AirPlay Version I.  *See* Buergi Dec., Exh. 2 (Schonfeld
3 Report) at 18, 27.  For AirPlay from the Cloud, the AirPlay session begins when the user selects
4 AirPlay on the iOS device to display content on the Apple TV.  *Id.* at ¶ 46.  The following
5 sequence is then performed:

    1.    The iOS device (CPP) sends to an ▮▮▮ server in the iTunes Store (CP) a ▮▮▮ request with an ▮▮▮, a ▮▮▮, and ▮▮▮.

    2.    The ▮▮▮ server in the iTunes Store sends back to the iOS device a ▮▮▮ response that includes a ▮▮▮, which includes the ▮▮▮, ▮▮▮, and ▮▮▮.

    3.    The iOS device sends the ▮▮▮ to the Apple TV (MR).

    4.    The Apple TV sends to an ▮▮▮ server in the iTunes Store a ▮▮▮ that includes the ▮▮▮.

    5.    The ▮▮▮ server in the iTunes Store ▮▮▮ and returns to the Apple TV a ▮▮▮ to a Content Delivery Network (CDN) server (MS) and a ▮▮▮ that includes ▮▮▮.

    6.    The Apple TV requests the content from the CDN server.  The request includes the ▮▮▮ and an ▮▮▮.

    7.    The CDN server ▮▮▮ and begins sending encrypted content to the Apple TV.

    8.    The Apple TV sends to the ▮▮▮ server in the iTunes Store a ▮▮▮ request that includes the ▮▮▮.

    9.    The ▮▮▮ server in the iTunes Store performs authentication and returns to the Apple TV a ▮▮▮ that includes a ▮▮▮.

    10.    The Apple TV uses the ▮▮▮ to ▮▮▮ and ▮▮▮.  The Apple TV uses the ▮▮▮ to ▮▮▮ the encrypted content.

4

1    11.   After some time, the Apple TV sends to the ▓▓▓ server in the iTunes Store a
2    ▓▓▓▓▓▓ that includes the ▓▓▓▓.
3    12.   The ▓▓▓▓▓ in the iTunes Store ▓▓▓▓▓ of the ▓▓▓▓ and
4    returns a ▓▓▓▓▓ that includes the ▓▓▓▓.
5    13.   The Apple TV uses the ▓▓▓ to ▓▓▓▓ and ▓▓▓▓▓▓▓.
6    The Apple TV uses the ▓▓▓▓ to continue ▓▓▓▓ the encrypted content.
7    14.   The Apple TV sends to the ▓▓▓ server in the iTunes Store a ▓▓▓
8    ▓.

Buergi Dec., Exh. 7 at 13-14.

AirPlay Version 1 involves a user selecting the AirPlay button and selecting a content destination, upon which the following sequence is performed:

1.   The iOS device sends to an ▓▓▓▓ server in the iTunes Store a ▓▓▓▓▓ that includes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

2.   The ▓▓▓▓ server in the iTunes Store sends back to the iOS device a ▓▓▓▓▓ that includes ▓▓▓▓.

3.   The iOS device begins sending encrypted content to the Apple TV, and also transmits a ▓ and the ▓▓▓▓ to the Apple TV.

4.   The Apple TV uses the ▓▓▓▓ to ▓▓▓▓ and ▓▓▓▓▓. The Apple TV uses the ▓▓▓▓ to ▓▓▓ the encrypted content.

*Id.* at 15.

### III.   DISCUSSION

A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As indicated by the language of the rule, "[t]he moving party has the burden of establishing the absence of a genuine dispute of material fact. The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036,

1  1049-50 (9th Cir. 2014).  "'Where the record taken as a whole could not lead a rational trier of fact
2  to find for the nonmoving party, there is no genuine issue for trial.'" *Id.*

3  Where the moving party ultimately bears the burden of proof, the non-moving party may
4  prevail on a motion for summary judgment by pointing to the moving party's failure "to make a
5  showing sufficient to establish the existence of an element essential to that party's case." *Celotex*
6  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In contrast, where a moving party seeks summary
7  judgment in favor of its own claim, it "'must offer evidence sufficient to support a finding upon
8  every element of [its] claim . . . , except those elements admitted . . .' by the adversary." *Watts v.*
9  *United States*, 703 F.2d 346, 347 (9th Cir. 1983).

10  B.  <u>Non-Infringement</u>

11  Apple contends that there is no infringement of dependent claims 2 and 21 because Apple
12  does not perform the claim step "the CPP logic is invoked to negotiate media content delivery
13  between the MS and MR."  Apple Mot. at 2.  Specifically, Apple argues that the language "the
14  CPP is invoked" should be read as requiring that *only* the CPP logic is invoked to negotiate media
15  content delivery, whereas the allegedly infringing activity operates by using *both* the CPP logic
16  (the iOS device software) and the CP logic (the iTunes Store servers) to negotiate media content
17  delivery.  Apple identifies four steps in the AirPlay from the Cloud session which require
18  invocation of the iTunes Store servers (steps 2, 5, 9, and 12), and one step in the AirPlay Version 1
19  session which requires invocation of the iTunes Store servers (step 2).  Apple Mot. at 9-10.

20  During the claim construction process, the Court was not asked to construe the term "The
21  CPP is invoked."  However, the Court agrees with Apple that based on the language of the patent
22  and Aylus's statements during the *inter partes* review process, dependent claims 2 and 21 require
23  that only the CPP logic is invoked to negotiate media content delivery.

24  First, the Court looks at the claim language.  Independent claims 1 and 20 read: "invoking
25  the CPP logic and the CP logic to cooperatively negotiate media content delivery between the MS
26  and the MR if one of the MS and MR are not in communication with the UE via a local wireless
27  network . . . ."  In contrast, dependent claims 2 and 21 read: "The method of claim 1, wherein the
28  CPP logic is invoked to negotiate media content delivery between the MS and the MR if the MS

6

1    and MR are both in communication with the UE via a local wireless network." Based on this
2    language, the independent and dependent claims are distinguishable by whether both the CPP
3    logic and the CP logic negotiate media content delivery (independent claims 1 and 20) or if only
4    the CPP logic negotiates media content delivery (dependent claims 2 and 21), depending on
5    whether the MS and MR are in communication with the UE.  To read dependent claims 2 and 21
6    as encompassing both the invocation of CPP logic and the invocation of CPP logic and CP logic
7    would render this distinction meaningless.  *See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d
8    1361, 1368 (Fed. Cir. 2005) ("The doctrine of claim differentiation stems from 'the common sense
9    notion that different words or phrases used in separate claims are presumed to indicate that the
10   claims have different meanings and scope."); *see also Merck & Co. v. Teva Pharms. USA, Inc.*,
11   395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of
12   the claim is preferred over one that does not do so."); *Elekta Instrument S.A. v. O.U.R. Sci. Int'l,*
13   *Inc.*, 214 F..3d 1302, 1307 (Fed. Cir. 2000) (construing claim to avoid rendering the 30 degree
14   claim limitation superfluous).

15        The patent specification also makes this distinction, explaining that "where the UE is in the
16   proximity of both the desired MS and the desired MR and can communicate with them via a
17   [Personal Area Network], such as Wi-Fi, the CPP in the UE negotiates the association between the
18   MS and MR.  In this case, *there is no need to involve the CP* in the SN, since this would involve
19   unnecessary use of wireless bandwidth." '412 Patent col. 17 ll. 50-55 (emphasis added).  *See*
20   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("The claims, of course, do not stand
21   alone.  Rather, they are part of a fully integrated written instrument, consisting principally of a
22   specification that concludes with the claims.  For that reason, claims must be read in view of the
23   specification, of which they are a part.  As we stated in *Vitronics*, the specification is always
24   highly relevant to the claim construction analysis.") (quotations omitted).  The specification here
25   is consistent with the plain language of the subject claims and provides persuasive confirmation of
26   the Court's interpretation.  *Cf. Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356,
27   1361 (Fed. Cir. 2015) (explaining that where the claim language has a plain meaning, the
28   specification plays a more limited role because "unless there is a disclaimer or redefinition,

7

1  whether explicit or implicit, the proper construction of any claim language must, among other
2  things, stay true to the claim language, and, in order to avoid giving invention-defining effect to
3  specification language included for other descriptive and enablement purposes, the court's focus
4  remains on understanding how a person of ordinary skill in the art would understand the claim
5  terms.") (quotations omitted).

6  Second, this distinction is confirmed by Aylus's preliminary responses to Apple's *inter partes* review petitions of the '412 patent and the PTAB's adjudication of the petition. In this regard, Aylus's statements are akin to a prosecution disclaimer. Under that doctrine, "[t]he patentee is held to what he declares during the prosecution of his patent. *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007); *see also TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1325 (Fed. Cir. 2015) ("where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender"); *Phillips*, 415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.").[1] In challenging all of the '412 patent claims, Apple argued that the claims were obvious over prior art, particularly the UPnP design. *See* IPR Decision at 2-3. In its response, Aylus explained that the challenged claims require "determining the 'network context' of the UE (*i.e.*, the networks available to the UE) and the 'network connectivity' of the MS and MR (*i.e.*, the networks through which the UE can communicate with the MS and MR). Buergi Dec., Exh. 4 (IPR2014-01565 Resp.) at 4; Exh. 5 (IPR2014-01566 Resp.) at 4. For example:

---

[1] Other courts in this District have noted that prosecution disclaimer has viability in *in partes* review proceedings, even though such proceedings are technically an adjudicative proceeding rather than an examination. *See, e.g.*, *Evolutionary Intelligence, LLC v. Spring Nextel Corp.*, No. C-13-4513, 2014 U.S. Dist. LEXIS 139066, at *20 (N.D. Cal. Sept. 26, 2014) ("The IPR proceedings will also add to the '536 Patent's prosecution history. Prosecution history is an important part of the intrinsic record relevant to claim construction."); *Pragmatus AV, LLC v. Yahoo! Inc.*, No. C-13-cv-1176 EMC, 2014 U.S. Dist. LEXIS 65813, at *14-15 (N.D. Cal. May 13, 2014) ("Under Federal Circuit law, comments made by a patent holder during inter partes reexamination proceedings can limit claim scope. The same should be true now that inter partes review, rather than inter partes reexamination, is in effect."); *Samuels v. TriVascular Corp.*, No. 13-cv-2261-EMC, 2015 U.S. Dist. LEXIS 153437, at *16-17 n.3 (N.D. Cal. Nov. 12, 2015) (same).

> Specifically, for claims 1 and 20, if . . . it is determined that "one of the MS and MR are not in communication with the UE via a local wireless network" the "CPP logic and the CP logic are both invoked["] and will "cooperatively negotiate media content delivery between the MS and the MR." If, however, "the MS and MR are both in communication with the UE via a local wireless network, then **only** "the CPP is invoked to negotiate media content delivery between the MS and the MR." [Claims 2 and 21].

IPR2014-01565 at 34-35 (emphasis added); IPR2014-01566 at 33 (emphasis added); *see also* IPR2014-01565 Resp. at 4; IPR2014-1566 Resp. at 4 (if neither (or both) the MS or the MR is in communication with the UE via a local wireless network, "the challenged dependent claims require that only the control point logic (or only the control point proxy logic) be invoked . . . ."). Thus, Aylus argued that "the challenged claims require selectively invoking the CP logic and/or CPP logic based on whether the MS and/or MR can communicate with the UE through the local network." IPR2014-01565 Resp. at 4; IPR2014-1566 Resp. at 4.

Based on this distinction, the PTAB denied Apple's petition for *inter partes* review of claims 2 and 21. IPR Decision at 17-18. The PTAB explained that the Petition had relied on the UPnP design to meet the limitation of claims 1 and 20, which require that the CP and CPP logic cooperatively negotiate media content delivery between the MS and MR. *Id.* at 17. The Petition had then used the same evidence to show the UPnP Design also met the limitation of claims 2 and 21, despite the fact that those claims require that the "CPP logic *exclusively* handles the negotiation of media content delivery between the MS and MR." *Id.* at 18 (emphasis added). Because the Petition had already used the UPnP Design to show that both the CP and CPP logic cooperate to handle the negotiation of media content between the MS and MR (as required for claims 1 and 20), the PTAB stated, "[i]t [wa]s unclear from the Petition how UPnP design allegedly meets the *different* limitations of dependent claims 2 [and] 21 . . . in which . . . the CPP logic *exclusively* handles the negotiation of media content delivery between the MS and MR." *Id.* (emphasis added). In other words, the PTAB agreed with Aylus that claims 1 and 20 required both the CP and CPP logic to handle the negotiation of media content delivery between the MS and MR whereas claims 2 and 21 required only the CPP to handle that negotiation. The PTAB

9

1  thus found that there was a reasonable likelihood that Apple would prevail in showing the
2  unpatentability of claims 1 and 20, but not claims 2 and 21 because of the different limitations.
3  Based on this distinction, the PTAB instituted *inter partes* review of all claims of the '412 patent,
4  except for dependent claims 2, 4, 21, and 23.[2]

5  Thus, given the claim language, the patent specification, Aylus's response to Apple's
6  petition, and the PTAB's decision,[3] the Court finds that claims 2 and 21 require that only the CPP
7  logic is invoked to negotiate media content delivery between the MS and the MR, in contrast to
8  claims 1 and 20 which require both the CP and CPP to negotiate media content delivery.

9  Aylus responds that by reading this limitation as barring any involvement by the CP logic,
10  Apple is improperly requesting the Court to rewrite the dependent claims to add a negative
11  limitation. Docket No. 205-4 (Aylus Opp.) at 3. First, Aylus argues that independent claims 1
12  and 20 use the term "comprising the acts of," and that Federal Circuit precedent views this "open
13  claim language" as signaling that "'the ***entire*** claim is presumptively open-ended.'" *Id.* (quoting
14  *MagSil Corp. v. Hitachi Global Storage Tech., Inc.*, 687 F.3d 1377, 1383 (Fed. Cir. 2012))
15  (emphasis added by Plaintiff). But while claims 1 and 20 do use the word "comprising," claims 2
16  and 21 are dependent claims that have a more limited scope than claims 1 and 20, as explained in
17  Aylus's response to Apple's *inter partes* review petition. *See* IPR2014-1565 Resp. at 35;
18  IPR2014-1566 Resp. at 33; *see also* IPR2014-1565 Resp. at 4; IPR2014-1566 Resp. at 4 at 4
19  ("certain of the challenged dependent claims require that only the control point logic (or only the
20  control point proxy logic) be invoked if it is determined that neither (or both) the MS or the MR
21  are in communication with the UE via the local wireless network"); *compare with Dippin' Dots,*

---

[2] Dependent claims 4 and 23, which are not at issue in this suit, require that the CP logic exclusively handles the negotiation of media content delivery between the MS and the MR.

[3] The PTAB currently applies "the broadest reasonable interpretation" standard in *inter partes* review, an issue that is now under review by the Supreme Court. *See In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1275-79 (Fed. Cir. 2015) (explaining history of the "broadest reasonable interpretation" standard and applicability in *inter partes* review), *cert granted*, 84 U.S.L.W. 3218 (U.S. Jan. 15, 2016) (No. 15-446). However, the PTAB's conclusion was not based on the application of the broad standard of review, but rested on the distinction that Aylus itself articulated in its response to Apple's petition.

1  *Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007) ("The presumption raised by the term
2  'comprising' does not reach into each of the six steps to render every word and phrase therein
3  open-ended -- especially where, as here, the patentee has narrowly defined the claim term it now
4  seeks to have broadened"). Thus, the term "comprising" in the independent claims does not
5  render dependent claims 2 and 21 so open-ended as to include both the invocation of the CPP and
6  the invocation of the CP and CPP in negotiating media content delivery.

Next, Aylus argues that its statements to the PTAB stated that "only the CPP logic ***handles*** the negotiation of media content delivery and that the CP logic is not require to participate in the handling," as it is in claims 1 and 20. Aylus Opp. at 4. This would not preclude the CPP logic from communicating with or utilizing the CP logic, as long as it is the CPP logic that "handles" the negotiations. *Id.* But, as pointed out by Apple during the hearing herein, the claims do not contain the word "handle." Nor did Aylus use the word "handle" in its response to Apple's petition for *inter partes* review, when Aylus explained that "only 'the CPP is invoked to negotiate media content delivery between the MS and the MR.' [Claims 2 and 21]." IPR2014-1565 Resp. at 35; IPR2014-1566 Resp. at 33. Even if the Court was to read in the word "handle" into the claim, Aylus has not explained the practical effect of incorporating this word with the claims, and how it would be distinguished from the plain language of claims 2 and 21.

During the hearing on this matter, Aylus essentially conceded that dependent claims 2 and 21 require that only the CPP logic is invoked to negotiate media content delivery. *See* Docket No. 232 at 32:11-15.[4] However, Aylus argued that in the context of an AirPlay session, the CP logic is not invoked to negotiate media content delivery because everything the CP logic does is in response to the CPP, such that the CP is passive while the CPP is the exclusive active agent. In short, Aylus contends steps where the CP is passive are not included as part of the negotiation of media content delivery. *See* Docket No. 232, 46:23-47:10.[5]

---

[4] THE COURT: So what's important about claim 2 is that not just the facilitation but the negotiation is being done not cooperatively but solely by the CPP logic.
MR. THAKUR: Right. The CP is asking the question and getting the response.

[5] THE COURT: So let me make sure I understand your current position . . . . You don't take issue with the CPP logic being exclusively the active agent not the passive agent. It's that -- so even if

11

1  However, even if the CP in a sense acts passively, Aylus's argument that the CP is not
2  invoked to negotiate media content delivery is at odds with the testimony of Aylus's own expert,
3  Dr. Schonfeld.  During his deposition, Dr. Schonfeld was asked whether steps 2, 5, 9, and 12 for
4  AirPlay from the Cloud and step 2 for AirPlay Version 1 were part of the negotiation of media
5  content delivery.  All of these steps clearly require action by the CP, including actions between the
6  CP and MR only, *i.e.*, steps 5 and 9, or performed only by the CP, *i.e.*, step 12.[6]  Dr. Schonfeld
7  testified that each of these steps was part of the negotiation of media content delivery.  Buergi
8  Dec., Exh. 8 at 139:3-17 (agreeing that step 2 is part of the negotiation of media content delivery);
9  139:22-141:12 (agreeing that step 5 is part of the negotiation of media content delivery); 141:17-
10 142:17 (agreeing that step 9 is part of the negotiation of media content delivery); 142:23-144:1
11 (agreeing that step 12 is part of the negotiation of media content delivery); 152:3-13 (agreeing that
12 step 2 of AirPlay Version 1 is part of the negotiation of media content delivery).  In sum, whereas
13 dependent claims 2 and 21 require that only the CPP logic be invoked to negotiate media content
14 delivery, Aylus's expert admits that both versions of AirPlay require steps that invoke the CP (and
15 the CPP) to negotiate media content delivery.  Thus, Apple does not perform dependent claims 2
16 and 21.  Accordingly, Apple is entitled to summary judgment of non-infringement of those
17 claims.[7]

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Apple's motion for summary judgment of

---

we were to construe claim 2 that way, you're saying that there's still infringement because that's exactly what's happening with the Apple product?
MR. THAKUR: That's correct.
THE COURT: The CP, even with all these steps, is really not involved in the negotiation/coordination.  It's just sitting there as a passive valve or whatever.
MR. THAKUR: That's correct.

[6] While step 2 involves the CPP (the iOS device), it is only to accept the "play-info" response sent by the CP (the ▮▮▮▮▮▮▮ server in the iTunes Store).

[7] Apple also raises arguments of non-infringement based on whether all of the claimed method steps are either performed by or attributable to Apple and whether the accused Apple products include a "proxy" as construed by the Court, as well as whether the asserted claims' conditional limits have patentable weight.  *See* Apple Mot. at 2.  Because the Court has resolved the motion on Apple's first argument, it does not address these remaining contentions.

non-infringement. Having found that Apple has not infringed on the '412 patent, Aylus's motion for partial summary judgment on invalidity, Apple's motion to exclude expert testimony, and Aylus's motion to exclude expert testimony are **DENIED** as moot.

This order disposes of Docket Nos. 180, 182, 185, and 188.

The Clerk is instructed to enter judgment and close the file.

**IT IS SO ORDERED**.

Dated: January 21, 2016

_____
EDWARD M. CHEN
United States District Judge